USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/27/08

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

KEENAN M. SCOTT, *et al.*,

        **Plaintiffs,**

    - against -

**CITY OF NEW YORK and THE NEW**
**YORK CITY POLICE DEPARTMENT,**

        **Defendants.**

-------------------------------------------------------X

**OPINION AND ORDER**

**02 Civ. 9530 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

Over fifteen thousand current and former New York City police officers and detectives ("plaintiffs") assert that the City of New York and the New York City Police Department ("NYPD") (collectively "defendants") systematically violate plaintiffs' overtime rights under the Fair Labor Standards Act ("FLSA").[1] The Court has scheduled a trial for November 3, 2008.  In anticipation of that trial, plaintiffs have made three motions in limine, which defendants oppose. Defendants have made five motions in limine, and plaintiffs oppose three of them.

---

[1]    29 U.S.C. §§ 201-219.

Each parties' disputed motions are separately discussed below.

## II.   APPLICABLE LAW

The Federal Rules of Evidence favor the admission of all relevant evidence.[2]   Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[3]   A district court will "exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds."[4]   "Indeed, courts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context."[5]   Moreover, a court's ruling regarding a motion in limine "'is subject to change when the case unfolds . . . . Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.'"[6]

---

[2]   *See* Fed. R. Evid. 402.

[3]   Fed. R. Evid. 401.

[4]   *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006).

[5]   *United States v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002).

[6]   *Palmeri v. Defaria*, 88 F.3d 136, 139 (2d Cir. 1996) (quoting *Luce v. United States*, 469 U.S. 38, 41-42 (1984)).

2

# III. DISCUSSION

## A. Plaintiffs' Motions in Limine

Plaintiffs have filed three motions in limine seeking to preclude

defendants from 1) arguing that plaintiffs' FLSA claims are attempts to

circumvent their collective bargaining agreements ("CBAs"),[7] 2) offering the

expert testimony of statistician Christopher Erath,[8] and 3) using the jointly-

conducted survey of plaintiffs in argument or as evidence at trial.[9]

### 1. Circumvention of Collective Bargaining Agreements

Plaintiffs move in limine "to preclude defendants from describing

FLSA overtime as overtime beyond that for which plaintiffs have collectively

bargained."[10] Specifically, plaintiffs aim to prevent counsel for the City of New

York from repeating statements made in a previous FLSA trial – *Mullins v. City of*

---

[7] *See* Plaintiffs' Motion in Limine to Preclude Defendants from Arguing that Plaintiffs' Claims for Unpaid FLSA Overtime Are Attempts to Circumvent the Collective Bargaining Agreements ("Pl. CBA Mem.").

[8] *See* Plaintiffs' Motion in Limine to Preclude Defendants from Offering the Expert Testimony of Christopehr Erath, Ph.D., Regarding Whether the NYPD Enforces a Cap on Cash Overtime ("Pl. Erath Mem.").

[9] *See* Plaintiffs' Motion in Limine to Exclude Evidence or Argument Relating to the [Schulman, Oronca & Bucuvalas] Survey ("Pl. SRBI Mem.").

[10] Pl. CBA Mem. at 1.

3

*New York*[11] – that they feel were unfairly prejudicial and "invite[d] jury nullification."[12] Counsel for the defendants stated during the *Mullins* trial that plaintiffs in that case wanted "'more overtime beyond what they bargained for'" and that they were "'not entitled to this extra overtime.'"[13]

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[14] This Court has "broad discretion under Rule 403 to balance the probative value of evidence against the risk of prejudice."[15]

To the extent that FLSA requires greater compensation than plaintiffs' contractual overtime payments, statutory overtime is by definition "beyond that for which plaintiffs have collectively bargained." Defendants did not suggest in the *Mullins* trial that plaintiffs could never be entitled to statutory

---

[11]    No. 04 Civ. 2979 (S.D.N.Y. trial completed July 18, 2008).

[12]    Pl. CBA Mem. at 2.

[13]    *Id.* at 1 (quoting *Mullins v. City of New York*, No. 04 Civ. 2979, Trial Transcript at 13, 842).

[14]    Fed. R. Evid. 403.

