UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

KEENAN M. SCOTT, *et al.*,

        Plaintiffs,

   - against -

CITY OF NEW YORK and THE NEW
YORK CITY POLICE DEPARTMENT,

        Defendants.

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/10/08

**OPINION AND ORDER**

**02 Civ. 9530 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Over fifteen thousand current and former New York City police officers and detectives ("plaintiffs") assert that the City of New York and the New York City Police Department ("NYPD") (collectively "defendants") systematically violate plaintiffs' overtime rights under the Fair Labor Standards Act ("FLSA").[1] This lawsuit addresses the policies and practices of the nation's largest police department, and plaintiffs claim hundreds of millions of dollars in damages based on defendants' alleged failures concerning the accrual, use, and payment of

---

[1]    29 U.S.C. §§ 201-219.

1

overtime.

Plaintiffs now move for summary judgment concerning their expert's calculation of damages related to two of their five claims. Because I find that plaintiffs' calculations are based, in part, on several errors of law, their motion for summary judgment is denied. I will, however, explain the conclusions supporting this decision in order to facilitate more accurate calculations as this case proceeds.[2]

## II.    BACKGROUND

### A.    Procedural Posture

Plaintiffs filed their initial complaint on November 27, 2002, and an amended complaint on February 24, 2003. The amended complaint asserts five distinct claims; two are relevant to this motion. *First*, plaintiffs claim that some regular work schedules contain overtime, for which they are not compensated (the "chart" claim).[3] *Second*, plaintiffs claim that defendants improperly exclude shift differentials and longevity pay when calculating FLSA overtime rates (the

---

[2]     If plaintiffs recalculate damages in accordance with these rulings and provide calculations using both a two-year and a three-year statute of limitations, judgment may be entered after willfulness is determined at trial.

[3]     *See* Amended Complaint ¶¶ 22-31.

2

"regular rate" claim.[4]

On June 23, 2004, this Court denied defendants' motion to dismiss one of plaintiffs' claims, as well as defendants' motion to join plaintiffs' unions as necessary parties.[5] On December 27, 2004, this Court denied defendants' motion to dismiss the chart claim, the regular rate claim, and another of plaintiffs' claims.[6] Finally, on August 28, 2008, this Court granted in part and denied in part both parties' cross-motions for summary judgment.[7] In particular, this Court granted summary judgment to plaintiffs as to liability only on their chart and regular rate claims.[8]

## B.    Uncontested Facts

### 1.    Damages Calculations

Plaintiffs' damages expert – Murray Simpson – has prepared damages figures concerning the chart and regular rate claims. These calculations include

---

[4]    *See id.* ¶¶ 32-35.

[5]    *See Scott v. City of New York*, 340 F. Supp. 2d 371 (S.D.N.Y. 2004).

[6]    *See Scott v. City of New York*, No. 02 Civ. 9530, 2004 WL 2980135 (S.D.N.Y. Dec. 27, 2004).

[7]    *See Scott v. City of New York* ("*Scott III*"), No. 02 Civ. 9530, 2008 WL 4104020 (S.D.N.Y. Aug. 28, 2008).

[8]    *See id.* at *11-*12.

seven features that defendants contest. *First*, the calculations do not include

officers' semi-annual "holiday pay" as a credit against outstanding FLSA

liabilities.[9] *Second*, the calculations apply FLSA credit only against liabilities

accrued in the same twenty-eight day "work period" in which the credit is earned.

If credit in a single work period exceeds liabilities, the excess credit is effectively

lost.[10] *Third*, plaintiffs' calculations include credit for contractual overtime only

when officers were compensated in cash. If officers elected to receive

compensatory time off in lieu of cash, no credit is included in plaintiffs'

calculations.[11] *Fourth*, plaintiffs determined an officer's regular rate of pay using

only regularly scheduled tours of duty, rather than the total number of hours

worked in a given work period.[12] *Fifth*, plaintiffs value compensatory time used

based on an officer's base hourly wage, rather than the regular rate of pay.[13] *Sixth*,

---

[9]     *See* 9/29/08 Declaration of Murray Simpson, plaintiffs' damages
expert ("Simpson Decl."), ¶ 8.

[10]     *See id.* ¶ 10.

[11]     *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for
Summary Judgment Concerning Damages on Counts III & IV ("Def. Mem.") at 4.

[12]     *See* Simpson Decl. ¶ 5.

[13]     *See* 10/2/08 Deposition of Murray S. Simpson ("Simpson Dep."),
plaintiffs' damages expert, at 155-56, Ex. C to 10/7/08 Declaration of Damon W.
Taaffe, plaintiffs' attorney.

4

plaintiffs attribute the hours worked after an individual crosses the statutory overtime threshold to FLSA overtime, rather than permitting the employer to allocate time between contractual and statutory overtime.[14] *Seventh*, plaintiffs calculate damages based on a three-year statute of limitations period, rather than the two-year statute of limitations used for non-willful FLSA violations.[15]

### 2.    Holiday Pay

The terms and conditions of plaintiffs' employment by defendants are set forth in the Collective Bargaining Agreements ("CBAs") reached between their unions and the City of New York.[16] The CBAs state, "'Each employee shall receive eleven (11) paid holidays annually, payments for which shall be made in accord with existing procedures.'"[17] This comports with the eleven paid holidays

---

[14]    *See* Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment Concerning Damages on Counts III and IV ("Pl. Mem.") at 15.

