UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

KEENAN M. SCOTT, *et al.*,

        Plaintiffs,

- against -

CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT,

        Defendants.

------------------------------------------------------------X

<u>OPINION AND ORDER</u>

02 Civ. 9530 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION AND BACKGROUND

        Over fifteen thousand current and former New York City police officers and detectives ("plaintiffs") assert that the City of New York and the New York City Police Department ("NYPD") (collectively "defendants") systematically violate plaintiffs' overtime rights under the Fair Labor Standards Act ("FLSA").[1] This lawsuit addresses the policies and practices of the nation's largest police department, and plaintiffs claim hundreds of millions of dollars in damages based on defendants' alleged failures concerning the accrual, use, and payment of

---

[1]    29 U.S.C. §§ 201-219.

1

overtime.

Plaintiffs filed their initial complaint on November 27, 2002, and an amended complaint on February 24, 2003. The amended complaint asserts five distinct claims; two are relevant to the damages calculations now at issue. *First*, plaintiffs claim that some regular work schedules contain overtime, for which they are not compensated (the "chart" claim).[2] *Second*, plaintiffs claim that defendants improperly exclude shift differentials and longevity pay when calculating FLSA overtime rates (the "regular rate" claim).[3] In August 2008, this Court granted summary judgment to plaintiffs concerning both of these claims.[4] Since that time, this Court has made a number of rulings to facilitate the calculation of damages.[5]

---

[2]  *See* Amended Complaint ¶¶ 22-31.

[3]  *See id.* ¶¶ 32-35.

[4]  *See Scott v. City of New York* ("*Scott III*"), 592 F. Supp. 2d 386, 409 (S.D.N.Y. 2008).

[5]  *See Scott v. City of New York* ("*Scott X*"), No. 02 Civ. 9530, 2009 WL 1138710 (S.D.N.Y. Apr. 27, 2009) (establishing that plaintiffs are entitled to liquidated damages in an amount equal to their compensatory damages award); *Scott v. City of New York* ("*Scott IX*"), No. 02 Civ. 9530, ___ F. Supp. 2d ___, 2009 WL 507035 (S.D.N.Y. Feb. 27, 2009) (resolving damages issues concerning dog care hours and scheduled duty hours in excess of the statutory overtime threshold); *Scott v. City of New York* ("*Scott VIII*"), No. 02 Civ. 9530, 2009 WL 5099952 (S.D.N.Y. Dec. 2, 2008) (resolving issues concerning credits for work on scheduled vacation days); *Scott v. City of New York* ("*Scott V*"), 592 F. Supp. 2d 475 (S.D.N.Y. 2008) (resolving numerous damages issues). At trial, a jury also found that defendants had willfully violated the FLSA with regard to these two

In what appears to be their final dispute, the parties bring four additional questions concerning damages calculations before the Court. *First*, the parties disagree as to the characterization of a small portion of salary payments when an officer's non-overtime duty chart exceeds the statutory overtime threshold.[6] This Court previously held that only work below the overtime threshold and the portion of an officer's salary reflecting such work may be used to calculate the regular rate of pay upon which FLSA overtime requirements are based.[7] Plaintiffs assert that the remaining portion of an officer's regular salary is an "overpayment" that may not be "credited" against FLSA liabilities.[8] Defendants characterize these payments as compensation for overtime worked.[9]

*Second*, the parties dispute how to account for regularly occurring

---

claims, establishing a three-year statute of limitations. *See* Trial Transcript ("Tr.") at 2430-2431. *See also* 29 U.S.C. § 255(a) (extending the statute of limitations for a FLSA claim to three years upon a finding of willfulness). This Court has issued several other decisions in this case that are irrelevant to the issues presently in dispute.

[6]   *See* 4/24/09 Letter from Gary Orseck, plaintiffs' counsel, to the Court ("Pl. Let."), at 6-7; 4/24/09 Letter from James M. Lemonedes, defendants' counsel, to the Court ("Def. Let."), at 4-5.

[7]   *See Scott IX*, 2009 WL 507035, at *2.

[8]   Pl. Let. at 6.

[9]   *See* Def. Let. at 4-5.

dog care hours.[10] This Court previously held that "non-overtime dog care must be included in regular rate calculations."[11] The parties now dispute how those hours affect both the calculation of the regular rate and the deficiency of payment for overtime work. The parties also dispute when to count dog care hours, as it is impossible to determine – using timekeeping records maintained by defendants – whether dog care hours occur before or after patrol hours in a given day.[12]

*Third*, the parties dispute how to account for flaws in timekeeping records.[13] The parties recognize that NYPD records contain errors including duplicate entries and missing entries, and plaintiffs have accepted an error-correction methodology proposed by defendants' expert.[14] However, defendants raise two additional sets of possible errors. Defendants first assert that plaintiffs' expert has improperly added "Code 5101" entries – which denote a full week of patrol hours – to plaintiffs' timekeeping records. When an officer takes partial days off, timekeepers enter the actual time worked into the officer's time records

---

[10]  *See* Pl. Let. at 5-6; Def. Let. at 2-3.

