UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

KEENAN M. SCOTT, THOMAS LOGAN, JOHN
LOOMIS, ROBERT DAVIDSON, and MICHAEL C.
DEMARTINO, et al.,

                                        Plaintiffs,

          -against-                                    02CV 9530 (SAS)

CITY OF NEW YORK and THE NEW YORK CITY
POLICE DEPARTMENT,

                                        Defendants.

------------------------------------------------------------------------ X


## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT

    POINT I

        THE REQUESTED HOURLY RATES ARE
        UNREASONABLE ........................................................................................ 1

                Paralegals/Legal Assistants/Clerks/
                Administrative Staff ......................................................................... 8

    POINT II

        PLAINTIFFS' FEES SHOULD BE SUBSTANTIALLY
        REDUCED AS EXCESSIVE, DUPLICATIVE,
        UNNECESSARY, VAGUE AND, IN SOME CASES,
        HIGHLY QUESTIONABLE ........................................................................ 10

           A.      Time Associated with James McCabe ........................................... 10

           B.      Time Associated with Mullins ...................................................... 10

           C.      Motion For Summary Judgment ................................................... 11

           D.      Puccio ........................................................................................... 11

           E.      Robbins ........................................................................................ 16

           F.      A & V ........................................................................................... 18

    POINT III

        PLAINTIFFS' FEES SHOULD BE SUBSTANTIALLY
        REDUCED DUE TO THEIR LIMITED SUCCESS ........................................ 18

        A.      Plaintiffs' fees should be substantially reduced
              because of the limited quantity of the relief
              obtained ......................................................................................... 19

B. Plaintiffs' relief should be substantially reduced because of the limited quality of the relief obtained.................................................................................................. 22

POINT IV

PLAINTIFFS' REQUEST FOR COSTS ARE INSUFFICIENTLY DOCUMENTED ............................................24

    A. Travel Time Should Be Compensated at 50% of the hourly rate awarded by this Court .................................................................... 24

    B. Costs.................................................................................... 24

        Litigation Support from Vendors and Consultants............................................................23

        Outside Copying & Printing ............................................. 26

        Travel Expenses ................................................................ 26

CONCLUSION.................................................................................. 28

# TABLE OF AUTHORITIES

**<u>Cases</u>**         **<u>Pages</u>**

Abrahamson v. Board of Education,
    374 F.3d 66 (2d Cir. 2004)..................................................................21

Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,
    522 F.3d 182 (2d Cir. 2008)................................................................ 3

Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,
    493 F.3d 110 (2d Cir. 2007)..................................................................1

Arnone v. CA, Inc.,
    2009 U.S. Dist. LEXIS 17080 (S.D.N.Y. March 6, 2009)..................................3, 20

Barfield v. New York City Health and Hospital Co.,
    537 F.3d 132 (2d Cir. 2008)..................................................19, 20, 21

Blum v. Stenson,
    465 U.S. 886 (1984) ..........................................................................2

Canaday v. Koch,
    598 F. Supp. 1139 (E.D.N.Y. 1984) ....................................................17

Canaday v. Koch,
    608 F. Supp. 1460 (S.D.N.Y. 1985)....................................................17

Cannella v. Anodyne Corp.,
    1997 U.S. Dist. LEXIS 13935 (N.D. Ill. Sept. 10, 1997)..........................17

Corder v. Brown,
    25 F.3d 833 (9th Cir. 1994)..................................................................20

Cruz v. Local Union No. 3 IBEW,
    34 F.3d 1148 (2d Cir. 1994)................................................................22

Do Yea Kim v. 167 Nail Plaza, Inc.,
    2009 U.S. Dist. LEXIS 1992 (S.D.N.Y. Jan. 9, 2009)..........................6, 9

F.H. Krear & Co. v. Nineteen Named Trustees,
    810 F.2d 1250 (2d Cir. 1987)..............................................................23

Farrar v. Hobby,
    506 U.S. 103 (1992) ..........................................................................19, 20

**Cases**                                                                **Page**

Gillberg v. Shea,
    1996 WL. 406682 (S.D.N.Y. May 31, 1996)..................................................16

Grogg v. General Motors Corp.,
    612 F. Supp. 1375 (S.D.N.Y. 1985)......................................................15

Hensley v. Eckhart,
    461 U.S. 424 (1983)...............................................................19, 20

Insinga v. Cooperative Centrale Raiffeisen Boerenleenbank B.A.,
    478 F. Supp. 2d 508 (S.D.N.Y. 2007)......................................................5

Jennette v. City of New York,
    800 F. Supp. 1165 (S.D.N.Y. 1992)......................................................22

Johnson v. Ga. Highway Express, Inc.,
    488 F.2d 714 (5th Cir. 1974)............................................................3

Kassim v. Schenectady,
    415 F.3d 246 (2d Cir. 2005)..............................................................19

Lide v. Abbott House,
    2008 U.S. Dist. LEXIS at 6 (S.D.N.Y. 2008) ..............................................21

Lucky Brand Dungarees, Inc., v Ally Apparel Resources, LL,
    2009 U.S. Dist. LEXIS 48498 (S.D.N.Y. May 15, 2009).......................................9

Marano v. Aaboe,
    2007 U.S. Dist. LEXIS 80154 (S.D.N.Y. Oct. 29, 2007) ....................................2, 7

Metrokane, Inc. v. Built NY, Inc.,
    2009 U.S. Dist. LEXIS 27208 (S.D.N.Y. March 5, 2009).......................................3

Molefi v The Oppenheimer Trust,
    2007 U.S. Dist. LEXIS 10554 (E.D.N.Y. February 15, 2007) ..................................2

Monaghan v. SZS 33 Associates, L.P.,
    154 F.R.D. 78 (S.D.N.Y. 1994) ......................................................19, 23

Night Hawk Ltd. v. Briarpatch Ltd., L.P.,
    2004 U.S. Dist. LEXIS 11109 (S.D.N.Y. June 17, 2004)......................................2

Palumbo Sales, Inc v. Broan-Nutone, LLC,
    549 F. Supp. 2d 274 (E.D.N.Y. 2008) .....................................................6

**Cases**            **Page**

Patrolmen's Benevolent Association of New York, Inc. v. City of New York,
   2003 U.S. Dist. LEXIS 13472 (S.D.N.Y. July 29, 2003) ........................................15

Protection One Alarm Monitoring, Inc. v. Executive Protection One
   Security Service LLC,
   553 F. Supp. 2d 201 (E.D.N.Y. 2008) ........................................................9, 23

Quaratino v. Tiffany & Co
   166 F.3d 422, 426 (2d Cir. 1999)............................................................19

Reiter v. Metropolitan Transport Authority,
   2007 U.S. Dist. LEXIS 71008 ) (S.D.N.Y. Sept. 25, 2007 ........................................19

Rozell v. Andco, LLC,
   576 F. Supp. 2d 527 (S.D.N.Y 2008)....................................................16, 24

Saunders v. Salvation Army,
   2007 U.S. Dist. LEXIS 22347 (S.D.N.Y. March 27, 2007)....................................5, 6

