UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

KEENAN M. SCOTT, THOMAS LOGAN,          **OPINION AND ORDER**
JOHN LOOMIS, ROBERT DAVIDSON,
AND MICHAEL C. DEMARTINO, et al.,            **02 Civ. 9530 (SAS)**

                   Plaintiffs,

            - against -

CITY OF NEW YORK and THE NEW
YORK CITY POLICE DEPARTMENT,

                   Defendants.

-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/25/09

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.      INTRODUCTION

In this litigation, current and former police officers and detectives

employed by the New York City Police Department ("NYPD") brought suit

against the City of New York and the NYPD (collectively "defendants") alleging

that they systematically violated overtime rights under the Fair Labor Standards

Act ("FLSA").[1]   This action has expended considerable judicial resources, having

---

[1]      *See* 29 U.S.C. §§ 201-219.

necessitated the issuance of seven Opinions and Orders,[2] four Memorandum

Opinions and Orders,[3] and a lengthy jury trial.[4]  Plaintiffs' claims are summarized

as follows:

> The amended complaint asserts five distinct claims.  First,
> plaintiffs claim that defendants have a routine practice of
> denying requests to use accrued compensatory time off
> without complying with FLSA's requirements (the "denial
> of use" claim) [Count I].  Second, plaintiffs claim that
> several of defendants' policies unlawfully force plaintiffs
> to accept compensatory time rather than cash overtime (the
> "forced accrual" claim) [Count II].  Third, plaintiffs claim
> that some regular work schedules contain overtime, for
> which they are not compensated (the "chart" claim) [Count
> III].  Fourth, plaintiffs claim that defendants improperly
> exclude shift differentials and longevity pay when
> calculating FLSA overtime rates (the "regular rate" claim)
> [Count IV].  Fifth, plaintiffs claim that defendants

---

[2]     *See Scott v. City of New York*, No. 02 Civ. 9530, 2009 WL 1286420
(S.D.N.Y. May 8, 2009); *Scott v. City of New York*, 592 F. Supp. 2d 501 (S.D.N.Y.
2008); *Scott v. City of New York*, 592 F. Supp. 2d 475 (S.D.N.Y. 2008); *Scott v.
City of New York*, 591 F. Supp. 2d 554 (S.D.N.Y. 2008); *Scott v. City of New York*,
592 F. Supp. 2d 386 (S.D.N.Y. 2008); *Scott v. City of New York*, No. 02 Civ. 9530,
2004 WL 2980135 (S.D.N.Y. Dec. 27, 2004); *Scott v. City of New York*, 340 F.
Supp. 2d 371 (S.D.N.Y. 2004).

[3]     *See Scott v. City of New York*, No. 02 Civ. 9530, 2009 WL 1138719
(S.D.N.Y. Apr. 27, 2009); *Scott v. City of New York*, 604 F. Supp. 2d 602
(S.D.N.Y. 2009); *Scott v. City of New York*, No. 02 Civ. 9530, 2008 WL 5099952
(Dec. 2, 2008); *Scott v. City of New York*, No. 02 Civ. 9530, 2008 WL 4949343
(S.D.N.Y. Nov. 19, 2008).

[4]     The sixteen-day trial began on November 10, 2008, and concluded on
December 3, 2008.

> impermissibly fail to compensate for overtime amounting to less than fifteen minutes (the "failure to pay" claim) [Count V].[5]

The jury awarded plaintiffs $900,000 in damages, having found that plaintiffs proved the willful violation of the FLSA's overtime compensation requirements (the chart claim and the regular rate claim) and also proved liability, but no damages, on the forced accrual claim as to two individual officers.[6] Plaintiffs did not prevail on the denial of use or the failure to pay claims. Plaintiffs now seek an award of attorneys' fees and costs related to the prosecution of the case, as mandated by statute.[7] In particular, plaintiffs seek $2,165,393.40 in fees and $113,874.11 in costs[8] for the law firm of Aitchison & Vick, Inc. ("A&V"); $2,682,777.00 in fees and $563,693.40 in costs[9] for the law firm of

---

[5]    *Scott v. City of New York*, 592 F. Supp. 2d at 391-92 (footnotes omitted).