[15]    *United States v. Awadallah*, 436 F.3d 125, 134 (2d Cir. 2006).

4

overtime on top of contractual overtime; nor would they be permitted to make such a statement in this case, as it would be flatly contrary to law.[16] To the extent that this argument is implied by the statements at issue, the probative value of explaining the difference between contractual and statutory overtime outweighs the risk of prejudice. Plaintiffs' motion is denied.

### 2. Expert Testimony of Christopher Erath

Plaintiffs next move "to preclude defendants from proffering the expert opinion of Christopher Erath regarding whether the NYPD enforces a cap on cash overtime."[17] Plaintiffs base this motion on defendants' failure to provide the specific regression equation used by Erath in formulating his expert report,[18] as well as several complaints about the process by which Erath developed his analysis.[19] However, Erath's expert report provides the variable sets for the two

---

[16]     *See Scott v. City of New York*, No. 02 Civ. 9530, 2008 WL 4104020, at *5 (quoting *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981)).

[17]     Pl. Erath Mem. at 2.

[18]     *See id.* at 2-3. *See also* 8/11/08 Letter from James R. Cho, defendants' attorney, to Will Aitchison, plaintiffs' attorney, Ex. 3 to Pl. Erath Mem. ("[T]here are no programs or equations associated with your request.").

[19]     *See* Plaintiffs' Reply Memorandum in Support of Motion to Preclude Defendants from Offering the Expert Testimony of Christopher Erath ("Pl. Erath Reply"), at 7-8.

regression analyses he performed.[20]

The court serves an essential gatekeeping function concerning technical testimony and may use the factors set forth in *Daubert v. Merrell Dow Pharmaceuticals* to assist in this determination.[21] A district court has "broad latitude when it decides how to determine [the] reliability" of technical testimony.[22]

Plaintiffs focus on whether Erath's theory or technique "can be (and has been) tested."[23] Because Erath has identified the variables he used, derivation of his regression equations is as simple as filling out a form.[24] Erath's theory has been tested, and it can be reproduced by plaintiffs. Nor do plaintiffs' other concerns merit exclusion of Erath's report. *First*, while Erath did not expressly note that his result was statistically significant or provide variance statistics, this

---

[20]    *See* 3/24/08 Review of [Financial Information Services Agency] Data, Ex. 1 to Pl. Erath Mem.

[21]    *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149-50 (1999) (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592-94 (1993)).

[22]    *Id.* at 142 (1999) (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997)).

[23]    Pl. Erath Mem. at 3 (quoting *Daubert*, 509 U.S. at 593).

[24]    *See Reference Manual on Scientific Evidence* 190 (2d ed. 2000) (noting that selection of the form of regression and the proper set of variables completes the modeling exercise).

6

issue can be addressed on cross-examination.[25] *Second*, Erath's failure to include

other variables that might have influenced the number of overtime hours does not

invalidate his conclusion vis-à-vis the single tested variable, particularly when

defendants are attempting to disprove that a particular variable – violation of an

alleged cap – has any effect at all.[26] Whether Erath's model is the best possible

model may again be the subject of cross-examination. *Third*, although Erath

tailored his data set to exclude certain officers who did not work nearly enough

overtime to approach the alleged cap, his approach consistently tested the same

hypothesis. Removing irrelevant data points – those officers nowhere near the

alleged cap – does not interfere with testing whether the violation of the alleged

cap had any effect on the amount of overtime available in later work periods.[27]

---

[25]     A trained statistician would not indicate a definitive result – as Erath
did in his report – unless it were statistically significant. *See, e.g.*, David S. Moore
& George P. McCabe, *Introduction to the Practice of Statistics* 461-66 (4th ed.
2003). Moreover, regression using as few variables and as many data points as the
analysis here is extremely likely to have produced a statistically significant result,
revealing either a positive or a negative correlation. *See, e.g.*, Steven P. Segal,
*Large Data Sets Are Powerful*, 54 Psychiatric Servs. 745 (2003).

[26]     *Cf. In re Wireless Tel. Serv. Antitrust Litig.*, 385 F. Supp. 2d 403
(S.D.N.Y. 2005) (rejecting analysis in support of a single-factor explanation that
failed to take into account alternative variables).