[15]    Simpson Dep. at 95-96, Ex. B to 10/3/08 Declaration of Lorie E. Almon, defendants' attorney.

[16]    *See* Plaintiffs' Statement of Material Facts Not in Dispute ("Pl. 56.1") ¶¶ 1-2.

[17]    *Id.* (quoting 12/18/95 Patrolmen's Benevolent Association 1995-2000 Agreement ("PBA 1995 CBA"), art. IX, Ex. A to 8/27/08 Declaration of John E. Kanganis, Lieutenant, NYPD ("Kanganis Decl."); 5/7/07 Detectives' Endowment Association 2004-2008 Agreement ("DEA 2004 CBA"), art. IX, Ex. H to Kanganis Decl.).

provided to all New York City employees.[18] Unlike the actual work schedules of most city employees, however, officers' regular duty charts do not account for holidays.[19] Officers are ordered to work some holidays and are given regular days off on others.

### 3. Contractual Overtime

The CBAs award overtime for three categories of work. *First,* overtime compensation at a rate of time and one-half is awarded for all work "in excess of forty (40) hours in any week or in excess of the hours required of an employee by reason of the employee's regular duty chart."[20] *Second,* officers are awarded overtime compensation when they are recalled to duty between assigned shifts and released prior to commencement of their next shift.[21] *Third,* patrol officers are awarded overtime for time spent traveling to posts outside of their

---

[18]     *See* Department of Citywide Administrative Services, *Personnel Services Bulletin No. 440-2* (1997), *available at* http://www.nyc.gov/html/dcas/html/resources/440_2r.shtml. Defendants' suggestion that "each officer will work at least 11 holidays a year," Def. Mem. at 2, requires a classification of days not considered holidays for any other city employee as holidays for the NYPD.

[19]     *See* Pl. 56.1 ¶ 3; Defendants' Counterstatement Pursuant to Local Civil Rule 56.1 ¶ 3. *See also* Def. Mem. at 3 (explaining the system).

[20]     PBA 1995 CBA, art. III, § 1(a); DEA 2004 CBA, art. III, § 1(a).

[21]     *See* PBA 1995 CBA, art. IV; DEA 2004 CBA art. IV.

permanent command.[22] Compensation for this contractual overtime may be taken either in cash or compensatory time off, at the employee's sole option.[23]

### 3. Longevity Pay and Shift Differentials

Under the CBAs, police officers are entitled to longevity payments once they have reached certain thresholds of experience.[24] The CBAs treat these payments as adjustments to basic salaries and include them in tables of officers' yearly "salary rates."[25] In addition, the CBAs provide for shift differentials of ten percent for all hours worked between 4:00 p.m. and 8:00 a.m.[26]

### 4. Bookkeeping

Defendants' current bookkeeping methods place earned *compensatory time* in either a "FLSA bank" or a "non-FLSA bank."[27] These

---

[22]   *See* PBA 1995 CBA, art. XXI, § 2(a).

[23]   *See* PBA 1995 CBA, art III, § 1(a); *id.* art. IV, §§ 1-2, 5; *id.* art. XXI, § 3; DEA 2004 CBA, art III, § 1(a); *id.* art. IV, §§ 1-2, 5; *id.* art. XXI, § 3.

[24]   *See, e.g.*, PBA 1995 CBA, art. VIII; DEA 2004 CBA, art. VIII.

[25]   PBA 1995 CBA, art. VI, § 1; DEA 2004 CBA, art. VI, § 1.

[26]   *See, e.g.*, PBA 1995 CBA, art. XX, § a; DEA 2004 CBA, art. XVIII, § a.

[27]   *See* Defendants' Supplemental Memorandum of Law Concerning Damages ("Def. Supp. Mem.") at 1; Plaintiffs' Response to Defendants' Supplemental Memorandum in Opposition to [Plaintiffs'] Motion for Summary Judgment Concerning Damages on Counts III and IV ("Pl. Supp. Mem.") at 1 n.1.

"banks" hold only compensatory time, as cash overtime is disbursed at the end of a work period. These separate tallies distinguish between compensatory time provided as overtime compensation under the CBAs (the non-FLSA bank) and overtime compensation under the FLSA (the FLSA bank). The dividing line between FLSA overtime and non-FLSA overtime is the 171-hour threshold for statutory overtime for police officers.[28] When designating overtime as FLSA or non-FLSA within a given work period, defendants' payroll system first counts regularly scheduled hours, then overtime for which officers elected to receive compensatory time, then overtime for which officers elected to receive cash.[29] Therefore, under the NYPD's bookkeeping rules, officers will not accrue any time in their FLSA bank unless their regular hours and overtime hours for which they elect to receive compensatory time total more than 171 hours. Overtime hours worked for cash compensation can have no effect on this calculation.