[11]  *Scott IX*, 2009 WL 507035, at *1.

[12]  *See* Def. Let. at 3.

[13]  *See id.* at 3-4.

[14]  *See* 4/8/09 Letter from Gary Orseck, plaintiffs' attorney, to James Lemonedes, defendants' attorney, Ex. B to Def. Let.

using "Code 9004" – denoting partial days worked – and remove the Code 5101 entry. However, plaintiffs' expert has added Code 5101 entries to weeks in which Code 9004 entries appear, apparently believing that the timekeepers inadvertently omitted the Code 5101 entries.[15] Moreover, plaintiffs have not removed entries that are extremely likely to be duplicative, including an entry for an Officer Saunders, in which double-entries appear on five straight days. If these entries were correct, Saunders would have worked 20 hours and 23 minutes per day for five consecutive days.[16]

*Fourth*, the parties dispute how to account for three recurring payments: the educational differential, the longevity differential, and the assignment differential.[17] This Court previously held that these recurring payments must be included in the regular rate of pay and must be distributed across no more than the first 171 hours that an officer works in a single work period.[18] However, defendants now claim that these payments are creditable

---

[15] *See* Def. Let. at 3-4.

[16] *See id.* at 4.

[17] *See* Pl. Let. at 4-5.

[18] *See Scott III*, 592 F. Supp. 2d at 409 (inclusion); *Scott IX*, 2009 WL 507035, at *2 (distribution).

against FLSA liabilities.[19]

## II.   APPLICABLE LAW

### A.   The Regular Rate

Under the FLSA, cash overtime must amount to "a rate not less than one and one-half times the regular rate at which [the worker] is employed."[20] Police officers are entitled to overtime compensation for work exceeding 171 hours in a 28-day work period.[21] The "regular rate" "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," less eight enumerated exemptions.[22] Thus in most cases "[t]he regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the work[ period], exclusive of overtime payments."[23] The regular rate reflects compensation for the "regular, non[-]overtime work[ period]."[24]

### B.   *Mt. Clemens Pottery* Burden Shifting

---

[19]   *See* Pl. Let. at 5.

[20]   29 U.S.C. § 207(a)(1).

[21]   *See id.* § 207(k)(1)(B); 29 C.F.R. § 553.201.

[22]   29 U.S.C. § 207(e).

[23]   *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 468 (1948).

[24]   29 C.F.R. § 778.108.

Under the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.*,

> [W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.[25]

### C.   FLSA Credits

The FLSA credits only three categories of *contractual* compensation towards overtime compensation mandated by the Act: premium pay for working more than a contractually-established number of hours per day or week, premium pay at a rate of time and one-half for working on weekends and holidays, and premium pay at a rate of time and one-half for working outside of ordinary hours, such as a night shift.[26] Each is a form of compensation excluded from the regular rate of pay.[27] No other compensation attributable to work below the statutory

---

[25]   328 U.S. 680, 687-88 (1946).

[26]   *See* 29 U.S.C. § 207(e)(5)-(7), (h)(2).

[27]   *See id.* § 207(e).

overtime threshold is creditable against FLSA overtime obligations.[28]

## III. DISCUSSION

### A. Salary Payments

In a prior opinion in this case, I wrote that "compensation clearly tied to work, namely an officer's biweekly salary, must be attributed to particular hours worked."[29] The portion of an officer's salary not attributable to the first 171 hours of work is logically attributed to the forty minutes of overtime performed as part of periodic duty schedules at the core of the chart claim. Such payments are compensation for the additional time worked, even if they do not meet the requirements for overtime pay imposed by the FLSA (*i.e.*, time and one-half) because the payment for that time reflects a straight-time rate.

Any compensation for additional time worked beyond the overtime threshold must reduce compensatory damages owed by an employer in a FLSA overtime claim. Like a payment for overtime work that the employer explicitly labels as an overtime payment but calculates using an improper and insufficient regular rate of pay, the portion of an officer's ordinary salary attributable to patrol hours falling on the overtime side of the 171-hour threshold is a payment toward

---

[28] *See id.* § 207(h)(1).

[29] *Scott IX*, 2009 WL 507035, at *2.

the total overtime compensation owed. The proper compensatory damages calculation is total overtime compensation owed using proper calculations, less payments already made for overtime hours worked. Plaintiffs are ordered to adjust their compensatory damages calculation accordingly.