Sewell v. 1199 National Ben. Fun for HHS,
   2007 U.S. Dist. LEXIS 35889 (S.D.N.Y. May 15, 2007)........................................8

Tlacoapa v. Carregal,
   386 F. Supp. 2d 362 (S.D.N.Y. 2005)........................................................5

Trustees Of the Mason Tenders District, Counsel Welfare Fund, Pension Fund, Annuity
   Fund & Training Program Fund v. Stevenson Contracting Corp.,
   2008 U.S. Dist. LEXIS 108690 (S.D.N.Y. June 19, 2008) .......................................5

W. Associates LLC v Kleiser-Walczak Construction Co.,
   2004 U.S. Dist. LEXIS 8920 (S.D.N.Y. May 18, 2004)..........................................2

Wilder v. Berstein,
   975 F. Supp. 276 (S.D.N.Y. 1997)..........................................................22

Winkler v. Metropolitan Life Insurance Co.,
   2006 U.S. Dist. LEXIS 56464 (S.D.N.Y August 10, 2006) .....................................10

Wise v. Kelley,
   2008 U.S. Dist. LEXIS 12838 (S.D.N.Y. 2008) ............................................5

## PRELIMINARY STATEMENT

Defendants City of New York and the New York City Police Department ("defendants") submit this memorandum of law and the accompanying Declaration of Georgia Pestana, dated July 10, 2009, ("Pestana Dec") in opposition to plaintiffs' motion for attorneys' fees and costs. Plaintiffs' counsel seeks $6,884,097.90 in attorneys fees and $677,567.51 in costs. Counsels' request disregards the case law governing fee requests, which requires documentation and records capable of meaningful review by the party from whom the fees are sought and by the reviewing court. Counsel apparently proceed on the belief that if they demand rates outside the norm and blizzard the reviewing party and the court with entries, even if they are so vague they are unintelligible, the Court will award them significant fees. Such a tactic must be roundly rejected.

## ARGUMENT

## POINT I

## THE REQUESTED HOURLY RATES ARE UNREASONABLE

Determining the "presumptively reasonable fee" generally requires calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 114 (2d Cir. 2007). The Second Circuit left it to the district court to "disciplin[e] the market, stepping into the shoes of the reasonable paying client, who wishes to pay the least amount necessary to litigate the case effectively." Id. Arbor Hill specifically identified the following factors to be considered in determining what a reasonable paying client would be willing to pay: the complexity and difficulty of the case, the available expertise and capacity of the clients' other counsel (if any), the resources required to prosecute the case effectively, the timing demands on

the case, whether the attorney had an interest in achieving the ends of the litigation, and other returns the attorney expected from the representation. Id. at 112.

The party seeking fees bears the burden of establishing the reasonableness of the rates sought by producing satisfactory evidence that the requested rate is in line with those prevailing in the community. Blum v. Stenson, 465 U.S. 886, at 895 n.11 (1984); 601 W. Associates LLC v Kleiser-Walczak Constr. Co., 2004 U.S. Dist. LEXIS 8920 *9 (S.D.N.Y. May 18, 2004). The determination of a reasonable hourly rate also "requires the submission of information 'concerning the credentials or experience of counsel applying for fees.'" Molefi v The Oppenheimer Trust, 2007 U.S. Dist. LEXIS 10554 at *16 (E.D.N.Y. February 15, 2007) (quoting Night Hawk Ltd. v. Briarpatch Ltd., L.P., 2004 U.S. Dist. LEXIS 11109 at *13 (S.D.N.Y. June 17, 2004)). Where such information is lacking, the court may reduce the award of attorney's fees. See Marano v. Aaboe, 2007 U.S. Dist. LEXIS 80154, at *9 (S.D.N.Y. Oct. 29, 2007)(requested hourly rate of $375 denied and $215 awarded as a "reasonable rate" where attorney "does not provide any details regarding her skill, experience or reputation."). With the exception of attorney Will Aitchison ("Aitchison") of Aitchison & Vick ("A & V") and, to a much lesser extent, plaintiffs' counsel Gary Orseck[1] ("Orseck"), plaintiffs' attorneys have not proffered any evidence with respect to their credentials. Counsel have not provided such basic information about the attorneys who are the subject of the fee application as their respective dates of bar admission and their relative experience in wage-and-hour litigation[2]. Plaintiffs' have

---

[1] The only information provided regarding Robbins attorney Damon W. Taaffe is found in the plaintiffs' memorandum of law, and not in an attorneys' declaration.

[2] Defendants note that pursuant to the schedule set by the court plaintiffs have the opportunity to submit reply papers. Thus, to the extent that plaintiffs' attempt to cure the deficiencies of their application by the submission of factual declarations, additional exhibits, and legal arguments not raised in their moving papers, in the interest of fairness defendants should be afforded the opportunity to respond to any new matter. However, before granting plaintiffs' such

also failed to submit evidence regarding purported market rates in the Southern District of New York for attorneys with similar experience in wage-and-hour litigation. Metrokane, Inc. v. Built NY, Inc., 2009 U.S. Dist. LEXIS 27208 *5 (S.D.N.Y. March 5, 2009) (The "traditional rule" for determining reasonable hourly rates has been "to look to rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'")

Recently, in redefining "reasonable hourly rate" as the "rate a paying client would be willing to pay" in Arbor Hill, the Second Circuit and instructed:

> In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson[3] factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

Arbor Hill, 522 F.3d 182, 190 (2d Cir. 2008).

In consideration of the extensive wage-and-hour experience of plaintiffs' counsel Aitchison, defendants do not contest his claimed hourly rates of $350 to $425 over the course of this litigation. Arnone v. CA, Inc., 2009 U.S. Dist. LEXIS 17080 *10 (S.D.N.Y. March 6, 2009) (this court held that $425/hour "is a typical rate for experienced labor lawyers" in the southern

---

opportunity to add to the record, this court should consider that according to their time records, plaintiffs' have been working on this fee application since December, 2008. Robbins charged 41 hours in December and 64.75 hours in January 2009 for the fee application. An additional 63.75 hours were billed in June 2009. A & V also began working on the fee petition in December 2008 and has charged over 30 hours (it appears, however, that some that time is a result of double billing, see time entries for 1/14/09-1/20/09) . Given the many months that plaintiffs have had to work on their fee application (in contrast to the one week defendants have had to respond to plaintiffs submissions), plaintiffs should not be permitted to belatedly submit the information which should have been included in their original filing.