[6]    I decertified the forced accrual class during the trial, thereby severely limiting plaintiffs' ability to recover on this claim.

[7]    Section 216(b) of the FLSA provides, that upon a finding of liability under sections 206 or 207, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b).

[8]    *See* Ex. A to the Declaration of Will Aitchison ("Aitchison Decl.").

[9]    *See* Ex. A to the Declaration of Gary A. Orseck in Support of Plaintiffs' Application for an Award of Attorneys' Fees and Reimbursement of Expenses ("Orseck Decl.").

3

Robinson, Russell, Englert, Orseck, Untereiner & Sauber LLP ("Robinson

Russell"); and $2,035,867.50 in fees for solo practitioner Thomas P. Puccio.[10]  For

the following reasons, plaintiffs' applications are granted, but not in the amounts

requested.

## II.     STANDARD

It is a well-established rule that "'any attorney . . . who applies for

court-ordered compensation in this Circuit . . . must document the application with

contemporaneous time records . . . specify[ing], for each attorney, the date, the

hours expended, and the nature of the work done.'"[11]  "If the court finds that the fee

applicant's claim is excessive or insufficiently documented, or that time spent was

wasteful or redundant, the court may decrease the award, either by eliminating

compensation for unreasonable hours or by making across-the-board percentage

---

[10]     Plaintiffs do not seek an award for costs for Puccio given that the
"bulk of the costs of this litigation were underwritten by the PBA."  Declaration of
Thomas P. Puccio in Support of Plaintiffs' Application for an Award of Attorneys'
Fess and Reimbursements of Expenses ("Puccio Decl.") at 1 n.1.

[11]     *Yea Kim v. 167 Nail Plaza, Inc.*, No. 05 Civ. 8560, 2009 WL 77876,
at *4 (S.D.N.Y. Jan. 12, 2009) (quoting *New York State Ass'n for Retarded
Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)) (alteration in
original).

4

cuts in the total hours for which reimbursement is sought."[12]  There is, however,

no rule requiring proportionality between the amount of fees requested and the

damages recovered.[13]

District courts are afforded considerable discretion in determining the

amount of attorney's fees in any given case.[14]  However, the Second Circuit has

recently abandoned the lodestar approach, previously used by district courts in

calculating attorney's fees, in favor of a "presumptively reasonable fee"

---

[12]    *Wise v. Kelly*, 620 F. Supp. 2d 435, 442 (S.D.N.Y. 2008).  *Accord
Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) ("[I]n dealing with . .
. surplusage, the court has discretion simply to deduct a reasonable percentage of
the number of hours claimed 'as a practical means of trimming fat from a fee
application[.]'") (quoting *New York State Ass'n for Retarded Children*, 711 F.2d at
1146).

[13]    *See Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)
("Reasoning that a rule calling for proportionality between the fee and the
monetary amount involved in the litigation would effectively prevent plaintiffs
from obtaining counsel in cases where deprivation of a constitutional right caused
injury of low monetary value, we have repeatedly rejected the notion that a fee
may be reduced merely because the fee would be disproportionate to the financial
interest at stake in the litigation.") (citing *Quaratino v. Tiffany & Co.*, 166 F.3d
422 (2d Cir. 1999), in "rejecting a 'billing judgment' rule that would limit the
awardable fee to one rationally related to the recovery that could be expected *ex
ante*.").

[14]    *See Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d
132, 151 (2d Cir. 2008).