[27]     While plaintiffs refer to the elimination of certain data points as
running "at least six different regression equations," Pl. Erath Reply at 1, in fact
the analysis described applies the same equation to several data sets. Therefore,

Erath's failure to record the panoply of descriptive figures displayed

automatically by his statistics program does not constitute best practices for

preparation of an expert report. Nevertheless, his report does contain the "the data

or other information" he considered in forming his opinion – as required by Rule

$26^{28}$ – and his anticipated testimony satisfies the minimal requirements of Rule

702. Moreover, the probative value of his analysis outweighs any risk of prejudice

or confusion it creates. Plaintiffs' motion is denied.

### 3. Use of the SRBI Survey

Plaintiffs also move in limine "to preclude defendants from

introducing evidence or argument relating to the survey of plaintiffs conducted

last fall by Schulman, Oronca & Bucuvalas ("SRBI")."[29] Specifically, plaintiffs

argue that since defendants did not designate a survey expert as a trial witness in

their initial pre-trial disclosures, defendants may not present evidence concerning

---

contrary to plaintiffs' argument, Erath did not attempt to find a theory that
supported his preferred result; he merely attempted to remove static. Nor is such
experimentation necessarily impermissible. A statistician may fall upon a model
that explains a great deal of the variation in a particular data set just as the apple
apocryphally fell upon Newton.

[28]     Fed. R. Civ. P. 26(a)(2)(B)(ii).

[29]     Pl. SRBI Mem. at 1.

8

the jointly-conducted survey of the plaintiff class.[30]  Defendants claim that an

expert is unnecessary[31] or – in the alternative – that if plaintiffs wish to question

the methodology of the survey, it is plaintiffs who must call an expert witness.[32]

    The survey in this case was jointly developed by the parties and

administered by a neutral third-party survey firm, SRBI.[33]  The parties engaged in

negotiations over the language, structure, and administration of the survey with the

help of Magistrate Judge Theodore Katz,[34] and the survey went through multiple

---

[30]    *See id.* at 6-7.  Notably, plaintiffs failed to present arguments against
defendants' plan to introduce statements made by individual officers that SRBI
recorded during the survey process.  Such statements constitute admissions of a
party-opponent and are non-hearsay.  *See* Fed. R. Evid. 801(d)(2).  *See also*
*ADP-Fin. Computer Serv., Inc. v. First Nat'l Bank of Cobb County*, 703 F.2d
1261, 1266 (8th Cir. 1983) (suggesting that survey responses – if made by a party-
opponent – would be admissible as an admission against interest).  Although these
statements were collected as part of a technical process, no expert is required to
explain the context in which they were made.

[31]    *See* Memorandum of Law in Opposition to Plaintiffs' Motion in
Limine to Exclude Evidence or Argument Relating to the SRBI Survey at 3, 7.

[32]    *See id.* at 8.

[33]    *See* 12/2/05 E-mail from Damon Taaffe, plaintiffs' attorney, to Lorie
Almon, defendants' attorney, Ex. F to 9/26/08 Declaration of Lorie Almon
("Almon Decl.") (working out survey administration details and noting the use of
SRBI); 11/12/04 Stipulation and Order, Ex. C to Almon Decl. (establishing
guidelines for communications with SRBI during the survey development
process).

[34]    *See* 1/30/06 Endorsed Letter from Lorie Almon to Hon. Theodore H.
Katz, Magistrate Judge, Ex. G to Almon Decl.

pretests in order to insure its usefulness and statistical validity.[35] Despite their

attempts now to discredit it, plaintiffs previously submitted to this Court the

declaration of Thomas M. Guterbock – a survey expert – who expounded upon the

methodology, neutrality, and reliability of the survey.[36]

           The Manual for Complex Litigation lays out basic parameters for

reliable surveys, including both conformance with recognized statistical standards

and survey construction likely to elicit impartial answers.[37] The Manual notes that

evidence of proper survey construction "ordinarily involve[s] expert testimony"

and that parties should raise objections promptly to ensure that "corrective

measures [can be] taken before the survey is completed."[38] Although, the Manual

notes that complex statistical evidence "should be presented at trial through

summaries, charts, and other tabulations," it does not suggest that expert testimony

is necessary to present the outcome of a survey to the jury.[39]

           Under Rule 26, "a party must disclose to the other parties the identity

---

[35]    *See* Almon Decl. ¶ 13.