## III.  APPLICABLE LAW

### A.  Legal Standards

The August 28, 2008 summary judgment opinion laid out the legal standards concerning summary judgment, statutory interpretation, and deference to

---

[28]     *See* Def. Supp. Mem. at 2; Pl. Supp. Mem. at 1.

[29]     *See* Def. Supp. Mem. at 2; Pl. Supp. Mem. at 1.

administrative materials.[30] Those standards continue to govern this case, and the Court assumes familiarity with them for the purpose of this decision.

## B. FLSA Credits

FLSA credits three categories of contractual compensation ("contract overtime") towards overtime compensation mandated by the Act ("statutory overtime").[31] *First*, employers receive credit for "extra compensation provided by a premium rate" for hours worked "in excess" of an employee's regular working hours.[32] *Second*, employers receive credit for "extra compensation provided by a premium rate" of one and one-half times the rate paid for non-overtime for work performed on weekends, holidays, and other days of rest.[33] *Third*, employers receive credit for "extra compensation provided by a premium rate" of one and one-half times the rate paid for non-overtime for work performed "outside" the regular workday or workweek.[34]

On the other hand, several categories of compensation outside of

---

[30]  *See Scott III*, 2008 WL 4104020, at \*4-\*5.

[31]  *See* 29 U.S.C. § 207(h)(2).

[32]  *Id.* § 207(e)(5).

[33]  *Id.* § 207(e)(6).

[34]  *Id.* § 207(e)(7).

9

regular wages are not credited against statutory overtime.[35] Only one is relevant

to this case:

> payments made for occasional periods when no work is
> performed due to vacation, holiday, illness . . . or other
> similar cause; reasonable payments for traveling expenses,
> or other expenses, incurred by an employee in the
> furtherance of his employer's interests and properly
> reimbursable by the employer; and other similar payments
> to an employee which are not made as compensation for his
> hours of employment.[36]

When an employee is "entitled to a certain sum as holiday or vacation pay,

whether he works or not, . . . the certain sum allocable to holiday or vacation pay

is still to be excluded from" the category of supplemental pay that is credited

against FLSA obligations.[37] By contrast, where an employee is entitled to some

holiday pay regardless of whether he works but will be given greater

compensation if he is *required* to work on a holiday, the increased compensation is

creditable against FLSA obligations.[38]

The FLSA fails to note expressly whether those credits must be

applied in the particular workweek or work period in which they accrue. The text

---

35    *See id.* § 207(h)(1).

36    *Id.* § 207(e)(2).

37    29 C.F.R. § 778.219(a).

38    *See id.* § 778.219(b)(1).

10

of the Act merely states, "Extra compensation . . . shall be creditable toward overtime compensation payable pursuant to this section."[39] However, regulations promulgated by the Department of Labor ("DoL") resolve this ambiguity by stating that an employer may credit extra payments "against the overtime compensation which is due under the statute for hours in excess of 40 in that workweek."[40] DoL further clarified its position in an opinion letter, stating, "[S]urplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of the FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods."[41]

## C. Regular Rate Calculation

The FLSA requires that overtime be paid "at a rate not less than one and one-half times the regular rate at which [the employee] is employed."[42] "While the words 'regular rate' are not defined in the Act, they obviously mean the

---

[39]  29 U.S.C. § 207(h)(2).

[40]  29 C.F.R. § 778.202(c). *Accord id.* § 778.104 ("Each workweek stands alone.").

[41]  Letter from Herbert J. Cohen, Deputy Administrator, U.S. Dep't of Labor, WH-526, 1985 WL 304329 (Dec. 23, 1985).

[42]  29 U.S.C. § 207(a)(1).

hourly rate actually paid for the normal, non-overtime work[ period]."[43]  "As the regular rate of pay cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee, it must be drawn from what happens under the employment contract."[44]  The regular rate is "'properly calculated by adding all of the wages payable for the hours worked . . . and dividing by the total number of hours worked.'"[45]  Thus, "[t]hose who receive incentive bonuses in addition to their guaranteed base pay clearly receive a greater regular rate than the minimum base rate."[46]

### D.     Compensatory Time

Subject to numerous conditions, state and municipal employees may receive compensation for statutory overtime in the form of cash, compensatory time off, or a combination thereof.[47]  However, the statute provides no guidance concerning how compensatory time and cash overtime are to be allocated.  The

---

[43]     *Walling v. Helmerich & Payne*, 323 U.S. 37, 40 (1944).  *Accord Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 595 (2d Cir. 2007).

[44]     *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464 (1948).

[45]     *Gorman*, 488 F.3d at 596 (2d Cir. 2007) (quoting *Brock v. Wilamowsky*, 833 F.2d 11, 14 (2d Cir. 1987)).

[46]     *Walling v. Harnischfeger Corp.*, 325 U.S. 431 (1945).

[47]     *See* 29 U.S.C. § 207(o); 29 C.F.R. § 553.23(a)(2).