## B. Dog Care Hours

Similar logic controls the treatment of dog care hours and payment for such work. Where dog care hours are a part of an officer's non-overtime work schedule, compensation for those hours changes the regular rate calculus. The situation is complicated when an officer's regular patrol hours and dog care hours exceed 171 hours. As some dog care hours are worked *before* an officer has completed his or her regular patrol time, that officer will perform ordinary patrol hours *after* he or she has worked 171 hours in a twenty-eight day work period. In effect, the insertion of dog care hours in an officer's schedule pushes some regular patrol hours to the overtime side of the 171-hour threshold. When this occurs, however, a portion of an officer's salary is attributable to those "pushed" patrol hours. The treatment of that portion of an officer's salary is similar to the treatment of salary attributable to an overtime portion of an officer's regular duty chart, described above. Again the officer has received payment based on a straight-time rate for the excess hours, rather than being compensated at the time

and one-half rate required by the FLSA for hours worked beyond the 171-hour threshold. The resulting measure of compensatory damages is the difference between proper payment pursuant to FLSA – one and one-half times the regular rate of pay – and the portion of an officers' salary attributable to the excess hours, not the entire time and one-half overtime payment.

When an officer performs dog care work *after* completing 171 hours in a 28-day work period the officer receives compensation for that dog care time, albeit not at the time and one-half rate required by the FLSA. The proper measure of compensatory damages is again the difference between proper payment pursuant to FLSA and the payment received for the dog care hours in question. Plaintiffs are ordered to modify their damages calculations to reflect the proper characterization of these payments.

The second dispute over dog care concerns whether dog care hours should be counted before or after patrol hours on a given day. Because the NYPD's time records do not allow this distinction to be made, there is no way – based on existing records – for an exact determination to be made for each officer on each working day. Although plaintiffs would like to count dog care hours after patrol hours consistently – as this would increase the regular rate of pay – they have not carried their burden under *Mt. Clemens Pottery*. Specifically, no "just

and reasonable inference" can be made that officers *always* perform dog care work after they have finished a day's patrol.[30] Common sense indicates that such work occurs both before and after patrol, as dogs must be fed and walked multiple times per day. Defendants suggest the use of a blended hourly rate on days when officers cross the 171 hour mark.[31] This is a reasonable means to approximate dog care work that is likely spread throughout the day. Plaintiffs are ordered to use this method when calculating compensatory damages.

C.  **Timekeeping Errors**

The difficulties of maintaining proper time records for a police force the size of the NYPD have been evident throughout this litigation. The parties must be commended for their willingness to apply common sense to correct for many obvious errors. Even where there is no willingness to correct errors voluntarily, common sense must continue to rule the day. If the presence of a Code 9004 entry indicates that no Code 5101 entry should exist in the same

---

[30]  328 U.S. at 688.

[31]  *See* Def. Let. at 3. A blended rate would reflect a weighted average of the hourly rate at which an officer worked on the day on which he crossed the overtime threshold.

week,[32] plaintiffs may not add a Code 5101 because they fear one has been mistakenly omitted. Similarly, plaintiffs must use common sense in accepting that some records may be duplicative, such as the records for Officer Saunders directly noted in defendants' letter. The double entries for five days are too implausible to merit inclusion. Any remaining individual conflicts should be worked out between the parties to the extent possible. The Court has faith that the parties will be able to resolve any similar disputes using the common sense they have demonstrated at numerous points in this litigation.

### D.   Differential Payments

The FLSA provides no basis for a credit against overtime obligations for educational differentials, longevity differentials, and assignment differentials. If such payments are included in the regular rate of pay, they cannot fall within the enumerated categories of compensation creditable against FLSA liabilities. Therefore defendants may not credit such payments against liability to individual officers.

## IV.   CONCLUSION

As has so often been the case, the proper calculation of damages lies

---

[32]   As plaintiffs did not address this issue in their letter, the Court relies on defendants' letter to have correctly stated how these two codes are used in NYPD payroll data.

somewhere between the figures propounded by each set of advocates. As the parties now have intimate knowledge of each others' damages calculations – and the instructions of this Court – they are ordered to meet and confer to establish the proper sum of compensatory damages. The parties must then submit a proposed final judgment reflecting both compensatory and liquidated damages by June 1, 2009.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         May 8, 2009

## - Appearances -

**For Plaintiffs:**

Thomas P. Puccio, Esq.
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, New York 10169
(212) 883-6383

Gary A. Orseck, Esq.
Lawrence S. Robbins, Esq.
Damon W. Taaffe, Esq.
Robbins, Russell, Englert, Orseck,
    Untereiner & Sauber LLP
1801 K. Street, NW, Suite 411
Washington, DC 20006
(202) 775-4500

Will Aitchison, Esq.
Mark A. Crabtree, Esq.
Aitchison & Vick, Inc.
3021 N.E. Broadway
Portland, Oregon 97232
(503) 282-6160

John T. Brennan, Esq.
Law Offices of John T. Brennan
26 Court Street, Suite 710
Brooklyn, New York 11242
(718) 923-5640

**For Defendants:**

Lorie E. Almon, Esq.
Jeremi L. Chylinski, Esq.
Seyfarth Shaw LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

James M. Lemonedes
Andrez Carberry
Assistant Corporation Counsel
100 Church Street, Room 2-108
New York, New York 10007
(212) 788-0922