[3] The "Johnson factors' refer to the twelve factors developed by the Fifth Circuit "to establish a reasonable fee." Arbor Hill, 522 F.3d at 186 (citing Johnson v Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).

district). In contrast to the wage-and-hour experience detailed by Aitchison in his declaration, Orseck does not claim any experience in wage-and-hour law. Rather, Orseck simply states that he has been practicing in the federal courts for over twenty years and that his firm is a "litigation boutique" that represents clients in "complex commercial litigation of all types." He supports his claim for an hourly rate of $454 and $525 by asserting that he has been awarded an hourly rate of $570 in a bankruptcy matter. However, Orseck fails to explain how his experience in a bankruptcy case justifies the award of an hourly rate in this case that exceeds the rate awarded to attorneys experienced in the substantive area of law that is at the core of the fee request. Given Orseck's failure to claim any experience in wage-and- hour litigation, there is no basis to award him an hourly rate greater than that sought by Aitchison. Indeed, it should be less. Defendants respectfully submit that the rates of Aitchison, plaintiffs' most experienced counsel in the area of wage-and hour-law, ranging from $350-$425/hour should serve as both a benchmark and a ceiling for the evaluation and award of an hourly rate to plaintiffs' remaining counsel. Defendants propose $300-375/hr for Orseck.

In addition to the fees of Aitchison and Orseck, plaintiffs' seek fees on behalf of sixteen attorneys at Orseck's firm, Robbins, Russell, Englert, Orseck & Untereiner, LLP ("Robbins") ranging from $300 to $670/hr and $175-300/hr on behalf of 11 attorneys at A & V. A review of hourly rates found reasonable in this District demonstrates that the rates sought by Robbins counsel are excessive and unreasonable given that all counsel fail to establish their respective credentials to support such high rates.

The rates of $300-$670/hour sought by Robbins counsel have only been awarded by the courts to seasoned civil rights counsel with extensive experience in civil rights litigation. The record fails to establish that any of the Robinson Russell counsel possess any experience, let

alone extensive experience, in wage-and-hour law. Insinga v. Coop Centrale Raiffeisen Boerenleenbank B.A. 478 F. Supp.2d 508, 510 (S.D.N.Y. 2007) (civil rights attorney's "extraordinary depth of experience" of more than fifty years supports rate of $475/hour, partner with more than twenty five years of experience awarded $350 an hour and associate with four years of experience awarded hourly rate of $225); Trs. Of the Mason Tenders Dist, Counsel Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Stevenson Contracting Corp., 2008 U.S. Dist. LEXIS 108690 (S.D.N.Y. June 19, 2008) ($325-350/hour are reasonable hourly rates for a large firm associate with more than twenty-four years of legal experience and 15 years of experience of prosecuting employee benefit recovery actions on behalf of plaintiffs") adopted in full, 2008 U.S. Dist. LEXIS 58018 (S.D.N.Y. July 29, 2008); Wise v. Kelley, 2008 U.S. Dist. LEXIS 12838 (S.D.N.Y. 2008) awarding partners with 18 years of experience $425/hour and associates with seven or eight years of experience $300/hour, and associate with a total of four years of experience but only one year of civil rights experience $250/hour).

In Saunders v. Salvation Army, 2007 U.S. Dist. LEXIS 22347 (S.D.N.Y. March 27, 2007), this Court awarded $300/hour to prevailing parties to two attorneys from the Anti-Discrimination Center of Metro New York ("the Center"); one had forty-three years experience; the other twenty-two years experience. They sought $450/hr and $400/hour, respectively. This Court held that the Center was the equivalent of a small for-profit law firm with lower market rates than large Manhattan firms with high overhead. The "hourly rates requested by plaintiffs are simply too high for the Center attorneys who handled this case." Id. at *13.

In reaching this conclusion, Your Honor cited to the case of Tlacoapa v. Carregal, 386 F. Supp. 2d 362 (S.D.N.Y. 2005). In Tlacoapa, plaintiffs' counsel was entitled to fees for achieving the recovery of unpaid wages under the Fair Labor Standards Act and the New York

Labor Law. The three attorneys had twenty (20) years experience, nine (9) years experience and three (3) years experience, respectively. The Court held that the attorneys were indisputably from a small firm of five attorneys and three paralegals and, as such, were not entitled to the requested rates of $375/hour, $300/hour and $200/hour. The Court opined that such rates were "usually reserved for attorneys in larger law firms" and did not reflect the prevailing market rate in counsel's relevant community, in part because small firms did not have the same overhead burden as large New York firms. Id. at 369-370. Noting that an award "for seasoned civil rights litigators in small firms is between $200/hr and $300/hr in this district," the Court awarded rates of $250/hr, $200/hr and $125/hr, respectively. In Saunders, this Court noted that the award of $300/hour was on the high end of the range described in Tlacoapa. In this case, only Aitchison provides a description of his law firm as comprising three partners and four associates-unquestionably a small firm. While no description of Robbins is provided, it appears, based on the firm's request for fees on behalf of sixteen (16) additional attorneys, that the firm is small to medium size. Given the relative small size of both firms, plaintiffs' counsel have not met their burden of showing that they are entitled to market rates awarded to large Manhattan law firms. See Saunders, at *12-13. Thus, neither the experience of counsel nor the size of the firms at issue, support the award of rates at the level awarded to experienced attorneys at large firms. Defendants, therefore, propose an hourly rate of $150/hr for all the attorneys at A & V and Robbins for whom no information is provided regarding their legal backgrounds. Do Yea Kim v. 167 Nail Plaza, Inc. 2009 U.S. Dist. LEXIS 1992 * 4 (S.D.N.Y. Jan. 9, 2009) (awarding rates of $150- $200 per hour where 'only one of six attorneys for whom compensation is being awarded, . . ., has demonstrated any experience in FLSA litigation" and no information was provided regarding the experience and ability of the remaining attorneys); Palumbo Sales, Inc v. Broan-

Nutone, LLC, 549 F. Supp.2d 274, 282, footnote 5 (E.D.N.Y. 2008) ("Since counsel for defendant has failed to provide the Court with any information concerning the seniority level of the associates who worked on the within action, . . . . the Court will apply the same hourly billing rate for all associates irrespective of whether they are junior or senior associates ").

Plaintiffs' counsel Thomas Puccio ("Puccio") also submits an attorney fees application[4] seeking an hourly rate of $750.00 to $1,000.00. Incredibly, notwithstanding Puccio's request for fees at a rate that exceeds that awarded to the most well regarded civil rights attorneys in the southern district, Puccio supports his claim for these excessively high rates with nothing more than a flat assertion that these rates are consistent with the rates he has "charged to other clients in this time period[5]." Setting aside the question of whether clients have *actually paid* Puccio at these rates, Puccio, like his co-counsel, failed to submit any support, such as a resume, a list of cases on which he has recently worked and obtained these rates, or any basis whatsoever demonstrating particular expertise in wage-and hour law. A review of on-line sources reveals that Puccio is first and foremost a criminal defense attorney.[6] While it appears that he may occasionally dabble in civil litigation, there is no evidence at all that Puccio had any prior experience with wage-and-hour litigation that would justify an award of an hourly rate that far exceeds that awarded to the most experienced civil rights litigators in this district. Moreover, as a solo practitioner, Puccio does not have the overhead of a large firm. Consequently, a more

---

[4] Puccio's personal fee application of over $2 million is only slightly less than the entire amount of fees sought by all seventeen of plaintiffs' counsel at Robbins.