5

approach.[15]

> The meaning of the term "lodestar" has shifted over time,
> and its value as a metaphor has deteriorated to the point of
> unhelpfulness. This opinion abandons its use. We think
> the better course – and the one most consistent with
> attorney's fees jurisprudence – is for the district court, in
> exercising its considerable discretion, to bear in mind *all* of
> the case-specific variables that we and other courts have
> identified as relevant to the reasonableness of attorney's
> fees in setting a reasonable hourly rate. The reasonable
> hourly rate is the rate a paying client would be willing to
> pay. In determining what rate a paying client would be
> willing to pay, the district court should consider, among
> others, the *Johnson* factors; it should also bear in mind that
> a reasonable, paying client wishes to spend the minimum
> necessary to litigate the case effectively. The district court
> should also consider that such an individual might be able
> to negotiate with his or her attorneys, using their desire to
> obtain the reputational benefits that might accrue from
> being associated with the case. The district court should
> then use that reasonable hourly rate to calculate what can
> properly be termed the "presumptively reasonable fee."[16]

---

[15]     *Simmons v. New York City Transit Auth.*, No. 08-4079-cv(L), 2009
WL 2357703, at *1 (2d Cir. Aug. 3, 2009).

[16]     *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of
Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (footnote omitted, second italics added).
The twelve *Johnson* factors referred to above include: "(1) the time and labor
required; (2) the novelty and difficulty of the questions; (3) the level of skill
required to perform the legal service properly; (4) the preclusion of employment
by the attorney due to acceptance of the case; (5) the attorney's customary hourly
rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by
the client or the circumstances; (8) the amount involved in the case and the results
obtained; (9) the experience, reputation, and ability of the attorneys; (10) the
'undesirability' of the case; (11) the nature and length of the professional

Thus, in determining a reasonable hourly rate for a particular fee request,

> the district court should, in determining what a reasonable,
> paying client would be willing to pay, consider factors
> including, but not limited to, the complexity and difficulty
> of the case, the available expertise and capacity of the
> client's other counsel (if any), the resources required to
> prosecute the case effectively (taking account of the
> resources being marshaled on the other side but not
> endorsing scorched earth tactics), the timing demands of
> the case, whether an attorney might have an interest
> (independent of that of his client) in achieving the ends of
> the litigation or might initiate the representation himself,
> whether an attorney might have initially acted *pro bono*
> (such that a client might be aware that the attorney
> expected low or non-existent remuneration), and other
> returns (such as reputation, etc.) that an attorney might
> expect from the representation.[17]

The two competing methods, the lodestar method and the *Johnson*

method, are in tension with each other. As explained by the Second Circuit:

> A district court using the lodestar method would set the
> lodestar and then consider whether, in light of variables
> such as the difficulty of the case, it should adjust the
> lodestar before settling on the reasonable fee it was
> ultimately inclined to award. . . . By contrast, a district
> court employing the *Johnson* method would consider
> factors, such as the difficulty of the case, earlier in the

---

relationship with the client; and (12) awards in similar cases." *Id.* at 186 n.3
(citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.
1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93
(1989)).

[17]     *Id.* at 184.

> fee-calculation process by weighing them in setting its
> tentative reasonable fee, from which there would seldom be
> a need to depart.[18]

The Second Circuit has acknowledged that "[t]he Supreme Court adopted the

lodestar method in principle without, however, fully abandoning the *Johnson*

method."[19]  What this means in practice is unclear, however.[20]  The Second Circuit

---

[18]     *Id.* at 187 (citations omitted).  The Second Circuit's proclamation of
the "presumptively reasonable fee" as the current approach in calculating
attorney's fees may, in fact, have little practical significance.  "Although the term
'lodestar' is now disfavored by the Second Circuit, the applicable approach still
contemplates (1) a consideration of the number of hours actually spent by counsel
and other personnel that are deemed reasonably necessary to a successful outcome
for the client, and (2) the setting of reasonable hourly rates for counsel, a criterion
most recently, if opaquely, described by the Second Circuit as the 'rate a paying
client would be willing to pay.'" *Metrokane v. Built NY, Inc.*, No. 06 Civ. 14447,
2009 WL 637111, at *1 (S.D.N.Y. Mar. 6, 2009) (quoting *Arbor Hill*, 522 F.3d at
190).