[36]    *See* 6/4/08 Declaration of Thomas M. Guterbock, Docket No. 205.

[37]    *See Manual for Complex Litigation* § 11.493 (4th ed. 2004).

[38]    *Id.*

[39]    *Id.* § 32.435.

of any witness it may use at trial to present evidence under [the Federal Rules of Evidence governing expert testimony]."[40]  Expert disclosures are mandatory, and a Court may impose sanctions for failure to make them.[41]  However, a Court may also simply order that a party supplement or correct insufficient disclosures.[42]  Similarly, Rule 26 requires the disclosure of most expert witnesses to be accompanied by a written report containing six specific elements.[43]  However, this requirement is waived if the witness is not "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."[44]

The survey in this case is sufficiently complex to warrant an expert witness to establish a foundation and to respond to challenges concerning the survey's construction and validity.  Defendants did not name a survey expert in their Rule 26 disclosures; nor did they submit an expert report concerning survey evidence.  However, this does not entirely preclude introduction of evidence

---

[40]     Fed. R. Civ. P. 26(a)(2)(A).

[41]     *See, e.g.*, *Bank of China v. NBM LLC*, 359 F.3d 171, 182 & nn.12-13 (2d Cir. 2004).

[42]     *See* Fed. R. Civ. P. 26(e)(2).

[43]     *See* Fed. R. Civ. P. 26(a)(2)(B).

[44]     *Id.*

concerning the SRBI survey at trial. Defendants may amend their Rule 26

disclosures to include an employee of SRBI as an expert witness. SRBI is capable

of describing the technical aspects of the survey data, including variation in the

confidence intervals among questions and the effect of limiting the time period

addressed by the survey. Moreover, because both parties played an active role in

the survey development process and have had equal, albeit restricted access to

SRBI during this litigation, the purpose of the notice provision is not thwarted by

allowing a late amendment in these unique circumstances. On the other hand,

defendants may not call their retained survey expert – Eugene Erickson – as an

expert witness; plaintiffs rightly protest that they have been denied sufficient

notice of his proposed testimony.[45]

Moreover, Rule 26 does not require the SRBI employee who

defendants choose to name to submit a formal expert report.[46] As plaintiffs note,

---

[45]     *See* Pl. SRBI Mem. at 5-6. Defendants may still call Erickson as a
fact witness. However, his testimony may not include any opinions or reliance on
hearsay statements.

[46]     Nor could an expert report be submitted this close to trial, as the rule
concerning late submission of a report is not as flexible as the rule concerning late
submission of a name. *See* Fed. R. Civ. P. 26(e)(2) ("Any additions or changes to
[expert reports] must be disclosed by the time the party's pretrial disclosures under
Rule 26(a)(3) are due.").

12

"the parties employed [SRBI] as a third-party survey administrator."[47]  Therefore,

no SRBI employee was "retained or specially employed to provide expert

testimony in the case."[48]  Nor are plaintiffs harmed by the lack of an expert report

here.  The purpose of an expert report – "to provide the opposing party with the

scope of the opinion that will be provided at trial, to allow for an effective cross

examination of the witness, and to limit the total number of depositions"[49] – is

fulfilled by SRBI's final report.  The report provides frequency charts for each

question asked in the survey,[50] and both parties have also had access to raw data

developed by the survey.[51]  Moreover, the probative value of the survey results

outweighs the risk of prejudice introduced by presentation of survey evidence by

an SRBI employee.  Plaintiffs' motion is denied.

**B.    Defendants' Motions in Limine**

Defendants have filed five motions in limine seeking to preclude

---

[47]    *See* Pl. SRBI Mem. at 5 n.3.

[48]    *Cf. Bank of China*, 359 F.3d at 182 n.13.