DoL regulations provide only that the mechanics of implementation are governed by "agreements or understandings" between employer and employees,[48] which in this case is limited to the CBAs.[49]

## E.    Statute of Limitations

"The FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions, but allows a three-year limitations period for 'a cause of action arising out of a willful violation.'"[50] Proof of willfulness requires a factual showing that the employer either "'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'"[51]

## IV.    DISCUSSION

### A.    Holiday Pay

Plaintiffs argue that their damages calculations need not credit

---

[48]    29 C.F.R. § 553.23(a)(2).

[49]    *See* 29 U.S.C. § 207(o)(2)(A)(ii) (noting that informal understandings may only be applied when an employee is not covered by a CBA).

[50]    *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) (quoting 29 U.S.C. § 255(a)).

[51]    *Porter v. New York Univ. School of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (alteration in original)).

defendants for semi-annual "holiday pay."[52]  The interplay between sections 207(e)(2) and 207(e)(6) of Title 29 of the U.S. Code makes the question simple and the answer difficult.  The statute credits the employer if payments supplement regular wages provided on holidays when officers *must work*.  The statute does not credit the employer if payments merely compensate for holidays when officers *do not work or choose to work*.  Therefore the question of credit turns on whether an officer must work on a particular holiday.

The text of the CBAs suggests that the NYPD provides supplemental payments for a "paid holiday" – *i.e.*, a paid day on which officers need not work.[53]  On the other hand, the title of the CBA provision providing holiday pay is "Payment for Holiday Work,"[54] which indicates that all of the relevant supplemental payments compensate officers for working on holidays.  Reality lies somewhere in between.  Because New York City requires police protection every day of the year, plaintiffs' duty charts do not take holidays into account.  In effect, on some holidays officers receive a full days' pay for not working; on others, they

[52]  *See* Pl. Mem. at 5-7.

[53]  Pl. 56.1 ¶¶ 1-2.  *See also Webster's II New Riverside Dictionary* 586-87 (3d ed. 1994) (defining holiday as "[a] day free from work that one may spend at leisure").

[54]  PBA 1995 CBA, art. IX; DEA 2004 CBA, art. IX.

14

are ordered to work and receive a 100% premium on their regular wages.

Therefore, plaintiffs' damages calculations failed to include FLSA

credit for holiday payments that reflect days on which an officer was ordered to

work when other municipal employees had a paid holiday. However, the damages

calculations correctly awarded no credit for holiday payments that reflect days on

which an officer did not work or chose not to work.

## B.    Application of FLSA Credit

Plaintiffs argue that any credit to which defendants are entitled may

be applied only in the work period in which credit accrued.[55] As described above,

DoL has taken the position that "surplus overtime premium payments, which may

be credited against overtime pay pursuant to section 7(h) of the FLSA, may not be

carried forward or applied retroactively to satisfy an employer's overtime pay

obligation in future or past pay periods."[56] This Court must apply the agency's

interpretation of the Act unless it is not "'a permissible construction of the

[55]    *See* Pl. Mem. at 7-10.

[56]    Letter from Herbert J. Cohen, *supra* note 41. A letter is entitled to the
full measure of deference when clarifying a formal DoL interpretation. *See Auer
v. Robbins*, 519 U.S. 452, 461 (1997). The clarified DoL interpretation, 29 C.F.R.
§ 778.202(c), is in turn entitled to this Court's full deference. *See Long Island
Care at Home, Ltd. v. Coke*, — U.S. —, 127 S. Ct. 2339 (2007).

15

statute.'"[57] Although the text of the FLSA is ambiguous concerning the application

of credit, both the structure of the Act and its legislative history lend credence to

DoL's interpretation.

When calculating statutory overtime, the FLSA uses a single

workweek as the basic unit of measurement.[58] In the exceptional case of public

law enforcement employees, the statute substitutes a twenty-eight day work period

or "tour of duty" for the single workweek.[59] Compensation for overtime in a work

period must be paid "on the regular pay day for the period in which such work[

period] ends."[60] The requirement protects workers from the imposition of

---

[57]   *Llanos-Fernandez v. Mukasey*, 535 F.3d 79, 82 (2d Cir. 2008)
(quoting *Fulani v. FCC*, 49 F.3d 904, 910 (2d Cir. 1995)). *Accord Rogers v. City
of Troy*, 148 F.3d 52, 57 (2d Cir. 1998) (deferring to agency interpretations
concerning time-of-payment).

[58]   *See* 29 U.S.C. § 207(a)(1). *See also Roland Elec. Co. v. Black*, 163
F.2d 417, 421 (4th Cir. 1947) ("[T]he Act takes as its standard a single workweek
consisting of seven consecutive days.").

[59]   29 U.S.C. § 207(k)(1)(B); 29 C.F.R. § 553.201. DoL regulations note
that in such cases the term "work period" should be substituted for "workweek" in
the statutory text. *See* 29 C.F.R. § 553.233.