[5] Significantly, neither Puccio nor plaintiffs other counsel, claim that they charged the plaintiffs in this action at the hourly rates sought herein. In fact, counsel have undertaken their representation pursuant to the terms of a contingency agreement. The existence of a contingency agreement is an appropriate consideration in assessing the reasonable hourly rate as it demonstrates that the rate sought by counsel is not the rate charged to the plaintiff. Marano, 2007 U.S. Dist. LEXIS 80154 * 8 .

[6] See e.g. http://pview.findlaw.com/view/2756701_1?channel=LP

appropriate rate for Puccio is $275. <u>Reiter v. Metro. Transp. Auth.</u>, 2007 U.S. Dist. LEXIS 71008) (S.D.N.Y. Sept. 25, 2007) ($275 is a reasonable hourly rate for a lawyer in an employment case who has "significant criminal experience, but is "relative[ly] inexperience[d] in civil litigation in general and employment litigation in particular.")

Finally, when plaintiffs' counsel undertook their representation they believed that by participating in this action they would enhance their firms' reputations in the field of wage- and hour litigation as well as receive a large financial payment of which they would share by virtue of the contingency fee agreement entered into with the plaintiffs. Plaintiffs' Application for a Award of Attorneys' Fee and Reimbursement of Expenses (Pl. MOL") at 16. Thus, plaintiffs' counsels claim that they were precluded from representing other clients, a claim belied by their appearances in other cases,[7] must be balanced against the reputational and financial benefits they believed would incur by litigating a case of this size against the City of New York.

**Paralegals/Legal Assistants/Clerks/Administrative Staff**

A & V seeks compensation of $546,475.90 for work performed by "Administrative Staff," none of whom are identified as paralegals. While the billing records identify three of the administrative staff by name, the majority of the hours are attributed to an unnamed "Legal Assistant" and unnamed "Law Clerk". It is unclear from the records if one or more individuals, with varying degrees of experience, served in those capacities. A & V seeks rates of $65 to $125/hr for their respective administrative staff. Robbins seeks over $102,601.25 for nine paralegals at a rate of $125/hr for the years 2004-2005 and $175/hr for the years 2006-2009. The rates sought by both A & V and Robbins are at the high end of rates awarded in this district. <u>Sewell v. 1199 Nat'l Ben. Fun for HHS</u>, 2007 U.S. Dist. LEXIS 35889 (S.D.N.Y. May 15, 2007) (awarding $90 an hour for paralegal services). Moreover, where, as here, no

---

[7] See Pestana Dec ¶¶ 4, 6.

information is provided regarding the relative experience of the staff, courts have awarded a lower rate. Protection One Alarm Monitoring, Inc. v. Executive Protection One Security Service LLC, 553 F. Supp.2d 201, 209 (E.D.N.Y. 2008) ("Failure to provide information on the attorneys and paralegals' backgrounds and experience warrants award of fees at a rate lower than requested."); Do Yea Kim v. 167 Nail Plaza, Inc., 2009 U.S. Dist. LEXIS 1992 (S.D.N.Y. Jan. 9, 2009) (awarding a rate of $50 per hour for paralegal assistants where no information is provided regarding the experience level); Lucky Brand Dungarees, Inc., v Ally Apparel Resources, LL, 2009 U.S. Dist. LEXIS 48498 *4 (S.D.N.Y. May 15, 2009)(noting "to the extent that clerical work may be charged to the client, in seeking reimbursement parties are generally limited to no more than $50.00 per hour of work"). Defendants submit that given plaintiffs' counsels failure to identify the record of employment and experience of the assistants for whom they seek an award, their fee application for all non-attorney staff should be denied in its entirety or, in the alternative, all should be awarded a rate of no more than $50/hr.

## POINT II

### PLAINTIFFS' FEES SHOULD BE SUBSTANTIALLY REDUCED AS EXCESSIVE, DUPLICATIVE, UNNECESSARY, VAGUE AND, IN SOME CASES, HIGHLY QUESTIONABLE

#### A. Time Associated with James McCabe

As the Court may recall, plaintiffs agreed to withdraw one of their experts, James McCabe, a retired member of the NYPD, after defendants alerted plaintiffs and the Court that they would seek his disqualification because, as a high-ranking member of the NYPD's Office of Labor Relations, he had been involved in discussions with counsel about defending against this

action. All time associated by plaintiffs' counsel with James McCabe (12.9 hrs by Puccio, 63.5 hrs by Robbins, and 12.55 hrs by Aitchison[8]) should be disallowed.

### B. Time Associated with Mullins

Plaintiffs' counsel also seeks to be compensated for time spent discussing and reviewing documents filed in Mullins v. City of New York, 04 CV 2979 (SAS). See Pestana Dec. ¶¶19-21. While as the Court knows, Mullins is also an FLSA action against the NYPD, the issues in *Mullins* have been whether sergeants are exempt from the overtime provisions of FLSA and whether the City should be enjoined from investigating and taking disciplinary action against plaintiffs. As such, the 43.33 hours claimed should be excluded from an award of fees.

### C. Motion For Summary Judgment

Puccio does not seem to have contributed much to drafting and opposing motions. However, together Robbins and Aichison & Vick expended an extraordinary amount of time briefing the cross-motions for summary judgment. See Pestana Dec. ¶ 18. The total of 737.07 hours – the equivalent of more than eighteen 40 hour weeks -- to brief a motion and opposition to a motion for summary judgment is not reasonable. A substantial reduction of at least 60% is warranted. See General Elec. Co v. Compagnie Euralair, S.A., 1997 WL 397627 *6 (S.D.N.Y. July 3, 1997); Winkler v. Metro. Life Ins. Co., 2006 U.S. Dist. LEXIS 56464 *8 (S.D.N.Y August 10, 2006).

### D. Puccio

Puccio's lack of experience in wage and hour litigation is paralleled by the lack of evidence of any substantive contribution to this case prior to trial. Of the 2,090.87 hours he bills, 677.55 are for "reviewing" emails – a task that cannot be more than passive reading given that he also has a multitude of additional entries for "emailing" and "exchanging emails" with co-

---

[8] Pestana Dec. ¶ 9.

counsel. Pestana Dec. ¶ 9. He even seems to review the same email twice. Perhaps his co-counsel sent him the same email twice because he failed to respond the first time, as might be the case with the two entries on 2/12/08 which read, "Review email from DT re: Tom, what's your availability to cover these depositions" and the entries on 3/5/08 and 3/6/08: "Review email from DT re: Tom, can you defend Keenan Scott's deposition?" And the entries on 4/3/08: "Review email from DT re Tuesday am 30b6."

The time allocated to the review of the emails is also questionable. While it is doubtful that it routinely takes Puccio 12-18 minutes to read an email, it defies belief that it would take anyone .70 hours to "Review email from JM re: Murray Simpson is here for his 10 AM meeting." (See 10/30/07) See also e.g. 12/9/02 "Review email from WA -- .70; 4/22/03 Review email from MM re FLSA -- .70; 6/6/03 "Review email from JM re corrupt CD -- .50; 5/25/04 Review email from WA re pro hac vice admission -- .50; 9/22/06 "Review emails from GO" – 2.00; 1/9/07 "Review email from M Mandell re Audit Letter" -- .70; 1/31/07 "Review email from DT re: Donning and doffing claim: --.70. Whether he reviewed the same email once or twice or more times, defendants should not be responsible for compensating Puccio for this passive expenditure of time which contributed nothing to the prosecution of this action.