[19]     *Arbor Hill*, 522 F.3d at 188 (citing *Hensley v. Eckerhart*, 461 U.S.
424, 433 (1983) and *Blum v. Stenson*, 465 U.S. 886 (1984)).  According to the
Second Circuit, "[t]he Supreme Court collapsed what had once been a two-step
inquiry into a single-step inquiry; it shifted district courts' focus from the
reasonableness of the lodestar to the reasonableness of the hourly rate used in
calculating the lodestar, which in turn became the *de facto* reasonable fee." *Id.*

[20]     *See id.* at 188-89 (stating that in cases decided after *Hensley* and
*Blum*, the Supreme Court has suggested that district courts use the *Johnson* factors
to adjust the lodestar). *See also Blanchard*, 489 U.S. at 94 ("And we have said
repeatedly that '[t]he initial estimate of a reasonable attorney's fee is properly
calculated by multiplying the number of hours reasonably expended on the
litigation times a reasonable hourly rate.'  The courts may then adjust this lodestar
calculation by other factors. . . . The *Johnson* factors may be relevant in adjusting
the lodestar amount, but no one factor is a substitute for multiplying reasonable

8

has concluded that "[t]he net result of the fee-setting jurisprudence here and in the Supreme Court is that the district courts must engage in an equitable inquiry of varying methodology while making a pretense of mathematical precision.[21]

Of critical importance here, and not answered in either *Arbor Hill* or *Simmons*, is whether and how a fee request should be reduced because of plaintiffs' limited success. This question was addressed in *Barfield*, a case which post-dated *Arbor Hill*.[22] In *Barfield*, the district court declined to certify plaintiff's suit as an FLSA collective action.[23] The district court then reduced plaintiff's fee request, based on the lodestar calculation, by fifty percent as a result.[24] On appeal, the Second Circuit affirmed the district court's reduction.[25] In so doing, the court

---

billing rates by a reasonable estimation of the number of hours expended on the litigation.") (quoting *Blum*, 465 U.S. at 888).

[21]   *Arbor Hill*, 522 F.3d at 189.

[22]   *Barfield* was decided on August 8, 2008. *Arbor Hill* was last amended on April 10, 2008.

[23]   *See Barfield*, 537 F.3d at 137.

[24]   *See id.* at 151. "The district court in this case, operating without the benefit of the *Arbor Hill* decision, did not employ its specific technique for determining a presumptively reasonable fee, but that is not a concern on this appeal where plaintiff does not challenge the lodestar calculation but only the 50 percent reduction applied to it." *Id.* at 152.

[25]   *See id.* at 153 ("The district court did not abuse its discretion in reducing attorney's fees to reflect plaintiff's failure to secure collective action

9

stated that it was

> mindful of the Supreme Court's observation that "the most
> critical factor" in a district court's determination of what
> constitutes reasonable attorney's fees in a given case "is
> the degree of success obtained" by the plaintiff.[26]

The *Barfield* court concluded that the "degree of success" inquiry "is not limited

to inquiring whether a plaintiff prevailed on individual claims."[27]  "Both the

quantity and quality of relief obtained, as compared to what the plaintiff sought to

achieve as evidenced in her complaint, are key factors in determining the degree of

success achieved."[28]  The court noted that "'[i]f a plaintiff has achieved only

partial or limited success, the product of hours reasonably expended on the

litigation as a whole times a reasonable hourly rate may be an excessive amount . .

. even where the plaintiff's claims were interrelated, non-frivolous, and raised in

good faith.'"[29]

---

certification.").

[26]    *Id.* at 152 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) and
citing *Kassim*, 415 F.3d at 254).

[27]    *Id.* (citing *Kassim*, 415 F.3d at 254).

[28]    *Id.* (quotation marks and citation omitted).

[29]    *Id.* (quoting *Hensley*, 461 U.S. at 436).