[49]    *Ordon v. Karpie*, 223 F.R.D. 33, 36 (D. Conn. 2004).

[50]    *See* 1/10/08 NYPD Pilot Survey - Frequency Report, Ex. A. to
10/20/08 Declaration of Lorie E. Almon, defendants' attorney ("Almon Decl.").

[51]    *See* Almon Decl. ¶ 4 (describing electronic files provided to counsel
by SRBI).

13

plaintiffs from 1) offering the expert testimony of John Eterno concerning social

scientific explanations of police practices, 2) entering expert reports into evidence,

3) entering newspaper articles into evidence, 4) offering the testimony of plaintiffs

who failed to meet discovery obligations, and 5) offering "common knowledge"

testimony concerning unofficial police practices.[52]  Moreover, as alternative relief

on their fourth motion, defendants move to dismiss the claims of the fifty-seven

plaintiffs who failed to meet discovery obligations and for an adverse inference

instruction concerning the evidence that defaulting plaintiffs would have

provided.[53]  Because the parties have resolved defendants' second and third

motions,[54] I need only address the remaining three.

### 1.    Expert Testimony of John Eterno

Defendants' first motion in limine asks this Court to "[p]reclude the

report and testimony of [p]laintiffs' expert witness John Eterno."[55]  Defendants

argue that Eremo's opinions fail to satisfy the requirements for expert testimony

---

[52]     *See* Memorandum of Law in Support of Defendants' Motions in
Limine ("Def. Mem.") at 2-19, 23-24.

[53]     *See id.* at 19-22.

[54]     *See* Plaintiffs' Response to Defendants' Motions in Limine ("Pl. Opp.
Mem.") at 1 & n.1.

[55]     Def. Mem. at 1.

14

set forth in Rule 702 of the Federal Rules of Evidence and that he is barred from

offering paid testimony by conflict of interest provisions in the New York City

Charter. Plaintiffs respond that Eterno's testimony will provide specialized

knowledge concerning police management practices based on a foundation of

academic study and first-hand observations of the NYPD.[56]

An expert witness may offer "scientific, technical, or other

specialized knowledge" to assist the trier of fact.[57] Permissible experts are not

limited to specialists in the hard sciences and mathematical disciplines; they

include authorities in "industrial psychology"[58] and "police management."[59]

Eterno's proposed testimony addresses important elements of

plaintiffs' case. Specifically, Eterno will testify concerning the NYPD's

---

[56]   *See* Pl. Opp. Mem. at 1-2.

[57]   Fed. R. Evid. 702.

[58]   *Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134, 144 (2d Cir. 2006), *vacated on other grounds*, 128 S. Ct. 2395 (2008).

[59]   *Poe v. Leonard*, 282 F.3d 123, 130 (2d Cir. 2002). *See also Poe v. Pearl*, No. 94 Civ. 2058, 2000 U.S. Dist. LEXIS 21843 (D. Conn. July 19, 2000) (denying defendants' motion in limine to exclude a police management expert). *See generally United States v. Mejia*, — F.3d —, Nos. 05-2856, 05-6683, 06-1744, 2008 WL 4459289, at *6 (2d Cir. Oct. 6, 2008) (describing inclusion of "the large group sometimes called 'skilled' witnesses" among expert witnesses) (quoting Fed. R. Evid. 702 Advisory Committee Note); *Iacobelli Const., Inc. v. County of Monroe*, 32 F.3d 19, 25 (2d Cir. 1994) (distinguishing between experts in "trade usage" and those professing "scientific knowledge").

"personnel management strategy" and "the formal and informal techniques the Department uses to control officers' behavior."[60] Given that plaintiffs hope to establish numerically-based personnel rules such as a cap on cash overtime and denials of compensatory time as punishment for failing to meet other quantitative goals, such arguments – if credited by the jury – will lend credence to their claims.

To the extent that Eterno bases his testimony on the wealth of social science literature concerning organizational theory generally and police management in particular, the testimony will be typical of an academic expert.[61] Moreover, to the extent that Eterno bases his testimony on personal observations made in a lengthy career at the NYPD, he may testify as an expert in industry practices, a common occurence in civil litigation.