[60]   29 C.F.R. § 778.106. Long-standing precedent mandates this prompt
accounting requirement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 &
n.20 (1945). *See also Rogers*, 148 F.3d at 57 ("[W]hat constitutes timely payment
must be determined by objective standards – and not solely by reference to the
parties' contractual arrangements.").

16

excessive hours by placing an immediate cost on the employer.[61] If employers were allowed to bank credit for contractual overtime against future obligations to pay statutory overtime, it would place workers in the employer's debt, such that they would have to work a certain amount of overtime before they would again receive statutory overtime compensation. Although sophisticated employers would understand the cost of depleting a credit reserve, use of such a reserve system would undermine the full protection created by Congress. If an employer found it had credit to spare as a result of contractually guaranteed payments, it could require an employee to work large blocks of overtime months later without the sting of premium compensation.

Moreover, the legislative history of the FLSA indicates that Congress intended to limit the application of credit. The first incarnation of the credit provision allowed application "toward *any* premium compensation due."[62]

---

[61]     *See Howard v. City of Springfield*, 274 F.3d 1141, 1148 (7th Cir. 2001) ("The credit provision must be read in the context of the statute as a whole, which is designed to protect workers from the twin evils of excessive work hours and substandard wages.") (citing *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981)).

[62]     Fair Labor Standards Act of 1938 Amendments, Pub. L. No. 81-177, 63 Stat. 466, 466 (1949) (emphasis added).

17

However, later amendment eliminated the word "any."[63] Logically this excision

restricts the application of credit to the standard calculations conducted under the

FLSA – calculations made on a workweek or work period basis. Based on both

the structure and legislative history of the FLSA, DoL's regulatory position is not

only "a permissible construction of the statute;" it is the most reasonable

interpretation.[64]

Defendants protest that this conclusion will result in a windfall for

plaintiffs at the taxpayers' expense.[65] However defendants' suggested alternative

---

[63]     *See* 29 U.S.C. § 207(h)(2). *See also* Fair Labor Standards
Amendments of 1949, Pub. L. No. 81-393, § 7, 63 Stat. 910, 915 (1949) (removing
"any").

[64]     There is a division among the circuits concerning this conclusion.
*Compare Herman v. Fabri-Centers of America, Inc.*, 308 F.3d 580, 589 (6th Cir.
2002), *Howard*, 274 F.3d at 1148-49, *and Reich v. Southern N.E. Telecomm.
Corp.*, 892 F. Supp. 389, 405 (D. Conn. 1995), *aff'd* (issue not raised on appeal),
121 F.3d 58 (2d Cir. 1997) (applying credit only within a single workweek or
work period), *with Kohlheim v. Glynn County*, 915 F.2d 1473, 1481 (11th Cir.
1990), *and O'Brien v. Town of Agawam*, 491 F. Supp. 2d 170, 175-76 (D. Mass.
2007) (allowing credit to be applied outside the workweek or work period in
which it accrued). The Second Circuit has recognized the division of authority but
has declined thus far to comment on it. *See Harold Levinson Assocs. v. Chao*, 37
Fed. Appx. 19, 22 (2d Cir. 2002). However, *Kohlheim* contains no analysis
beyond recitation of the statutory text, and *O'Brien* erred by analogizing accrual of
compensatory time into an employee's reserve with the accrual of credit by the
employer, despite the lack of a statutory basis for this analogy. I find those non-
binding precedents unpersuasive.

[65]     *See* Def. Mem. at 5.

– a one-year window for application of FLSA credit – finds no basis in the statutory text; its very arbitrariness evinces that their position is flawed. Nothing in the FLSA required the NYPD to agree to a contract containing overtime provisions that in some aspects exceed those required by the FLSA. Whether attributable to the power of plaintiffs' unions or the City's recognition of the sacrifices police officers make, these payments may not be used as credit against compensation required by the FLSA months after it is received.

Therefore, plaintiffs' damages calculations properly applied FLSA credit only within the work period in which it accrued.

## C. Credit for Contractual Compensatory Time

Defendants also challenge plaintiffs' damages calculations based on their failure to credit defendants for contractual overtime for which officers receive compensatory time rather than cash.[66] Whether or not the FLSA mandates that an employer receives credit for contractual overtime awarded as compensatory time is a question of first impression in the federal courts.

Statutory interpretation "necessarily begins with the 'plain meaning' of a law's text and, absent ambiguity, will generally end there."[67] Section

---

[66]  *See id.* at 3.

[67]  *Collazos v. United States*, 368 F.3d 190, 196 (2d Cir. 2004).

19

207(h)(2) of Title 29 of the U.S. Code states, "Extra compensation paid [for specified activities] shall be creditable toward overtime compensation payable pursuant to this section."[68] Nothing in the text of section 207(h) indicates a limitation on the form that compensation may take in order to be creditable. "Absent an express restriction . . . or a clearly stated legislative purpose limiting the statute's plain meaning, a judicial limitation . . . would be an unwarranted judicial intrusion into a matter confided to Congress."[69] Therefore, "compensation" must include payment in any permissible form, in this case both cash and compensatory time.