A very serious problem with Puccio's time records runs from July 3-September 2, 2008. A significant number of entries, identical in punctuation, spacing, and even in typos, appear as many as four times in a cyclical pattern. Pestana Dec. ¶ 7. While a handful of these entries may possibly reflect activities that occurred on the dates indicated, it is impossible to determine. Moreover, when considered amid the pattern of repeating entries during the two month period, it is doubtful that any of the activities occurred two or three or four times. While the pattern of entries is occasionally interrupted with entries such as "PBA Meeting" on 7/25/08

and several vague entries of "Preparation for Trial" and "Review court filings," it is incontrovertible that these entries, complete with misspellings, were copied as many as three times. These entries call into question Puccio's time records not only for this two month period, but for the entire six and a half year period for which he has submitted time records. At the very least, due to the improbable accuracy of the entries in this time period, all of the time claimed by Puccio's for the period from July 2, 2008-September 2, 2008 should be disregarded.

Puccio seeks compensation for 2.2 hours he claims for emailing and discussing a "donning and doffing" claim. No such claim was asserted in this case and all time attributed to "donning and doffing" should be eliminated.

Puccio also charges defendants for attending PBA meetings on almost a monthly basis. While Puccio does not mention it in his declaration, the City is aware that he has represented the PBA in other matters over at least the last decade. See Pestana Dec. ¶ 4. In fact, the Aitchison webpage which identifies the attorneys representing plaintiffs in this action notes that, "Puccio has represented the PBA on a project basis for several years." See Pestana Dec. ¶ 5. Even assuming that this litigation was discussed at the PBA meetings, it is highly questionable that the litigation was discussed for the entirety of the 2-4 hours Puccio tends to bill for these meetings. Moreover, in light of the fact that Puccio brought another action on behalf of the PBA against the City on October 18, 2007, it impossible to know whether, even if litigation was discussed, it pertained to this action or the other. Consequently, all of the time that Puccio attributes to PBA Meetings, 79.05 hours, should be disregarded. See Pestana Dec. ¶ 10.

Puccio allocates 15.50 hours to "Preparation for and attendance at trial" on 10/31/08 – a date on which this Court held a short conference, but before the trial had begun. Additionally, although the jury was selected on November 3, 2008, trial did not begin until

November 10, 2008. Yet, Puccio allocates 13.5 hours on 11/7/08 to "Preparation for and attendance at trial." None of his co-counsel claim to have been at trial on those dates. Puccio also claims "Preparation for and attendance at trial" on two Sundays, 11/9/08 (13.5 hours) and 11/16/08 (14.5 hours). Although Puccio may have been preparing for trial and may have participated in a phone conference with the Court on a Sunday, it is indisputable that there was no trial on Sundays. While it may appear to be nitpicking as Puccio *might have been* preparing for trial on the dates in question, it is incumbent on the attorneys seeking fees to keep accurate and detailed time records rather than putting the onus on their adversaries and the court to try to figure out what they *might have been* doing and expect to be given the benefit of the doubt. New York State Assn for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d cir. 1983).

A further illustration of the sloppiness of Puccio's time records, is that he allocates 13.5 hours on December 15, 2008 to "Preparation for and attendance at trial." The jury had returned a verdict on December 3, 2008. Defendants and the Court should not be made to guess what Puccio was doing or if it was even related to this case, particularly when he also has two other vague entries on this date.[9] The accuracy of Puccio's time records is further called into question by an entry on 7/28/08 claiming 16 hours for "Preparation for and attendance at trial." There was no trial on 7/28/08. Other entries do not appear to be related to this action at all. For example, an 11/14/08 entry of .40 hours for "Murray, Maureen re: Trial Transcripts - USDC criminal matter;" on 4/10/03 for .50 hours for "Review email from Joan Grossman re: Scott v. Davidson;" on 12/22/03 for .40 hours for "Review email from JM re: PBA – motion for leave to appeal dismissed; on 1/8/04 for 2.00 for "Review Notice of Motion to Reject Report;" on 1/12/04 for .50 hours "Review response to motion to reject report of special referee; " on 6/1/07 for .5

---

[9] Review email from LA, JL re: Scott – damage calculations   .40; Review emails from DF, GO re: Scott v NYC  .40.

hours for "Exchange email with Jonathan Oblak re PCC v. Miramax;" on 10/18/07 for .70 for "Review email from LR re TRO appealability;" and on 10/17/07 for .60 for "Review email from GO re: Update on PBA-related case."[10]

The overall vagueness of the overwhelming majority of Puccio's entries renders it impossible to determine whether the remaining time claimed is compensable. Further contributing to the overall vagueness of Puccio's records is his failure to provide defendants with a guide identifying individuals mentioned in the records. While some initials and names are recognizable, others that appear frequently, such as Valerie Dabas and Jennifer Lee, are not. Finally, there are a number of entries in Puccio's records that are not simply vague, but rather are utter mysteries. See e.g. 2/19/08 .50 hours for "Review email from GO re: The Gong Show" and 12/27/07 for .30 for "Phone, Telephone conference calls re: T Mobile." Puccio has the burden of demonstrating the reasonableness of his fees by providing sufficient information to establish that the expenditure of his time was necessary to the case. Monaghan v. SZS 33 Assocs., L.P. 154 F.R.D 78 *83-84 (S.D.N.Y. 1994). His thorough failure in this regard warrants an across the board reduction of 10-30% of the hours that remain after eliminating the time that, as discussed above, contributed nothing to this case or with respect to the hours claimed for the period from July 3-September 2, 2008 were not bona fide. The court may exercise that discretion by applying an across-the-board percentage reduction to the number of hours billed as

---

[10] The last two entries mentioned, as well as entries on 11/12/07 for .60 for "Exchange of email Russell, Don re: PBA Reply Brief" and 11/14/07 for .70 "Review email from MM re: PBA Reply Brief;" and on 11/15/07 for .70 hours "Exchange of email wtih (sic) MM re: Final PBA Papers?" more likely relate to Puccio's and Robbins's representation of the PBA in *Lynch v. City* 07 CV 9337 (GBD) which was filed on 10/18/07. According to the docket sheet, plaintiffs' application for a TRO was denied on 11/5/07; plaintiffs' filed their motion for a preliminary injunction on 11/7/07 and replied to defendants' opposition on 11/16/07. Due to the vagueness of most of Puccio's entries, defendants are unable to guess whether other entries are more likely related to the *Lynch* case or even other cases, not this action.

a practical means of trimming the fat from a fee application. <u>Patrolmen's Benevolent Ass'n of New York, Inc. v. City of New York</u>, 2003 U.S. Dist. LEXIS 13472, at *7 (S.D.N.Y. July 29, 2003).