In *Kassim*, the Second Circuit analyzed the "degree of success" factor

in even greater detail. The *Kassim* court noted that "[t]he Supreme Court has

consistently stressed the importance of the degree of the plaintiff's success in the

litigation as a factor affecting the size of the fee to be awarded."[30] The court then

addressed the distinction, or lack thereof, between unitary cases and cases

involving a number of distinct claims.

> Reviewing the large variety of factors relevant to an award
> of attorney's fees, the [Supreme] Court concluded that "the
> most critical factor is the degree of success obtained." The
> Court elaborated on this observation, both in the context of
> a suit involving a number of "distinctly different claims for
> relief that are based on different facts and legal theories,"
> and cases which "present only a single claim" or which
> "involve a common core of facts or will be based on related
> legal theories[.]" In either type of case, the Court
> explained, the "degree of success obtained" is "the most
> critical factor."[31]

The *Kassim* court concluded as follows: "Our circuit has thus clearly adopted the

view . . . that a district judge's authority to reduce the fee awarded to a prevailing

plaintiff below the lodestar by reason of the plaintiff's 'partial or limited success'

is not restricted either to cases of multiple discrete theories or to cases in which the

---

30     *Kassim*, 415 F.3d at 253.

31     *Id.* (quoting *Hensley*, 461 U.S. at 436, 434, 435 and 436,
respectively).

11

plaintiff won only a nominal or technical victory."[32]

In sum, given the current attorney-fee jurisprudence established by

the Supreme Court and the Second Circuit, the *Johnson* factors are to be used in

setting reasonable hourly rates but the resulting "presumptively reasonable fee" is

subject to further reduction due to, *inter alia*, plaintiffs' limited success.[33]

Accordingly, the next step is to review the contemporaneous time records

submitted by counsel in light of the *Johnson* factors and for overall

reasonableness.

## III.   DISCUSSION

### A.   In General

In calculating the fees and costs for plaintiffs' counsel, I have

thoroughly reviewed the Aitchison Declaration and exhibits, the Orseck

Declaration and exhibits, Plaintiffs' Application for an Award of Attorneys' Fees

and Reimbursement of Expenses, Defendants' Memorandum of Law in Opposition

to Plaintiffs' Motion for Attorneys' Fees, the Declaration of Georgia Pestana in

[32]   *Id.* at 256.

[33]   "The Second Circuit has observed that district courts retain the
authority to reduce a statutory fee award by reason of the plaintiff's 'partial or
limited success.'" *Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 727
(E.D.N.Y. 2009) (quoting *Kassim*, 415 F.3d at 256).

12

Opposition of Plaintiffs' Request for Attorneys' Fees and Costs ("Pestana Decl.")

and exhibits, Defendants' Memorandum of Law in Opposition to Plaintiffs'

Motion for Attorneys' Fees ("Def. Mem."), Plaintiffs' Reply in Support of an

Award of Attorneys' Fees and Reimbursement of Expenses, the Supplemental

Declaration of Gary A. Orseck in Support of Plaintiffs' Application for an Award

of Attorneys' Fees and Reimbursement of Expenses, the supplemental Declaration

of Will Aitchison, the Supplemental Declaration of Thomas P. Puccio ("Puccio

Supp. Decl."), and a letter dated July 21, 2009 from Georgia Pestana to this Court.

Although I do not explicitly address each of the parties' arguments regarding the

instant fee request, I have considered all of them and conclude that the amounts

determined below represent reasonable fees for the efforts expended by counsel in

this complicated and protracted FLSA action.

### B.    A&V

A&V is a small law firm located in Portland, Oregon.  A&V has

submitted contemporaneous time records for 2004-2005 and 2006-2009, which are

summarized in Exhibit A to the Declaration of Will Aitchison.  In this summary,

A&V includes hourly rates for Will Aitchison of $350 per hour for the period

2004-2005, and  $425 per hour for the period 2006-2009.  Aitchison is a partner at

A&V and has considerable experience in the FLSA field.[34]  Defendants do not

contest Aitchison's rates.[35]  A&V includes rates of $175 to $300 per hour for its

associates and $65 to $125 for its administrative staff.[36]  Defendants do, however,

object to the amount of A&V's fees and costs on  grounds unrelated to

Aitchinson's fees.  While I find most of defendants' arguments unpersuasive, one

argument – that plaintiffs' fees should be substantially reduced due to their limited

success – does have merit and must be seriously considered.