However, the Second Circuit recently cautioned that experts must not cross the "increasingly thinning line" between legitimate use of expert opinion to explain complex or esoteric subjects and "substitution of expert opinion for factual

---

[60]     Memorandum of Law in Support of Defendants' Motions in Limine ("Def. Reply Mem.") at 1.

[61]     *See* Pl. Opp. Mem. at 2, 4 (noting Eterno's reliance on the scholarship of James Q. Wilson and his own academic publications concerning NYPD management systems).

evidence."[62] Therefore Eterno may only testify "concern[ing] matters that the

average juror is not capable of understanding on his or her own."[63] Moreover,

although experts "'can testify to opinions based on hearsay or other inadmissible

evidence,'" they may only do so "'if experts in the field reasonably rely on such

evidence in forming their opinions.'"[64] While "organizational studies" does not

always lend itself to experimentation and use of the scientific method, experts

must still rely on verifiable citations to establish empirical facts. Accordingly,

Eterno may not testify as to unsubstantiated opinions or personal knowledge based

on unidentifiable sources.[65] Numerous examples of such "common knowledge"

assertions are found in Eterno's expert report,[66] and they are hereby precluded.

---

[62]      *Mejia*, 2008 WL 4459289, at *8.

[63]      *Id.* at *12.

[64]      *Howard v. Walker*, 406 F.3d 114, 127 (2d Cir. 2005) (quoting *United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993)).

[65]      *See Kumho Tire*, 526 U.S. at 149 (noting that all expert testimony must have a "a reliable basis") (quoting *Daubert*, 509 U.S. at 592).

[66]      *See, e.g.*, Undated Expert Report of John A. Erterno at 6, Ex. A to 9/15/08 Declaration of James Lemonedes, defendants' attorney (making factual assertions concerning "commonplace" sanctions and "routine[]" punishments for violations of the alleged overtime cap). *See generally* Def. Mem. at 6-7 (listing assertions made in Eterno's expert report acknowledged at deposition to be premised on common knowledge, general discussions, or other unverifiable sources).

Defendants also argue that Eterno is barred from testifying by two conflict of interest provisions of the New York City Charter. Section 2604(d)(4) states:

> No person who has served as a public servant shall . . . receive compensation for any services rendered, in relation to any particular matter involving the same party or parties with respect to which particular matter such person had participated personally and substantially as a public servant through decision, approval, recommendation, investigation or other similar activities.

Similarly, section 2604(d)(5) states:

> No public servant shall, after leaving city service, disclose or use for private advantage any confidential information gained from public service which is not otherwise made available to the public; provided, however, that this shall not prohibit any public servant from disclosing any information concerning conduct which the public servant knows or reasonably believes to involve waste, inefficiency, corruption, criminal activity or conflict of interest.

The purpose on these provisions is "'to prevent public servants from exploiting public office for personal gain, subordinating the interests of the City to those of a prospective employer, or exerting special influence on government decision-making.'"[67]

---

[67] *R.A.C. Group, Inc. v. Board of Educ.*, 799 N.Y.S.2d 559, 564 (2d Dep't 2005) (quoting New York City Conflicts of Interest Bd., Advisory Op. 94-19, at 2 (1994)).

Testimony of a former city employee concerning possible statutory violations by city agencies is not the type of conduct that the Charter provisions aim to prevent. With regard to the first provision, Eterno did not work on the particular matter at issue, a dispute concerning the overtime policies of the NYPD.[68] Nor did the matter involve the same parties with whom he worked as a public servant, as that provision must be construed logically – as an anti-corruption provision – not to include the City itself. With regard to the second provision, Eterno is barred only from disclosure of confidential information, as mere statutory violations are not one of the categories of inquiry excluded from the rule. Nevertheless, the provision does not bar non-confidential testimony from an individual previously exposed to confidential matters.[69] Defendants' motion to preclude Eterno's testimony is granted in part and denied in part.

## 2. Plaintiffs Who Have Failed to Provide Discovery

Defendants next move in limine to "preclude evidence relating to [fifty-seven] opt-in plaintiffs who failed to meet their discovery obligations,

---

[68] *Cf. St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 279 F. Supp. 2d 169, 170 (S.D.N.Y. 2003) (barring a former Acting Commissioner of the Department of Buildings from providing expert testimony after he had supervised the City's investigation of the subject matter of the litigation).