This interpretation is supported by dictionary definitions of the key term: compensation.[70] Webster's II New Riverside University Dictionary defines compensation as "[s]omething given or received as payment or reparation, as for goods, services, or loss."[71] Black's Law Dictionary similarly defines

---

[68]     29 U.S.C. § 207(h)(2).

[69]     *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 115 (2d Cir. 1992).

[70]     *See, e.g.*, *United States v. Kozeny*, 541 F.3d 166, 172 (2d Cir. 2008) (using a variety of general and legal dictionaries to support the court's perception of the plain meaning of the statutory text).

[71]     *Webster's II New Riverside Dictionary* 290. The New Riverside Dictionary is an authoritative dictionary that has been relied upon by the Second Circuit. *See, e.g.*, *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (utilizing the New Riverside Dictionary's definition of "jail").

compensation as "[r]emuneration and other benefits received in return for services rendered."[72] There is no doubt that "compensatory time" is given as payment or a benefit in exchange for services rendered by police officers.

Moreover, section 207(o) – the provision that authorizes the use of compensatory time – provides a definition of "overtime compensation" that supports this reading. The statute allows awards of compensatory time to eligible employees "in lieu of overtime compensation,"[73] and the statute defines "overtime compensation" as "compensation required by subsection (a)" – in other words cash overtime.[74] However, the statute expressly restricts the use of this definition to the subsection concerning compensatory time.[75] Thus this limited definition of overtime compensation should *not* be applied to the statute as a whole.

Finally, the overarching purpose of the credit provision favors the broader interpretation of "compensation." When Congress first enacted section 207(h), it closed a loophole created by the Supreme Court's decision in *Bay Ridge v. Aaron* that had forced payment of "overtime on overtime" – a statutory premium

---

[72]  *Black's Law Dictionary* 301 (8th ed. 2004).

[73]  29 U.S.C. § 207(o)(1).

[74]  *Id.* § 207(o)(7)(A).

[75]  *See id.* § 207(o)(7).

21

for overtime on top of any overtime compensation guaranteed in a CBA.[76]  Here,

when an officer elects to receive compensatory time as remuneration for an hour

of contractual overtime, the NYPD  must eventually pay regular salary for one and

one-half hours of time not worked.  If this award did not offset premium

compensation required by the FLSA and an officer had already crossed the

statutory overtime threshold, the officer would receive another one and one-half

hours of statutory compensation for the *same* hour worked, either in cash or

compensatory time.  Therefore the officer would receive either a total of three

hours of compensatory time for one hour of overtime work or one and one-half

hours of compensatory time and one and one-half hours worth of cash wages.

Particularly where the choice between compensatory time and cash overtime rests

solely in the employee's hands, this outcome is clearly against congressional

intent.

Therefore plaintiffs' damages calculations improperly failed to credit

defendants for compensatory time awarded as compensation for contractual

overtime.

## D.    Calculation of the Regular Rate

---

[76]    *Herman*, 308 F.3d at 587 (citing *Bay Ridge Operating Co.*, 334 U.S.
at 446).

22

The crux of the dispute between the parties concerning the regular rate is whether the rate is based on compensation for an officer's regular work schedule or whether it must be determined based on all hours an officer has worked, including overtime. The parties have labeled this disagreement "the denominator dispute."[77] The importance of this distinction rests on whether fixed weekly payments must be distributed across the number of hours the officer was *assigned* to work or the number of hours the officer *actually* worked. An employee's regular rate of pay will of course be higher if fixed payments – specifically longevity pay – are spread across fewer hours of work.

The Supreme Court laid out the general principle underlying regular rate calculations in *Wallling v. Helmerich & Payne*, where it stated, "While the words 'regular rate' are not defined in the Act, they obviously mean the hourly rate actually paid for the normal, non-overtime workweek."[78] Moreover, several DoL regulations note the Supreme Court's holding in *Walling* and other cases.[79]

---

[77]   Pl. Mem. at 11.

[78]   323 U.S. 37, 40 (1944). *Accord Gorman*, 488 F.3d at 595 ("As the Supreme Court has explained, [the regular rate] is 'the hourly rate actually paid the employee for the normal, non-overtime workweek.") (quoting *Walling*, 325 U.S. at 424).

[79]   *See, e.g.*, 29 C.F.R. § 778.108.

23

However, defendants correctly note that the most on-point regulation does not echo the language of *Walling*.[80] Specifically, 29 C.F.R. § 778.209 – entitled "Method of inclusion of bonus in regular rate" – states that a bonus payment should be "added to the other earnings of the employee . . . and the total divided by total hours worked."[81] It is unclear whether the regulation refers to the total non-overtime hours worked or the total hours worked including overtime.

"The proper scope of [a regulation] is derived not from reading it in isolation, but from a careful consideration of the complete regulatory scheme . . . against the backdrop of its policies and objectives."[82] Thus any ambiguity in section 778.209 should be resolved to yield a single consistent understanding of the regular rate throughout the DoL FLSA regulations.[83] The basic regulation unambiguously defines the regular rate as "the hourly rate actually paid for the

---

[80]    *See* Def. Mem. at 11. *See also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and capricious.'") (quoting *Heckler v. Campbell*, 461 U.S. 458, 466-68 (1983)).