### E. Robbins

Robbins filed a notice of appearance on July 8, 2004 (Docket # 125), after the litigation had been ongoing for approximately 18 months. Consequently, the first several months of their billing records reflect familiarization activities such as review of files, review of pleadings, review of correspondence, and an abundance of conferences both amongst attorneys in the firm and with co-counsel. It was not until November 17, 2004 that any substantive work was performed when they began working on an outline for the survey and on interrogatories. Work directed at becoming familiar with an ongoing case is not compensable. <u>Grogg v. General Motors Corp.</u>, 612 F. Supp. 1375, 1379-1380 (S.D.N.Y. 1985). Even work that might appear to have been substantive during this period was actually duplicative of work that had already been done by Aitchison. For example, on 6/20/04 and 7/1/04 BLF of the Robbins firm researched state law claims for a total of 4 hours. The time records from Aitchison indicate that they spent at least 92.6 hours researching New York State and City laws. <u>See</u> Pestana Dec. ¶14. Consequently, defendants submit that the time allocated by the Robbins firm from June 14, 2004 through November 16, 2004 (469.25 hours) should be disallowed.

Time spent by Robbins attorneys in "team meetings" and conferences and discussing and emailing one another and their co-counsel after November 16, 2004 is in excess of 233.15 hours. The constant discussions and conferences likely results from the coordination required by overstaffing within the firm, as well as among the firms. As an illustration, four examples are found on one page of the Robbins time records: 3/22/06 DWT Confer with co-

counsel.50/hr; 3/29/06 GAO Telephone call with team 2.00/hr; 4/3/06 DWT Confer with co-counsel; conference call 3.00/hr; 4/7/06 GAO Confer with co-counsel 1.00/hr. Further, it is difficult to discern LSR's contribution to this action as almost every one of his entries is "Confer with co-counsel." See Pestana Dec ¶16. Defendants should not be made responsible for the excessive time spent by counsel communicating with one another. The entire 233.15 hours should be eliminated or at least a substantial reduction taken. See Rozell v. Andco, LLC, 576 F. Supp. 2d 527, 541 (S.D.N.Y 2008) (reducing fees for *inter alia* excessive time spent on conferences between plaintiffs' counsel); Gillberg v. Shea, 1996 WL 406682 *5 (S.D.N.Y. May 31, 1996) (reducing fees for excessive entries for office conferences).

Robbins attorneys spent approximately 114 hours drafting plaintiffs' motion in limine; approximately 115.5 hours opposing defendant's in limine motion; and approximately 44.75 hours replying to defendant's opposition to plaintiffs' in limine motion. Pestana Dec ¶ 17. These expenditures of time are not reasonable and should be reduced 50%.

In addition, the Robbins' time records are rife with entries lacking a description sufficient to determine whether the time expended was reasonable. For example, entries such as 12/20/04 GAO Emails with B. Becker; review of expert issues. 1.00 hr; 1/4/07 GAO Review documents 2.00 hr; 11/17/07 GAO Call police officers 2.00 hr; 4/3/08 EAT Phone call with Pizzano; scheduling .075 hr. are meaningless. Moreover, there is at least one entry for which the description field is completely blank, yet plaintiffs bill 4 hours. See 2/13/06 DWT.

Counsels' redaction of many entries exacerbates the vagueness problem: 11/4/04 DWT Finalized and Served [redacted] 3.00 hr; 12/14/04 ACB Research re: [redacted] 2.00 hr.; 06/17/05 GAO Calls and emails re: [redacted] .75; 2/4/07 DWT Researched [redacted] 4.00 hr.; 10/25/07 GAO Work on [redacted] 2.75 hr; 11/9/08 MTS Research [redacted] 2.00 hr;

11/10/08 MTS Draft insert [redacted] research re: [redacted] .75 hr.; 11/30/08 DWT Research and letter on [redacted] 8.00 hr. Defendants and the Court cannot possibly evaluate these and similar redacted entries to determine whether the time claims is reasonable. Due to the vagueness of the entries, an across the board reduction of the hours remaining by 30% is warranted after adjustments are made for the time allocated to the period of June 14-November 16, 2006, to James McCabe, to Mullins, to motions in limine and to conferences and discussions among co-counsel. Nu-Life Construction Corp. v. Board of Education of the City of New York, 795 F.Supp. 602, 607 (E.D.N.Y. 1992).

## F. A & V

In December 2002 and February 2003, A & V spent 4.18 hours discussing and researching whether to add sergeants as plaintiffs in this action. Ultimately, he seems to have decided against it. A & V also seems to have spent approximately 35.75 hours, researching and writing a memo to the file about a "gap time" claim. Plaintiffs did not assert a gap time claim in this action. Consequently, defendants should not have to pay for these activities.

In addition, A & V spent 16.25 hours researching Canaday v. Koch. Defendants assume plaintiffs were concerned with a venue issue and are referring to Canaday v. Koch, 598 F.Supp. 1139 (E.D.N.Y. 1984) and not Canaday v. Koch, 608 F.Supp. 1460 (S.D.N.Y. 1985). Even assuming plaintiffs were researching venue issues, 16.25 hours or more is excessive. A reduction of 50% is appropriate. See Cannella v. Anodyne Corp., 1997 U.S. Dist. LEXIS 13935 *20-21 (N.D. Ill. Sept. 10, 1997) (awarding less than one third of requested costs relating to computer-assisted legal research in FLSA case where majority of time was attributable to "general research.").

The A & V records suffer, albeit to a lesser extent than their co-counsel, from vagueness. Defendants and the Court are left guessing whether the work claimed in the 94 entries between December 13, 2002 and June 10, 2003 that read "Review online questionnaire" or "Review questionnaires" was reasonable or whether it could have been completed more efficiently or by a paralegal. Although they generally provide a description or at least the topic of discussions, conversations, meetings, and emails exchanged with other staff within their firm[11] and with defendants' counsel, the Aitchison staff are generally less diligent about providing descriptions or the topics of their conversations with co-counsel outside the firm. See e.g. 8/12/02 Review of e-mail from Tom Puccio; Conference calle (sic) with Tom Puccio and Mike Murray .75; 11/27/02 Meeting with Tom Puccio 2.50 hrs; 12/30/02 Review emails from NY lawyers 1.00; 2/11/03 Meeting with co-counsel 2.00 hr; 3/4/03 Review email correspondence from lawyers 1.90; 11/17/03 Preparation for and participation in conference calls with John Brennan, Tom Puccio, Mike Murray, and JD Brown .75; 2/25/04 Meeting with David Snyder 1.00 hr.; 5/6/04 Telephone conversations with Tom Puccio, Mike Murray, and Larry Robbins 1.00 hr; 6/14/04 Meeting with Dave Nicholson 1.00; 1/24/07 Preparation for meeting with co-counsel 2.25; 1/25/07 Preparation for and attendance at meeting with co-counsel; work on document maintenance issues 6.00 hrs.; 10/30/07 Due to the vagueness of entries, defendants seek a 30% across the board reduction of time.