Plaintiffs were awarded $900,000 in damages on the chart claim and

the regular rate claim (Counts III and IV).[37]  Furthermore, the jury found

defendants liable with respect to plaintiffs' forced accrual claim (Count II) as to

---

[34]     *See* Aitchison Decl. ¶¶ 4- 8.

[35]     *See* Def. Mem. at 3 ("In consideration of the extensive wage-and-hour
experience of plaintiffs' counsel Aitchison, defendants do not contest his claimed
hourly rates of $350 to $425 over the course of this litigation.") (citing *Arnone v.
CA, Inc.*, No. 08 Civ. 4458, 2009 WL 585841, at *3 (S.D.N.Y. Mar. 6, 2009)
(stating that $425 per hour is a typical rate for labor lawyers with substantial
experience with the Employee Retirement Income Security Act ("ERISA")).
*Accord Sheehan v. Metropolitan Life*, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006)
(approving $425 per hour for an "experienced and effective" ERISA attorney).

[36]     *See* Ex. A to Aitchison Decl.

[37]     This Court found defendants liable on the chart and regular rate
claims at the summary judgment stage. *See Scott*, 592 F. Supp. 2d at 409 (stating
that the issue of damages on the chart claim and the regular rate claim must be
resolved at trial).

two individual plaintiffs but did not award any damages on this claim. These

verdicts were a small fraction of what plaintiffs had initially sought. Under

*Hensley* and *Kassim*, and even *Arbor Hill*, a substantial reduction in the amount of

fees to be awarded is warranted. In light of all the relevant factors, I find that

A&V's fees should be reduced by thirty percent (30%) due to plaintiffs' limited

recovery. Furthermore, I find all of A&V's expenses to be reimbursable.

Accordingly, plaintiffs are awarded $1,515,775.30 in attorney's fees and

$113,874.11 in costs, for a total award in the amount of $1,629,649.40 relating to

A&V.

## C. Robbins Russell

Robbins Russell is a small law firm located in Washington, D.C.

The hourly rates and hours expended by Robbins Russell are summarized in

Exhibit A to the Orseck Declaration. The rates for associates range from $240 to

$320 per hour for the period 2004-2005 and $300 to $370 for the period 2006-

2009. The rates for partners range from $320 to $525 for the 2004-2005 period

and $435 to $670 for the 2006-2009. Robbins Russell also billed $125 per hour

for its paralegals in 2004-2005, which increased to $175 per hour for 2006-2009.

Finally, Robbins Russell is claiming total expenses of $563,693.40.

In light of the *Johnson* factors, and the guidance provided by *Arbor Hill*, I find that the hourly rates charged by Robbins Russell must be adjusted downward. Regarding partners at Robbins Russell, "[d]efendants respectfully submit that the rates of Aitchison, plaintiffs' most experienced counsel in the area of wage-and hour-law, ranging from $350-$425/hour should serve as both a benchmark and a ceiling for the evaluation and award of an hourly rate to plaintiffs' remaining counsel."[38] This Court agrees. The rates for the following partners have been revised, as follows, for the two relevant time periods: Alison Barnes ($320/$425); Alan Untereiner ($425); Gary Orseck ($425/$425); Gregory Poe ($425/$425); Lawrence Robbins ($425/$425); Mark Stancil ($425); and Roy Englert ($425). After considering the background, education and experience of the Robbins Russell associates, this Court also finds a reduction to most of their hourly rates is warranted. Thus, for the period 2006-2009, the following associates' rates have been adjusted: Brian Perez-Daple ($300); Daniel Walfish ($300); Damon Taaffe ($325); Eva Temkin ($325); and Eric Feigin ($300). Finally, this Court finds the rates charged by Robbins Russell for its paralegals to be excessive. Accordingly, the rates for all paralegals is reduced to $100 per hour for the 2004-2005 period and $125 per hour for 2006-2009. Using these adjusted