[69] *See* New York City Conflict of Interest Bd., Advisory Op. 94-5 (1994).

19

ignored various court orders by failing to appear for their noticed deposition and/or failed to respond to [d]efendants' discovery requests."[70] Plaintiffs have responded by agreeing "not to call these [non-compliant] Representative Plaintiffs as witnesses at trial,"[71] but they resist defendants' call for harsher remedies, including dismissal of those plaintiffs' claims and issuance of an adverse inference instruction concerning information that might have come to light had plaintiffs been fully compliant with discovery obligations.[72]

Dismissal under Rule 41(b) for failure to comply with a court order is governed by five factors:

> [1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard, and [5] whether the judge has adequately assessed the efficacy of lesser

---

[70]    Def. Mem. at 1. *Accord id.* at 17-18;  Fed. R. Civ. P. 37(d)(1)(A)(i) (providing for sanctions if a party fails to appear at a deposition after proper notice); Fed. R. Civ. P. 41(b) (providing for involuntary dismissal if a plaintiff fails to comply with a court order).

[71]    Pl. Opp. Mem. at 15 n.3.

[72]    *See id.* at 15.

sanctions.[73]

This Court has wide discretion concerning whether and to what extent to impose sanctions related to a failure to abide by discovery orders.[74]

The five factors weigh in favor of a more moderate sanction than outright dismissal. Although these plaintiffs were ordered to produce documents within two weeks at a status conference more than six months ago, this Court denied defendants' request for an order to show cause that would have expressly warned plaintiffs that their claims would be dismissed if they failed to comply.[75] Moreover, defendants have received voluminous discovery such that these plaintiffs' failure to produce documents will not severely prejudice their case. Dismissal of fifty-seven plaintiffs among 16,000 would not alleviate court congestion, and lesser sanctions will adequately address this issue. The motion to dismiss the claims of the fifty-seven non-compliant plaintiffs is denied. Moreover, those plaintiffs may offer evidence of damages, as preclusion of such proof would be tantamount to dismissal.

---

[73]    *Wynder v. McMahon*, 360 F.3d 73, 78-79 & n.9 (2d Cir. 2004) (quotation and citation omitted).

[74]    *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007).

[75]    *See* Def. Mem. at 17-18.

21

A party seeking an adverse inference must show

> (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.[76]

This court has "broad discretion" concerning whether to issue an adverse inference in response to a "breach of discovery obligation."[77]

Here forty-five of the 250 randomly selected plaintiffs failed to comply with an order that they produce the memo-books in which they log their hours.[78] There is no doubt that plaintiffs had control over the memo-books and an obligation to produce them. Moreover, the threshold for a finding of a "culpable state of mind" is quite low. "'It makes little difference to the party victimized by the [failure to produce] evidence whether that act was done willfully or negligently,'" and it follows that such distinctions make little difference to the

---

[76]     *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

[77]     *Id.*

[78]     *See* 9/15/08 Declaration of Victoria Steinmetz, defendants' attorney ("Steinmetz Decl."), ¶ 3.

Court as well.[79] Here the Court repeatedly directed select plaintiffs to produce the

memo-books and issued pellucid warnings that failure to comply with discovery

orders would bear consequences.[80] Therefore, the second factor is met as well.

However, the memo books are of limited relevance to the claims remaining in this

case. The principal evidence contained in the memo books relates to an officer's

notations regarding breaks from work[81] Because this Court has rejected

defendants' meal period defense,[82] the questions of whether officers take breaks

and how long those breaks last are no longer at issue. Therefore, although I am

disturbed by certain plaintiffs' insubordination in the face of court orders, there is

no need for an adverse inference instruction concerning non-production of the

memo books.

Similarly, no adverse inference instruction is necessary concerning

plaintiffs who failed to appear for noticed depositions. Plaintiffs' self-imposed

---

[79]    *Residential Funding*, 306 F.3d at 108 (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991)).