[81]    29 C.F.R. § 778.209(a).

[82]    *United States v. Stansell*, 847 F.2d 609, 614 (9th Cir. 1988).

[83]    *Cf. Watson v. United States*, — U.S. —, 128 S. Ct. 579, 584 (2008) (noting the "paradigm of a statute 'as a symmetrical and coherent regulatory scheme, . . . in which the operative words have a consistent meaning throughout'") (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995)).

24

normal, non[-]overtime workweek."[84] Therefore the ambiguous term "total hours worked" denotes the total number of hours worked in the regular workweek.

Moreover, this is the most logical outcome based on the purpose of the longevity payments at issue. Where longevity payments are characterized as an addition to an employee's base salary – as the CBAs clearly note – those payments reflect the greater value of an experienced employee's labor. Where an employee's compensation is based on the hours he or she works, the value of that experience is received by the employer for every hour that the employee works. It is counterintuitive for longevity pay – as a component of the regular rate – to decrease when an experienced employee volunteers or is ordered to work more hours than a regularly scheduled work period.

Therefore plaintiffs properly calculated the regular rate by basing their computations solely on work performed during the regular work period.

## E.  Valuation of Compensatory Time

In order to determine the regular rate, it is necessary first to establish how much of an officer's salary is attributable to work he or she performs and how

---

[84]     29 C.F.R. § 778.108 (citing *Youngerman-Reynolds Hardwood Co.*, 325 U.S. at 419).

much is paid for compensatory time, or non-working hours.[85]  If non-working

hours were valued based on plaintiffs' regular rate, a circularity problem would

result, as neither the regular rate nor the value of non-working time could be

established without first determining the value of the other.  In order to avoid that

circularity, plaintiffs' expert valued leave using officers' hourly wages, rather than

their regular rate of pay.[86]  Defendants protest that plaintiffs' method is "arbitrary

and based upon assumptions not supported by any law or regulation," but they

offer no alternative means to escape the circularity.[87]

The purpose of the regular rate is to determine a fair baseline to

compensate workers for overtime employment.[88]  Neither the text of the FLSA nor

DoL regulations require that the regular rate be used to determine the value of

compensatory time or any other non-working time.  Thus, although plaintiffs have

not identified laws or regulations that support their method of valuation,

---

[85]     *See* 29 U.S.C. § 207(e)(2) (excluding from the regular rate payments
made for time not actually worked).

[86]     *See* Reply Memorandum of Law in Support of Plaintiffs' Motion for
Summary Judgment Concerning Damages on Counts III and IV ("Reply Mem.") at
6-7.

[87]     Def. Mem. at 14-15.

[88]     *See* 29 U.S.C. § 207(a)(1)

26

defendants have also failed to identify legal authority precluding plaintiffs' method.

A fair valuation scheme must effectively estimate the true value of compensatory time, in order to facilitate a determination of the regular rate that hews as close as possible to "what happens under the employment contract."[89] In their calculations, plaintiffs divided an officer's bi-weekly base salary and longevity payment by 160.[90] This is the mathematical equivalent of dividing an officer's annual base salary and longevity pay by the number of hours that an officer would be expected to work if he or she worked every tour during the year.[91] DoL regulations do not suggest an alternative means to make such a calculation, and defendants have not provided a fairer method.[92]

---

[89] *Bay Ridge Operating Co.*, 334 U.S. at 464.

[90] *See* Def. Mem. at 14.

[91] An officer who declined to use vacation, sick days, personal days, or compensatory time would work 2088 hours in a year. *See* Undated Expert Witness Report of Murray Simpson, Plaintiffs' Expert, Ex. 14 to 5/9/08 Declaration of Damon W. Taaffe, plaintiffs' attorney, in Support of Plaintiffs' Motion for Partial Summary Judgment, at 38. The number of hours per year, divided by the number of days per year, multiplied by the number of days per work period, equals the number of hours per work period. *I.e.*, 2088 hr/yr ÷ 365.25 dy/yr x 28 dy/wp = 160 hr/wp. In fact, the NYPD payroll system currently uses the same method to approximate the regular rate. *See id.*

[92] This system is imperfect, but it is necessary because of the absence of an hourly valuation provision in either the CBAs or defendants' payroll system.

27

Therefore plaintiffs' calculations properly value paid leave using a method that approximates its fair value.