## POINT III

### PLAINTIFFS' FEES SHOULD BE SUBSTANTIALLY REDUCED DUE TO THEIR LIMITED SUCCESS.

---

[11] There are, of course, plenty of exceptions. E.g. 11/25/02 Meeting with Dan Reynolds 1.25; 12/3/02 Meeting with Will and Dan to discuss lawsuits .60; 3/19/04 Meeting with Mark Crabtree to discuss case 2.00; 6/28/04 Meeting with Mark Crabtree .50;

The Supreme Court has held that the degree of success is "the most critical factor in determining the reasonableness of the fee award." Kassim v. Schenectady, 415 F.3d 246, 254 (2d Cir. 2005) (quoting Farrar v. Hobby, 506 U.S. 103, 114 (1992)). "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley v. Eckhart, 461 U.S. 424, 440 (1983). Both the "quantity and quality of relief obtained as compared to what the plaintiff sought are key factors" in determining success. Barfield v. New York City Health and Hospital Co., 537 F.3d 132, 152 (2d Cir. 2008).

To support the argument their limited recovery should not reduce their fees. Plaintiffs' rely on two cases -- both decided before this Circuit's clear direction that "a district court, in fixing fees, should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[12] Kassim 415 F.3d at 253 (quoting Hensley, 461 U.S. at 435). While a prevailing plaintiff is entitled to some reasonable fees, the meaning of prevailing has been given a "generous formulation that brings the plaintiff only across the statutory threshold. Hensley, 461 U.S. at 433. The district court remains obligated to determine what fees are reasonable in light of the circumstances of the case. Id. If the plaintiff has only achieved limited success, the unadjusted lodestar figure may result in an excessive fee award. Hensley, 461 U.S. at 436.

## A. Plaintiffs' fees should be substantially reduced because of the limited quantity of the relief obtained.

"Where recovery of private damages is the purpose of civil rights litigation, a district court, in fixing fees is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." Kassim, 415 F.3d at 254. Awarding fees for hours

---

[12] Indeed, plaintiff's reference to Quaratino v. Tiffany & Co., is largely inapplicable as the case was remanded based on a rejection of the doctrine of "billing judgment." 166 F.3d 422, 426 (2d Cir. 1999). The opinion spends very little time examining the district court's discretionary finding as to the calculation or adjustment of the lodestar figure. Id. at 427.

spent on a suit with only limited success unreasonably rewards an attorney with fees that are excessive in relation to the results obtained. Hensley, 461 U.S. at 440. A reduction in attorneys' fees based on the partial success of the plaintiff's relief in proportion to the amount sought is appropriate. See e.g. Arnone v. CA, INC., 2009 U.S. Dist LEXIS 17080 at * 11 (S.D.N.Y. 2009) (reducing the lodestar calculation based on defendant's successful defense of multiple claims).

The vast disparity between the damages awarded to plaintiffs and the amount sought justifies a substantial reduction in fees. Plaintiffs' expert report indicates that they expected to receive over $700 million in damages from the defendants. Pestana Dec. Exhibit D. However, plaintiffs were only awarded $900,000—less than one percent of the amount originally sought. Furthermore, defendant prevailed on two out of five of plaintiffs' claims, (Counts I and V), and successfully defended against a damages award as to a third, (Count II). While plaintiffs were awarded damages on two of their five claims, (Counts III and IV), defendants have determined that only 5,134 of the 15,468 plaintiffs are entitled to any damages. Of those 5,134 plaintiffs, 4,603 are entitled to damages of less than $200 and 1,761 are entitled to less than twenty dollars. Pestana Dec. ¶ 27. When viewed in the context of plaintiffs' expected award of more than $700,000,000 plaintiffs' relief is miniscule. Therefore, an additional sizeable reduction in attorneys' fees is entirely reasonable and appropriate. See Corder v. Brown, 25 F.3d 833, 836-37 (9th Cir. 1994) (holding that attorney's fees must be reduced where "plaintiffs obtained only a small fraction of what they originally sought.").

**B. Plaintiffs' relief should be substantially reduced because of the limited quality of the relief obtained.**

In considering the reasonableness of the fee award courts should also consider the quality of the relief afforded. Farrar 506 U.S. at 114. In determining the quality of the relief, courts assess whether plaintiffs have achieved the main objective of their case. See Barfield 537

F.3d at 152. "The degree of plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of the reasonable fee." Lide v. Abbott House, 2008 U.S. Dist. LEXIS at *6 (S.D.N.Y. 2008). Where the degree of success is limited a "percentage reduction of counsel's fees is warranted." Id. at *7.

In Abrahamson v. Board of Educ., 374 F.3d 66, 69-70 (2d Cir. 2004), plaintiffs sued to invalidate a provision in a collective bargaining agreement as violative of the Age Discrimination in Employment Act ("ADEA"). Id. at 69. The provision offered teachers who became eligible for retirement after the plaintiffs a beneficial option which was not available to plaintiffs. Id. at 70. The plaintiffs' main objective was an order making this option available to them. Id. at 71. Although plaintiffs prevailed because the option was found to violate the ADEA, the quality of the relief afforded was decidedly limited because the school district was permitted to cease offering the option altogether rather than make it available to the plaintiffs. Id. at 77. As a result of the limited qualitative success of the relief, the court authorized a reduction of the attorneys fees. Id. at 79.

In Barfield, a nursing assistant sought overtime pay under the FLSA on behalf of herself and a class of temporary health care workers. 537 F.3d 132 at 136. After a hearing, the district court declined to certify the suit as a collective action. Id. at 138. While Barfield ultimately prevailed on her own claim, the district court applied a 50% reduction to the lodestar figure due to plaintiff's failure to certify the suit as a collective action. Id. at 140. Explaining that the degree of success obtained was "the most critical factor" in affixing fees, the Second Circuit affirmed this reduction. Id. at 152.

As in Abrahamson and Barfield, plaintiffs here have obtained limited qualitative success. Count II of plaintiffs' suit, ("the forced accrual claim"), was their rainmaker claim.

According to plaintiffs' expert's figures, this claim alone constituted close to half of the $700 million damages figure they sought. Pestana Dec. Exhibit D. Prosecuting count II as a collective action had to be one of plaintiffs' central objectives. However, this Court decertified the collective action with respect to Count II, Instead of 15,468 plaintiffs seeking relief, this Court allowed only the claims of four named plaintiffs to be tried and only two of those prevailed. In addition, neither of these two plaintiffs was awarded damages stemming from the claim. In this context, an across the board reduction is warranted.

## POINT IV

### PLAINTIFFS' REQUEST FOR COSTS ARE INSUFFICIENTLY DOCUMENTED

#### A. Travel Time Should Be Compensated at 50% of the hourly rate awarded by this Court

While counsel seek reimbursement for their travel time[13] at their claimed hourly rates,[14] courts in this Circuit regularly reduce attorneys fees by 50 percent for travel time. See Cruz v. Local Union No. 3 IBEW, 34 F.3d 1148, 1161 (2d Cir. 1994) citing Jennette v. City of New York, 800 F. Supp. 1165, 1170 (S.D.N.Y. 1992); Wilder v. Berstein, 975 F.Supp. 276, 283-84 (S.D.N.Y. 1997).