---

[38]     Def. Mem. at 4.

hourly rates, the total amount of Robbins Russell fees, re-calculated by this Court, is $2,313,817.30.[39]  However, as with A&V, the same thirty percent reduction must also be applied due to plaintiffs' limited success.[40]  Accordingly, the total amount of reimbursable fees is $1,619,672.10.  This Court also finds the total amount of Robbins Russell expenses, $563,693.40, to be reimbursable.  Plaintiffs are therefore awarded a total of $2,183,365.50 for fees and costs incurred by Robbins Russell.

### D.    Puccio

Puccio did not submit contemporaneous time records in support of plaintiffs' fee application for his share of the fees.  Instead, Puccio had his office staff re-create his time records based on e-mails and other sources.[41]  This, alone, is fatal to an attorney's fees request.  But this Court will give Puccio the benefit of the doubt and presume that the records submitted constitute some semblance of his

---

[39]    Defendants' other arguments objecting to the amount of Robbins Russell fees are hereby rejected.

[40]    As with A&V, I find defendants' remaining arguments in opposition to the Robbins Russell fees and costs to be without merit.

[41]    "My fee application for this matter was prepared by my office working with outside paralegal assistance under my general supervision.  It is based on an extensive database of incoming emails maintained by my law firm in a computer folder, the records of Robbins Russell and Aitchison Vick law firms, my office files, court records and court calendars."  Puccio Supp. Decl. ¶ 3.

actual time charges.[42]

Unlike A&V and Robbins Russell, defendants raise significant objections with respect to both the number of hours and the hourly rates submitted by Puccio.[43] Defendants object to Puccio's hourly rates, which range from $750 to $1,000 per hour, arguing that "there is no evidence at all that Puccio had any prior experience with wage-and-hour litigation that would justify an award of an hourly rate that far exceeds that awarded to the most experienced [labor law] litigators in this district."[44] This Court agrees that Puccio's claimed rates are excessive and therefore reduces his hourly rate to $550 per hour for all time charged, notwithstanding his well-deserved reputation.[45]

---

[42]     This Court will, however, apply a further across-the-board percentage reduction due to this failure and the repetition of certain time entries, discussed *infra*.

[43]     "Puccio's lack of experience in wage and hour litigation is paralleled by the lack of evidence of any substantive contribution to this case prior to trial." Def. Mem. at 10.

[44]     *Id.* at 7.

[45]     *See* Puccio Supp. Decl. ¶ 2. Puccio is awarded a higher rate than other counsel based on his unique trial skills. Although this rate is not as high as the rate a willing client might pay Puccio in a criminal case in this district, it is more than fair in an FLSA case. *See, e.g., Arnone*, 2009 WL 585841, at *3 (finding $425 per hour to be a typical rate for an experienced labor lawyer in this district) (citing *Sheehan*, 450 F. Supp. 2d at 328, in support of $425 per hour for an "experienced and effective" ERISA attorney).

Defendants also object to the number of hours claimed by Puccio. Defendants first object to 677.55 hours Puccio included for reviewing e-mails. Although this amount appears excessive, to strike all of this time would be inappropriate. Accordingly, this Court reduces Puccio's e-mail review hours by half of 677.55, which amounts to a reduction of 338.78 hours. Defendants also object to 79.05 hours Puccio attributes to Patrolman's Benevolent Association ("PBA") meetings. As with Puccio's e-mail review time, this Court will reduce Puccio's PBA meeting time by fifty percent (39.53 hours). Defendants then object to certain entries listed by Puccio as "Preparation for and attendance at trial."[46] Defendants claim that there was no trial on certain days in which Puccio charged substantial amounts of time for preparation for and attendance at trial. Defendants have identified a total of 86.5 hours charged for trial attendance on days in which there was no trial.[47] Of this total, however, this Court will exclude 29.5 hours (for 7/28/08 and 12/15/08) on the assumption that the hours associated with the remaining days involved trial preparation only and were incorrectly coded

---

[46]     *See* Def. Mem. at 12-13.