[80]    *See* 9/17/07 Scheduling Order, Ex. A to Steinmetz Decl. (detailing discovery obligations and deadlines); Def. Mem. at 17-18 (describing this Court's warnings at the April 2, 2008 status conference concerning the repercussions of non-compliance).

[81]    *See* 2/21/08 Hearing, Transcript at 31.

[82]    *See Scott*, 2008 WL 4104020, at *24-*27.

sanction of declining to list any of the non-compliant plaintiffs as witnesses for trial provides an adequate penalty. Moreover, defendants' rejection of some plaintiffs' attempts to reschedule depositions after the discovery cutoff negates proof of plaintiffs' culpable state of mind.[83] Defendants' motion is granted in part and denied in part.[84]

### 3. Common Knowledge Testimony

Defendants' final motion in limine seeks to preclude what they describe as "hearsay evidence relating to an alleged 'cap' on cash overtime based on alleged 'common knowledge' within the NYPD."[85] Plaintiffs respond that such testimony is an officer's personal knowledge that he or she has acquired by "[t]alking with other people."[86]

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

---

[83]     *See* Pl. Opp. Mem. at 19-20.

[84]     The motion is granted only insofar as the non-complaint plaintiffs may not testify at trial. As noted above, plaintiffs agreed to this sanction prior to resolution of defendants' motions in limine.

[85]     Def. Mem. at 2. *Accord id.* at 23.

[86]     Pl. Opp. Mem. at 23.

asserted."[87]  Hearsay testimony is inadmissible unless it is subject to one of

numerous exclusions or exemptions.[88]  No such exemption or exclusion exists for

"common knowledge" testimony.  Nor may hearsay become personal knowledge

merely because a witness has internalized statements made by others and decided

they must be true.  Even if a witness attests that she has received the same

information from numerous sources, it does not overcome the fundamental notion

that the witness is repeating the content of out-of-court statements.  Unattributed

out-of-court statements also cannot be offered in court to build a foundation for

testimony that relies on no other source.  This formulation merely rephrases the

hearsay rule.

　　　　The parties do not contest that out-of-court statements by

commanding officers confirming particular NYPD policies are categorized as non-

hearsay because they are admissions by a party opponent.[89]  Therefore such

evidence is admissible.  In all other respects, an attestation of "common

knowledge" is in fact "no evidence" at all.[90]  Defendants' motion is granted.

---

[87]　　Fed. R. Evid. 601(c).

[88]　　*See* Fed. R. Evid. 602.

[89]　　*See* Def. Reply Mem. at 8.  *See also* Fed. R. Evid. 801(d)(2).

[90]　　*Shumway v. United Postal Serv., Inc.*, 118 F.3d 60, 64-65 (2d Cir. 1997).

## IV. CONCLUSION

For the reasons set forth above, plaintiffs' motions in limine are denied. Defendants' motions in limine are granted in part and denied in part. The Clerk of the Court is directed to close these motions (Docket Nos. 218, 220, 221, and 222).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October 27, 2008

# - Appearances -

**For Plaintiffs:**

Thomas P. Puccio, Esq.
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, New York 10169
(212) 883-6383

Gary A. Orseck, Esq.
Lawrence S. Robbins, Esq.
Damon W. Taaffe, Esq.
Robbins, Russell, Englert, Orseck,
        Untereiner & Sauber LLP
1801 K. Street, NW, Suite 411
Washington, DC 20006
(202) 775-4500

Will Aitchison, Esq.
Mark A. Crabtree, Esq.
Aitchison & Vick, Inc.
3021 N.E. Broadway
Portland, Oregon 97232
(503) 282-6160

John T. Brennan, Esq.
Law Offices of John T. Brennan
26 Court Street, Suite 710
Brooklyn, New York 11242
(718) 923-5640

**For Defendants:**

Lorie E. Almon, Esq.
Gerald L. Maatman, Jr., Esq.
Peter A. Walker, Esq.
Robert S. Witman, Esq.
Seyfarth Shaw LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

James M. Lemonedes
Assistant Corporation Counsel
100 Church Street, Room 2-172
New York, New York 10007
(212) 788-0881