## F.  Attribution of Overtime as Contractual or Statutory

In order to determine how much of plaintiffs' cash overtime is governed by the FLSA – and therefore subject to FLSA's regular rate requirement – plaintiffs had to determine which overtime hours are contract (or non-FLSA) overtime and which are statutory (or FLSA) overtime. As described above, the NYPD's current bookkeeping methods first count regular hours, then overtime worked for compensatory time, then overtime worked for cash. The line between contract overtime and statutory overtime occurs at 171 hours per work period, as mandated by statute.[93]

_____

*Cf.* Simpson Dep. at 156 (describing inclusion of hourly valuations in payroll systems in other municipalities). This calculation will systematically undervalue compensatory time vis-à-vis the regular rate based on a failure to include shift differentials, but the use of compensatory time also deprives officers of the opportunity to work shifts that would increase their regular rate. When duty charts call for a given officer to work *more than* the average number of hours in a given work period, this calculation will undervalue compensatory time. When duty charts call for an officer to work *less than* the average number of hours, the opposite will be true. Nevertheless, this system closely approximates the actual value of plaintiffs' compensatory time.

[93]  For example, if an officer works 160 hours on her duty chart, 15 hours of overtime for compensatory time, and 10 hours of overtime for cash, she will receive 11 hours of non-FLSA compensatory time, 4 hours of FLSA compensatory time, and 10 hours of FLSA cash overtime. If, on the other hand, an

28

The FLSA declares that "no employer shall employ any of [its]

employees" for a greater number of hours than the statutory overtime threshold

"unless such employee receives compensation for his employment in excess of the

hours [permitted] at the rate not less than one and one-half times the regular rate at

which he is employed."[94] It does not mention which particular hours are subject to

the FLSA; it only asserts that an employer must provide premium compensation

subject to the panoply of statutory protections for hours worked in excess of the

overtime threshold. Nor do the CBAs speak to the bookkeeping practices that will

distinguish between categories of overtime compensation.

The NYPD system does not "exclude[] from the FLSA calculus

overtime hours worked for cash."[95] Under the current system, plaintiffs receive

statutory overtime for the correct number of hours worked beyond the statutory

---

officer works 160 hours on her duty chart, 10 hours of overtime for compensatory
time, and 15 hours of overtime for cash, she will receive 10 hours of non-FLSA
compensatory time, 1 hour of non-FLSA cash overtime, and 14 hours of FLSA
cash overtime.

[94]    29 U.S.C. § 207(a).

[95]    Pl. Supp. Mem. at 1. Nor do plaintiffs believe that this cash overtime
is outside the realm of the FLSA, as they claim damages related to improper
calculation of the regular rate for these very same cash overtime hours. *See id.* at
1 n.1 (noting that increasing the amount of statutory compensatory time in turn
decreases the amount of statutory cash overtime).

overtime threshold, albeit reflecting the NYPD's preference for applying FLSA

protections to cash overtime rather than to compensatory time. The FLSA requires

no more.[96] Therefore, plaintiffs' damages calculations impermissibly altered the

NYPD's designation of particular overtime hours as either contractual or statutory.

## G. Statute of Limitations

Application of a three-year statute of limitations period to FLSA

claims requires a finding that violations were willful. Plaintiffs argue that this

Court's holding on summary judgment that defendants' payroll practices violated

the FLSA as a matter of law requires a finding that those violations were also

willful as a matter of law.[97] However, proof of a *willful* violation is a distinct and

more burdensome inquiry than proof of a mere violation. Simply because this

Court found a violation based on undisputed facts at the summary judgment phase

does not rule out the possibility that defendants undertook diligent, albeit flawed

efforts to comply with the FLSA. As a result there is a genuine dispute of material

---

[96]     Of course the NYPD and the unions are free to include accountings
provisions in future CBAs. *See* 29 C.F.R. § 553.23(a)(2) (providing that
agreements between employers and employees concerning compensatory time may
cover any aspect of the arrangement insofar as it does not violate statutory
requirements).

[97]     *See* Reply Mem. at 7.

fact as to whether defendants knew or showed reckless disregard for whether their payroll practices conformed to the FLSA.

## V.    CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment concerning damages on the chart claim and the regular rate claim is denied. Plaintiffs are ordered to recalculate damages in accordance with the principles established in this opinion. The Clerk of the Court is directed to close this motion (docket no. 241).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          November 10, 2008

31

## - Appearances -

**For Plaintiffs:**

Thomas P. Puccio, Esq.
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, New York 10169
(212) 883-6383

Gary A. Orseck, Esq.
Lawrence S. Robbins, Esq.
Damon W. Taaffe, Esq.
Robbins, Russell, Englert, Orseck,
    Untereiner & Sauber LLP
1801 K. Street, NW, Suite 411
Washington, DC 20006
(202) 775-4500

Will Aitchison, Esq.
Mark A. Crabtree, Esq.
Aitchison & Vick, Inc.
3021 N.E. Broadway
Portland, Oregon 97232
(503) 282-6160

John T. Brennan, Esq.
Law Offices of John T. Brennan
26 Court Street, Suite 710
Brooklyn, New York 11242
(718) 923-5640

**For Defendants:**

Lorie E. Almon, Esq.
Gerald L. Maatman, Jr., Esq.
Peter A. Walker, Esq.
Robert S. Witman, Esq.
Seyfarth Shaw LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

James Lemonedes
Georgia Pestana
Assistant Corporation Counsel
100 Church Street, Room 2-108
New York, New York 10007
(212) 788-0922

32