#### B. Costs

The fee applicant has the burden of establishing the reasonableness of the expense it seeks to recover and must provide the court "a detailed accounting of the expenses which ties

---

[13] Due to Robbins' office practice of block billing, counsels' billing entries do not specify the amount of time that is attributable exclusively to travel time. However, it appears from the lone Robbins billing entry that isolates travel time, travel to New York is 4 hours. See Robbins billing 3/31/08 billing entry for EAT.

[14] The sole exception is A & V counsel JD Brown who billed travel time at $150/hour and not the hourly rate of $175/hr sought for legal work.

the purported expenses with a specified legal product." Monaghan v. SZS 33 Assocs., L.P. 154 F.R.D 78 *86 (S.D.N.Y. 1994) (citing F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1269 (2d Cir. 1987)). Further, Local Civil Rule 54.1 of this court requires that "[t]he bill of costs shall include an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred. Bills for the costs shall be attached as exhibits." As set forth herein, despite their request for costs in an amount exceeding $500,000, the dearth of information supporting the application is but another example of plaintiffs' derision of the fee application process. Where, as here, plaintiffs have failed to provide suitable documentation to substantiate their costs, this court may decline to award the requested costs. Prot. One Alarm Monitoring, 553 F.Supp 2d 201, 210 (E.D.N.Y. 2008).

### Litigation Support from Vendors and Consultants

Robbins seeks $5,613.33 in disbursements for "Litigation Support from Vendors" but offers no explanation as to the nature of the service(s) provided. As such, plaintiffs fail to establish that this expense is both compensable and reasonable and thus must be denied.

A & V seeks expenses of $10,900.53 for "Consultant" services. In addition to this "Consultant" payment, Robbins seeks an additional $445,205.91 for "Experts, Court Reporters, Consultants." However, plaintiffs do not even provide the most basic of information, such as the name of the individual(s) for whose service they seek reimbursement. As such, the application does not establish whether Aitchison and Robbins are billing for the same individual or if the expenses claimed are attributable to the work of more than one person. Both A & V and Robbins fail to provide even the most basic or general description of the nature of the service alleged to have been provided by the retained consultant/expert. Thus, by failing to identify the provider and the nature of the service provided, plaintiffs have failed to establish that the providers'

service were compensable.[15] Moreover, plaintiffs' failure to provide the billing statement(s)/invoice(s) associated with each alleged provider precludes defendants and this court from assessing the reasonableness of the claimed expense.[16] As such, these claimed expenses must be denied. Rozell, 576 F. Supp. 2d at 540.

### Outside Copying & Printing

Robbins seeks $7,955.75 for photocopying and binding provided by an outside vendor. However, the firm does not provide any information regarding the number of pages copied nor the price per page of the service. As such, plaintiffs' have not established the resonableness of this cost.

### Travel Expenses

Robbins has billed $1,596.50 under the heading "Travel Expenses–Airfare,[17]" $3,165.00[18] for "Travel Expenses–Lodging" and $70,162.38 for "Travel-Out of Town." The billing records submitted by Robbins do not, however, detail or otherwise explain the

---

[15] Clearly, defendants are aware of plaintiffs' expert Murray Simpson. Defendants are, however, unaware of the amount of money Simpson charged for his services. Defendants are also aware that plaintiffs' retained as an expert James McCabe. However, defendants submit that the services of McCabe are not compensable because plaintiffs were forced to withdraw McCabe as an expert. Defendants are not aware of any other alleged experts or consultants that plaintiffs may have retained.

[16] It is also unclear if Robbins billing is duplicative in that the heading attributes the $445,205.91 expense to include "Experts, Court Reporters, Consultants" but also separately bills for "Deposition Transcript Cost" in the amount of $9,903.51. Defendants are unaware of what costs, if any, plaintiffs would incur above the costs of the deposition transcript.

[17] Robbins has billed $324.50, representing airfare for William Aberger as well as $394.50 for his out of town travel expenses. However, Aberger is not identified as a firm timekeeper and no explanation is provided as to his role in the litigation and to why his expenses should be compensable.

[18] Robbins seeks expenses of $2,722.50 for lodging. See page 154 of Robbins bills. However, no explanation is provided as to the hotel, rate, number of rooms , and number of nights this expense allegedly covers.

components of expenses billed under the heading "Travel-Out of Town[19]." Thus, defendants are unaware if the amounts billed include airfare, hotels and meals. As such, defendants cannot ascertain the reasonableness of any of the charges. Further, counsels date-specific time entries are not reconcilable with the expenses alleged to have been incurred on the dates identified in the summary of Out of Town Travel Expenses set forth on pages 166-168 of Robbins billing records. For example, while expenses are claimed to have been incurred on 10/21/06; 6/30/07, 7/30/07, 11/13/07,[20] 1/16/07, 1/11/08, and 3/11/08 the attorney time records do not indicate that the attorney to whom the expense is attributed actually worked on the case on the dates at issue. Similarly, although out of town expenses are alleged to have been incurred on 12/20/06, 1/31/07, 8/9/07, 10/31/07, 12/13/07, 12/31/07, 12/13/08, 2/26/08,[21] 3/19/08, 8/22/08, 9/12/08, the attorney time records do not reflect out of office work on the specified dates.

Finally, defendants submit that all of the travel and expenses sought by A & V attributed to "MF" must be excluded because the individual is not identified in the time records submitted by the firm as a timekeeper or as a member of the firm's administrative staff. Further, no explanation has been given regarding such person's role in the litigation to establish that his/her expenses are compensable .

---

[19] Robbins fails to offer a breakdown of charges both small $50 (12/13/07), large ($25,001.25) (See 11/4/08) and every dollar value in between.

[20] The 11/13/07 entry for associates $2,998.82 in expenses incurred by Orseck for travel to New York from 11/5-8/07 "for witness interviews." However, Orseck's time records do not reflect any work charged from 11/05-8/07 for "witness interviews" in New York. Neither could support be found in the billing records of Taaffe for the charge of $3,338.42 allegedly for Taaffe's "travel to NY 11/5-9/07 for witness interview."

[21] There are three bills attributed to out of town travel for 2/26/08, two of which are attributed to Orseck. However, the attorney billing records reflect that only Taaffe traveled on that date.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for attorneys' fees and costs should be reduced both as to rates and hours as described herein.

Dated:     New York, New York
             July 10, 2009

                             MICHAEL A. CARDOZO
                             Corporation Counsel of the
                              City of New York
                             *Attorney for Defendants*
                             100 Church Street
                             New York, New York 10007
                             (212) 788-0862
                             gpestana@law.nyc.gov


By:    /s/
          GEORGIA PESTANA
          Assistant Corporation Counsel

Blanche Greenfield,
Assistant Corporation Counsel

Benjamin Weilkson,
Summer Intern