[47]     The following dates have been so identified: 10/31/08 (15.5 hours); 11/7/08 (13.5 hours); 11/9/08 (13.5 hours); 11/16/08 (14.5 hours); 12/15/08 (13.5 hours): and 7/28/08 (16 hours).  *See id.*

"preparation for and attendance at trial."[48]   Finally, defendants object to certain

entries in Puccio's records that do not appear to be related to this action at all.[49]

Puccio consents to the deletion of 10.4 hours from his request.[50]  Thus, this Court

will reduce Puccio's total hours of 2,090.87 by a total of 418.21 hours, leaving

1,672.66 compensable hours.  At $550 per hour, the amount before the limited

success reduction is $919,963.   Applying the same thirty percent "limited

success" reduction results in a fee award of $643,974.10.

There is, however, another problem with Puccio's time records that

warrants an even further reduction.  Defendants point out that for the period July

2, 2008 - September 2, 2008, "[a] significant number of entries, identical in

punctuation, spacing, and even in typos, appear as many as four times in a cyclical

pattern."[51]  According to defendants, "the same 43 entries appear in Puccio's time

---

[48]     See Puccio Supp. Decl. ¶ 6 ("[I]t is possible that a small number of
entries employ a computer coded generic description that may not totally reflect
the type of work performed on a given day.  In other words 'preparation for and
attendance at trial['] []may solely involve trial preparation . . . .").  The assumption
applied above is clearly inapplicable to the dates excluded – dates either after the
jury verdict (12/15/08) or well before the trial commenced (7/28/08).

[49]     See id. at 13-14.

[50]     See Puccio Supp. Decl. ¶ 9 ("The defendants have identified 8 entries
comprising a total of 10.4 hours that involve other matters which were apparently
misfiled and appear as part of the fee request.").

[51]     Def. Mem. at 11.

records in a cycle that repeats itself as many as four times."[52]  Puccio did not

respond to this allegation in his Supplemental Declaration.  This "identical entry"

problem is most troublesome as it calls into doubt the veracity and accuracy of all

of Puccio's time records.  It also highlights the problem of not preparing

*contemporaneous* time records.  Accordingly, to adjust for these suspicious

multiple entries and to sanction Puccio, in part, for not submitting

contemporaneous time records, this Court will reduce his fees by another twenty

percent.  Plaintiffs will therefore be awarded $515,179.28 for fees incurred by

Puccio ($643,974.10 x 80%).

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs will be awarded total attorney's

fees and costs in the amount of $4,328,194.38 ($1,629,649.60 for A&V;

$2,183,365.50 for Robbins Russell; and $515,179.28 for Puccio).  The Clerk of

the Court is directed to close plaintiffs' Motion for Attorneys' Fees and

Reimbursement of Expenses.

---

[52]     Pestana Decl. ¶ 7.  Defendants have prepared a chart listing the
precise entries and the dates on which they repeat.  *See id.*

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              August 25, 2009

## - Appearances -

**For Plaintiffs:**

Will Aitchison, Esq.
Aitchison & Vick, Inc.
3021 N.E. Broadway
Portland, OR 97232
(503) 282-6160

Gary Orseck, Esq.
Robbins Russell Englert
 Orseck & Untereiner
1801 K Street, NW, Suite 411
Washington, D.C. 20006
(202) 775-4500

Thomas P. Puccio, Esq.
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, NY 10169
(212) 883-6383

**For Defendants:**

James Lemonedes
Georgia Pestana
Assistant Corporation Counsel
100 Church Street
New York, NY 10007
(212) 788-0862