### UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEENAN M. SCOTT, THOMAS LOGAN, JOHN LOOMIS, ROBERT DAVISON and MICHAEL C. DEMARTINO, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT, <br><br> Defendants. | Case No. 02 Civ 9530 (SAS) |

### REPORT ON PLAINTIFFS' RESPONSE TO PROPOSED SETTLEMENT

Pursuant to this Court's November 13, 2009 Order, plaintiffs' counsel submit this report regarding their notification to the individual plaintiffs of the Fairness Hearing, and the comments and objections received in response.

### 1.  Notification to Plaintiffs

On or before November 17, 2009, plaintiffs' counsel mailed out letters to the 14,209 individual plaintiffs for whom they had current addresses. The text used in those letters is attached hereto as Appendix A. Plaintiffs' counsel also placed an advertisement in The Chief Leader, a weekly newspaper targeted to City of New York employees. The advertisement ran on November 20, November 27, and December 4, 2009. A copy of the advertisement is attached hereto as Appendix B. On November 9, 2009, plaintiffs' counsel posted information about the proposed settlement on the website they maintain regarding the lawsuit, www.nypdflsa.com. The text of the web page posting is attached hereto as Appendix C. The letters, advertisements,

and web page posting described the proposed settlement, explained how comments or objections could be made, and provided contact information for all the plaintiffs' attorneys.

### 2. **Comments, Objections, and Requests to be Heard**

Plaintiffs' counsel have since received written comments from the following eleven individual plaintiffs regarding the proposed resolution:

| LAST NAME | FIRST NAME |
|---|---|
| Agoglia | Chris |
| Cappuccilli | Pete |
| Davis | Danielle |
| DeFillippo | Michael |
| Fowler | C. |
| Moore | Syntheria |
| Mullaly | Matthew |
| Murphy | Dennis |
| Ortiz | Miguel |
| Peitler | Steven |
| Streffacio | Patrick |

The comments submitted by these plaintiffs are attached as Appendix D.

The following ten individual plaintiffs have requested to appear at this Court's hearing on December 18, 2009:

| LAST NAME | FIRST NAME |
|---|---|
| Accardi | Louis |
| Burke | Patricia |
| Chavis | Stafford |
| DeFillippo | Michael |
| Gonzalez | Daniel |
| Hogan | Barbara |
| Muentes | Carlos |
| Rivera | Luis |
| Ruiz | Paula |
| Soto | Herman |

Plaintiffs' counsel have sent notice to the above ten plaintiffs that the Fairness Hearing has been moved from 2:30 PM to 4 PM on December 18, 2009.

### 3.  Plaintiff DeFillippo's Objection Regarding Contingent Fee Agreement

As we reported to the Court in our June 30, 2009 Application for an Award of Attorneys' Fees and Reimbursement of Expenses (Dkt. 293) at 16, plaintiffs' counsel agreed to be compensated for this case through a shared 25% contingent share of the total recovery minus costs, plus any fees awarded by the Court.  In his response to the proposed settlement, plaintiff Michael DeFillippo objects to the fact that the Contingent Fee Agreement between plaintiffs' counsel and the individual plaintiffs is not mentioned in the Notice that was mailed to the plaintiffs.  See DeFillippo letter at Appendix D hereto.  Mr. DeFillippo also asserts that, pursuant to the Agreement, plaintiffs' counsel are not entitled to all of the attorneys fees the Court awarded, but only to 25% of those fees.  Mr. DeFillippo concludes that the Notice therefore is inaccurate, and "that the fairness of the settlement should not be considered without this important information."  Plaintiffs' counsel submit that the Notice we circulated is entirely accurate.

First, the contingent-recovery provision of the Agreement is not mentioned in the Notice because, as things turned out, plaintiffs' counsel are not *entitled* to any contingent recovery.  The Agreement (attached to Mr. DeFillippo's letter) provides that "[a]ny attorney fees received as part of the amount collected shall be credited on a pro-rata basis against [each plaintiff's] fee obligations in this matter."  In other words, the individual plaintiffs are entitled to offset the amount they owe their lawyers under the Contingent Fee Agreement by whatever amount the Court awarded the lawyers under the fee-shifting provision of the FLSA, 29 U.S.C. § 216(b).  And because the contingent share of the $900,000 damage award to which plaintiffs' counsel

would otherwise be entitled (25% x $900,000 = $225,000) is *less than* the fees the Court awarded to each of the three plaintiffs' firms, none of the firms is entitled to any contingency fee.

Second, Mr. DeFillippo is mistaken in asserting that plaintiffs' counsel are entitled to only 25% of the attorneys' fees the Court awarded them, with the rest going to the individual plaintiffs. To begin with, it would be an exceedingly odd fee agreement that would measure a party's recovery, not by the net amount recovered from the opponent, but instead by how hard the party's lawyers worked. And the language of the Fee Agreement itself bears that out. The Agreement provides that, "After bringing court action and up to and including trial and any appeal of this action, [the lawyers] are to retain 25% of the net amount (net amount recovered shall equal the gross amount recovered, less costs and disbursements) recovered, including any attorney fees recovered as part of the settlement." The Fee Agreement thus contemplates two sources of potential recovery for plaintiffs' counsel: (1) a percentage of the "net amount recovered," and (2) "any attorneys fees recovered." As the text makes clear, the 25% multiplier applies only to the "net amount recovered," with "net amount" defined as "the gross amount recovered" in the action, "less costs and disbursements." The 25% manifestly does not apply to the "fees recovered as part of the settlement," and such a construction would make no sense.

To begin, with, as explained above, the Agreement expressly contemplates that the plaintiffs are entitled to an offset against their contingent-fee obligations in the amount of any attorneys' fees awarded by the Court. Put another way, the Fee Agreement directs the parties to subtract the entirety of the attorneys' fees awarded by the Court (here, $3,650,627 among the three firms) from the contingent fee that would otherwise be allocable to the attorneys. That provision would be nonsensical if the 25% contingent fee provision applied to *both* the plaintiffs' recovery *and* any fees awarded by the Court. What is more, the construction suggested by Mr.

DeFillippo would result in the individual plaintiffs obtaining a recovery from the defendants that is greater than the amount of liability determined by the jury and ordered by the Court.  And as noted above, Mr. DeFillippo's construction would provide a recovery to the plaintiffs, not on the proven merits of their claims, but on the diligence of their lawyers in pursuing those claims (without the certainty of any fees at all).

Plaintiffs' counsel submit that, in the interest of finality, the Court should address Mr. DeFillippo's concern in the context of the Fairness Hearing.

Respectfully submitted,

/s/
Thomas P. Puccio
LAW OFFICES OF THOMAS P. PUCCIO
230 Park Avenue
New York, NY 10169
(212) 883-6383

Gary A. Orseck
Lawrence S. Robbins
ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411
Washington, D.C. 20006
(202) 775-4500

Will Aitchison
AITCHISON & VICK, INC.
3021 N.E. Broadway
Portland, OR 97232
(503) 282-6160

Date:   December 14, 2009                    *Counsel for Plaintiffs*

## SCOTT V. CITY OF NEW YORK

## NOTICE OF PROPOSED SETTLEMENT OF FLSA LAWSUIT AGAINST THE

## CITY OF NEW YORK AND NYPD

This notice is sent to advise you of a provisional settlement of the FLSA lawsuit against the New York City Police Department and the City of New York ("the Defendants"), *Scott, et al.* v. *City of New York, et al.*, Case No. 02-CV-9530 (SAS). The lawsuit was filed on November 27, 2002, on behalf of the five named plaintiffs, Keenan Scott, John Logan, Michael DeMartino, John Loomis, and Robert Davison, and approximately 15,811 present and former NYPD police officers and detectives who consented to join the lawsuit. At the end of a jury trial in the case, counsel for the Plaintiffs and counsel for the Defendants decided, after lengthy discussions, that it was in their clients' respective interests to settle the case on the basis of the jury's verdict, rather than for either side to take an appeal ("the Proposed Settlement"). The purpose of this letter is to:

1.  Notify you of a Settlement Fairness Hearing to be held on December 18, 2009, at 2:30 PM, before United States District Judge Shira Scheindlin, Courtroom 15-C, Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., New York, NY 10007-1312, to determine the fairness, adequacy, and reasonableness of the proposed Settlement.

2.  Provide you with an opportunity to support or object to the Proposed Settlement.

3.  Alert you to the following important deadline: If you would like to submit any objections or comments regarding the Proposed Settlement, or if you intend to appear in Court at the Fairness Hearing on December 18, 2009, you must notify Will Aitchison, 3021 NE Broadway, Portland, Oregon 97232, on or before **December 11, 2009**.

### WHAT WAS THE LAWSUIT ABOUT?

There were five claims in the lawsuit:

(1) The Plaintiffs claimed that the Defendants had improperly calculated the overtime rate of pay by not properly including premium pay in the overtime calculations. This claim was referred to as Plaintiffs' "regular rate claim."

(2) The Plaintiffs claimed that the Defendants had failed to compensate officers at the overtime rate for 28-day work periods where the officers' charts exceeded 171 hours. This claim was referred to as Plaintiffs' "chart claim."

(3) The Plaintiffs claimed that the Defendants' enforce a "15-minute rule" that resulted in the Defendants failing to pay employees for compensable work. This claim was referred to as Plaintiffs' "15 minute claim."

(4) The Plaintiffs claimed that the Defendants wrongly denied requests to use compensatory time off. This claim was referred to as Plaintiffs' "denial of use claim."



(5) Finally, the Plaintiffs claimed that the Defendants unlawfully placed a "cap" on the amount of cash overtime that could be earned in a month. This claim was referred to as Plaintiffs' "cap claim."

## WHAT HAPPENED AT TRIAL?

A 15-day jury trial was held in November and December, 2008. The jury found in the Plaintiffs' favor on their "regular rate" and "chart" claims. Judge Scheindlin later determined that damages on these claims were $450,000, and awarded Plaintiffs an additional $450,000 in "liquidated damages" because the jury found that the Defendants had failed to prove that these violations were reasonable and in good faith. The jury found in favor of the Defendants and against Plaintiffs on Plaintiffs' "15 minute" and "denial of use" claims.

Judge Scheindlin ruled that Plaintiffs' "cap claim" could go to the jury only as to the five named plaintiffs, and "decertified" that claim from collective action treatment. That ruling preserved the "cap claims" of the remaining plaintiffs who subsequently joined the lawsuit in the event they decide to bring separate lawsuits. On the "cap claims" of the five named plaintiffs, the jury decided that the Defendants violated the FLSA by setting a cap on the amount of cash overtime that could be earned. None of the five named plaintiffs ended up recovering any money on the "cap claim," however, because the jury found they had not proved that they were damaged by an impermissible cap.

When an employee prevails in an FLSA lawsuit, the employer is required to pay the employee's reasonable attorneys fees, and must reimburse the plaintiffs for their approved litigation costs. Judge Scheindlin ordered the Defendants to pay the following attorney fees: To Thomas Puccio, $515,179.28; To Robbins, Russell, Englert, Orseck, Untereiner & Sauber, $1,619,672.10; To Aitchison & Vick, $1,515,775.30. The Court also ordered the City to reimburse litigation costs totaling $677,567.51.

## WHAT IS THE CURRENT STATUS OF THE LITIGATION

Both the Plaintiffs and the Defendants filed protective notices of appeal of the judgment to the United States Court of Appeals for the Second Circuit. While the appeal was pending, the parties reached a tentative settlement of all issues except one. The Second Circuit then authorized Judge Scheindlin to hold a fairness hearing on the settlement. The only issue remaining before the Second Circuit relates to the award of attorney fees to Thomas Puccio.

## WHAT IS THE PROPOSED SETTLEMENT

The Proposed Settlement would result in both sides accepting the judgment entered by Judge Scheindlin based upon the jury's verdict. That means that the Plaintiffs would receive $900,000, and the benefit or certain rulings made by the Court in the Plaintiffs' favor.

## WHAT ARE THE RECOMMENDATIONS OF THE NAMED PLAINTIFFS AND THE RECOMMENDATIONS OF PLAINTIFFS' LAWYERS

Four of the five named plaintiffs support the Proposed Settlement; the fifth named plaintiff is undecided. The trial was conducted using the testimony of "Representative Plaintiffs." Of the 17

testifying Representative Plaintiffs, 14 reported to Plaintiffs' counsel that they support resolving the lawsuit on the terms of the settlement, and only one favored an appeal. (Two were undecided.)

The three law firms representing Plaintiffs all support the Proposed Settlement. The lawyers, who have been working on this case for many years, see potential risk in the City's appeal of the judgment, and believe that the Proposed Settlement will avoid that risk, while preserving the beneficial aspects of the judgment.

### WILL I HAVE AN OPPORTUNITY TO EXPRESS MY VIEWS ABOUT THE PROPOSED SETTLEMENT?

The Settlement Fairness Hearing will take place at 2:30 PM on December 18, 2009, in the courtroom of United States District Court Judge Shira Scheindlin, Courtroom 15-C, Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., New York, NY 10007-1312. The purpose of the hearing is for the Court to determine whether to approve the Proposed Settlement. If you would like to state any comment regarding the Proposed Settlement, or would like to appear in Court for the Fairness Hearing, you must notify Plaintiffs' counsel promptly. Any written comments (including objections or statements in support), and notice that you intend to appear at the Fairness Hearing, must be received by Plaintiffs' counsel on or before December 11, 2009. These statements should be mailed or e-mailed to:

> Will Aitchison
> Aitchison & Vick
> 3021 NE Broadway
> Portland, OR 97232

### WHO DO I CONTACT WITH QUESTIONS?

If you have a question regarding this Notice or about any of the terms used within this Notice, you are encouraged to contact Class Counsel for Plaintiffs:

Will Aitchison
Aitchison & Vick
3021 NE Broadway
Portland, OR 97232
(503) 282-6160

Thomas P. Puccio, Esq.
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, New York 10169
(212) 883-6383

Gary A. Orseck, Esq.
Robbins, Russell, Englert, Orseck,
   Untereiner & Sauber LLP
1801 K. Street, NW, Suite 411
Washington, DC 20006
(202) 775-4500

**You should NOT contact the Court with any questions or inquiries, but should instead provide them to Plaintiffs' Counsel as instructed above.**

THE CHIEF-LEADER, FRIDAY, NOVEMBER 20, 2009.                    SEVENTEEN



**...FIED**

**SERVICES**

**LICENSES**

**PISTOL LICENSES**
Home • Business
• Target • Security Guard
Rifle & Shotgun Permits
Call for Appointment
Low Prices



**QUICK AND EASY
7 DAYS A WEEK
1-347-756-0002
GUN SPECIALIST**
MONEY BACK GUARANTEE

**MISCELLANEOUS**

**BUSINESS OPPORTUNITIES**



**Jani King**
The King of Clean®

The World's Largest Commercial Cleaning
Franchisor is a proven leader in the industry
with over 40 years of experience. Entrepreneur
magazine has ranked JaniKing as the:

#1 Commercial Cleaning Franchise
#1 Home Based Franchise
#2 Low Investment Franchise



**631-773-5477**
www.janiking.com

©2008 Jani-King International, Inc. C00508-0097

**TRAVEL**

**JAZZ WEEKEND GETAWAY**

Friday Dec 18 In Concert
Lalah Hathaway

Sat Dec 19 In Concert
Fourplay

Details on these & other concerts
www.BJToursone.com

**LEGAL NOTICES**

**SUMMONS AND NOTICE**
CIVIL COURT OF THE CITY OF NEW YORK, COUNTY OF RICHMOND. Index No: 018694/09

---

**LEGAL NOTICES**

**CLUSTER AMENITIES NO. 1, LLC**
Notice of Qualification of CLUSTER AMENITIES NO. 1, LLC. Authority filed with Secy. of State of NY (SSNY) on 10/28/09. Office location: NY County. LLC formed in Delaware (DE) on 10/23/09. Princ. office of LLC: 385 E. Colorado Blvd., Ste. 299, Pasadena, CA 91101. SSNY designated as agent of LLC upon whom process against it may be served. SSNY shall mail process to c/o Corporation Service Co., 80 State St., Albany, NY 12207-2543. Princ. office of LLC: 2711 Centerville Rd., Ste. 400, Wilmington, DE 19808. Arts. of Org. filed with Secy. of State of the State of DE, 401 Federal St., Ste. 3, Dover, DE 19901. As amended by Cert. of Correction filed with SSNY on 11/02/09, DE addr. of LLC: 2711 Centerville Rd., Ste. 400, Wilmington, DE 19808. Purpose: any lawful activity. 11/20/09-12/25/09

**HUNTSMAN PETROCHEMICAL LLC**
Notice of Qualification of Huntsman Petrochemical LLC. Authority filed with NY Dept. of State on 11/4/09. Office location: NY County. Princ. bus. addr.: 500 Huntsman Way, Salt Lake City, UT 84108. LLC formed in DE on 9/2/09, NY Sec. of State designated as agent of LLC upon whom process against it may be served and shall mail process to: c/o CT Corporation System, 111 8th Ave., NY, NY 10011, regd. agt. upon whom process may be served. DE addr. of LLC: 1209 Orange St., Wilmington, DE 19801. Arts. of Org. filed with DE Sec. of State, 401 Federal St., Dover, DE 19901. Purpose: any lawful activity. 11/20/09-12/25/09

**SILVER TONGUES LLC**
NOTICE OF FORMATION OF Silver Tongues LLC. Article of Organization filed with the Secretary of State of NY (SSNY) on 00/28/09 Office location NEW YORK County. SSNY has been designated as agent upon whom process against it may be served. The Post Office address to which the SSNY shall mail a copy of any process against the LLC served upon him/her is C/O the LLC 7014 13th Avenue, Suite 202, Brooklyn, NY 11228. Purpose of LLC: to engage in any lawful act or activity. Street address of Principal Business location is: 205 3rd Ave, Apt 12F, New York, NY 10003. 11/20/09-12/25/09

**NEW YORK PERCUSSION SERVICE, LLC**
Notice of Formation of Limited Liability Company ("LLC"). Name: New York Percussion Service, LLC. Articles of Organization were filed with the Secretary of State of New York ("SSNY") on August 28, 2009. Office location: New York County. SSNY has been designated as agent of the LLC upon whom process against it may be served. SSNY shall mail a copy of any process to the LLC, 100 Cabrini Blvd., Apt. 27, New York, NY 10033. Purpose: all purposes permitted by the LLC. 11/20/09-12/25/09

**PATIN GLOBAL HOLDING LLC**
Notice of Formation of PATIN GLOBAL HOLDING LLC. Articles of Organization filed with the Secretary of State of New York (SSNY) on 10/28/2009. Office location:

---

**LEGAL NOTICES**

**FL 6801 COLLINS NORTH LLC**
Notice of Qualification of FL 6801 COLLINS NORTH LLC. Authority filed with Secy. of State of NY (SSNY) on 10/28/09. Office location: NY County. LLC formed in Delaware (DE) on 08/04/09. Princ. office of LLC: 1271 Ave. of the Americas, NY, NY 10020. SSNY designated as agent of LLC upon whom process against it may be served. SSNY shall mail process to: 280 Park Ave, 41st Fl., NY, NY 10017. Princ. office of LLC: 2711 Centerville Rd., Ste. 400, Wilmington, DE 19808. Arts of Org. filed with DE Secy. of State, 401 Federal St., Ste.4, Dover, DE 19901. Purpose: any lawful activity. 11/18/09-12/18/09

**SG CONSTRUCTION SERVICES, L.L.C.**
Notice of Qualification of SG Construction Services, L.L.C. Authority filed with NY Dept. of State on 10/23/09. Office location: NY County. LLC formed in MI on 9/18/96. NY Sec. of State designated as agent of LLC upon whom process against it may be served and shall mail process to: c/o CT Corporation System, 111 8th Ave., NY, NY 10011, regd. agt. upon whom process may be served. MI and principal business addr: 3407 Torrey Rd., Flint, MI 48507. Arts. of Org. filed with MI Director of Energy, Labor & Economic Growth, POB 30004, Lansing, MI 48909. Purpose: all lawful purposes. 11/13/09-12/18/09

**BRIGHTLINE VENTURES II, LLC**
Notice of Qualification of Brightline Ventures II, LLC, App: for Auth. filed Secy of State (SSNY) 10/20/09. Office location: NY County. LLC org. in DE 10/10/09. SSNY designated as agent of LLC upon whom process against it may be served. SSNY shall mail copy of process to Attn: Nick Khera, 1120 Ave of the Americas, Ste. 1605, NY, NY 10036. DE office addr: C&C, 2711 Centerville Rd, Wilmington, DE 19808. Cert. of Form. on file: SSDE, Townsend Bldg., Dover, DE 19901. Purpose: any lawful activities. 11/20/09-12/25/09

**BRIGHTON AVENUE, LLC**
BRIGHTON AVENUE, LLC, a domestic Limited Liability Company (LLC) filed with the Sec of State of NY on 9/24/09. NY Office location: Richmond County. SSNY is designated as agent upon whom process against the LLC may be served. SSNY shall mail a copy of any process against the LLC served upon him/her to Michael Bottalico, 194 Brighton Ave, Staten Island, NY 10303. General Purposes. 11/20/09-12/25/09

**MATTCO HOLDINGS LLC**
MATTCO HOLDINGS LLC, a domestic Limited Liability Company (LLC) filed with the Sec of State of NY on 9/28/09, NY Office location: Richmond County. SSNY is designated as agent upon whom process against the LLC may be served. SSNY shall mail a copy of any process against the LLC served upon him/her to The LLC, 395 Powell St., Staten Island, NY 10312. General Purposes. 10/30/09-12/04/09

**SUTTON PLACE STRATEGIES LLC**
NOTICE OF FORMATION of

---

**LEGAL NOTICES**

**TRIAN PARTNERS II, L.P.**
Name of For. LP: Trian Partners II, L.P. Appl. for Auth. filed with Sec. of State of NY: 10/13/09. Jurisd. and date of org.: DE 10/8/09. Princ. bus. loc: 280 Park Ave., 41st Fl., NY, NY 10017. NY State office loc: NY Cty. Sec. of State designated as agent upon whom process against it may be served. Sec. of State shall mail copy of process to: 280 Park Ave., 41st Fl., NY, NY 10017. Addr. of LP in DE is: Corporation Service Company, 2711 Centerville Rd., Ste. 400, Wilmington, DE 19808. Name/addr. of GP avail. from Sec. of State. Authorized office in DE where Cert. of LP is filed is: DE Sec. of State, Dept. of State, Townsend Bldg., Dover, DE 19901. Purpose: any lawful activity. 11/20/09-12/25/09

**GALLE CAPITAL GP, LLC**
Notice of Qualification of Galle Capital GP, LLC. App. for Auth. filed Sec'y of State (SSNY) 9/29/09. Office location: NY County. LLC org. in DE 9/28/09. SSNY designated as agent of LLC upon whom process against it may be served. SSNY shall mail copy of process to Attn: S.P. Wijegoonaratna, 422 E. 72nd St., Apt. 28A, NY, NY 10021. DE office addr: CSC, 2711 Centerville Rd, Wilmington, DE 19808. Cert. of Form. on file: SSDE, Townsend Bldg., Dover, DE 19901. Purpose: any lawful activities. 10/23/09-11/27/09

**MORELAND REALTY LLC**
Notice of formation of limited liability company. Name: MORELAND REALTY LLC. Arts. of Org. filed with the Dept. of State of NY on July 31, 2009. Office loc.: Richmond County. Secretary of State of New York (SSNY) is designated as agent of LLC upon whom process against it may be served. The principal business location and address SSNY shall mail copy of process to is 678 Midland Ave., Staten Island, NY 10306. Management of the LLC shall be by one or more members. Purpose: To engage in any lawful act or activity. 11/20/09-11/27/09

**850 ELBE AVENUE LLC**
NOTICE OF FORMATION OF LIMITED LIABILITY COMPANY. NAME: 850 ELBE AVENUE LLC. Articles of Organization were filed with the Secretary of State of New York (SSNY) on 10/02/09. Office location: Richmond County. SSNY has been designated as agent of the LLC upon whom process against it may be served. SSNY shall mail a copy of process to the LLC, 850 Elbe Avenue, Staten Island, New York 10304. Purpose: For any lawful purpose. 10/16/09-11/20/09

**TOP FINISH PAINTING AND CARPENTRY LLC**
Notice of formation of Top Finish Painting and Carpentry LLC. Art. Of Org. filed with Secy of State of NY on 8/11/09. Office Location: Richmond County. SSNY is designated as agent of LLC upon whom process against it may be served. SSNY shall mail process to: 580 New Dorp Lane, Staten Island, NY 10306. Purpose: Any lawful activity. 10/23/

**25 LUDWIG LLC**

---

**LEGAL NOTICES**

**NOTICE**
There is a proposed settlement in the Fair Labor Standards Act lawsuit against NYPD and the City of New York. The settlement would involve both sides foregoing their appeals and agreeing to the judgment entered by United States District Court Judge Shira Scheindlin. This will result in an award of $900,000 to class members plus the payment of certain litigation costs and attorney fees. Comments on the settlement must be received by December 11, 2009, and should be sent to Will Aitchison, 3021 NE Broadway, Portland, OR 97232. For more information on the settlement go to www.nypdflsa.com or call the Plaintiffs' law firms Will Aitchison, Aitchison & Vick, (503) 282-5160; Thomas Puccio, (212) 883-6383; Gary Orseck, Robbins Russell, (202)775-4500. 11/20/09-12/04/09

**LEVANTINE FILMS LLC**
Notice of Qualification of Levantine Films LLC. Authority filed with Secy of State of NY (SSNY) on 10/20/09. Office location: NY County. LLC formed in Delaware (DE) on 07/18/09. SSNY designated as agent of LLC upon whom process against it may be served. SSNY shall mail process to: Levantine Entertainment, LLC, JP Morgan Chase Tower, 600 Travis, Ste. 6800, Houston, TX 77002. Address to be maintained in DE: c/o National Corporate Research, Ltd., 615 South DuPont Highway, Dover, DE 19901. Arts of Org. filed with DE Secy. Of State, 401 Federal St., Ste. 4, Dover, DE 19901. Purpose: any lawful activities. 11/20/09-12/25/09

**6TH STREET CONVENIENCE STORE LLC**
Notice of formation of LLC. Name: 6th Street Convenience Store LLC, a domestic limited liability company (LLC). Filed with the Sec. of State of NY on 09/22/09. NY office location: Richmond County. SSNY is designated as agent upon whom process against the LLC may be served. SSNY shall mail copy of any process against the LLC served upon him/her to Ahmar Wazir, 111 Greeley Ave., S.I. NY 10306. General-purposes. 11/20/09-12/25/09

**J.B. CASH SOLUTIONS, L.L.C.**
J.B. Cash Solutions L.L.C. Arts of Org. filed w/ SSNY on 7/30/09. Offc Loc: Bronx Co. SSNY design. agent of LLC upon whom process may be served. SSNY shall mail copy of process to C/O United States Corporation Agents, Inc. 7014 13TH Ave Ste 202 Brooklyn, NY 11228. Purpose: Any lawful activity. Registered Agent: United States Corporation Agents, Inc 7014 13TH Ave Ste 202 Brooklyn, NY 11228. 11/20/09-12/25/09

**NOTICE**
THE ANNUAL RETURN OF GBRG, INC. for the year ended December 31, 2008 is available at Hertz, Herson & Company, LLP, Two Park Avenue, Suite 1600, New York, NY 10016 for inspection during regular business hours by any citizen who requests it within 180 days hereof. The Assistant Secretary of the Foundation is Michael T. Incantalupo. 11/20/09

**APPENDIX B**

FLSA Lawsuit Against
The City Of New York



Breaking News

What Is The
FLSA?

The Basis For
The Lawsuit

Who Is Eligible To
Join The Lawsuit

The Damages
Sought

How To Join
The Lawsuit

The PBA's Position
On The Lawsuit

The Attorneys
Handling The Lawsuit

Home

# BREAKING NEWS!!

### Updated 11/6/09

There is a provisional settlement of the FLSA lawsuit against the New York City Police Department and the City of New York. Please click here to read about it.

### Updated 8/5/09

On July 30, 2009, Plaintiffs filed a Notice of Appeal to the federal Second Circuit Court of Appeals. We'll have more information on the appeal in upcoming weeks. Still pending before Judge Scheindlin is Plaintiffs' motion for attorney fees and litigation costs.

### Updated 7/14/09

The judge has just released her order, which awards the Plaintiffs $900,000 in damages. We're now in the period where each side is evaluating whether to appeal the decision. There has been no determination on how the $900,000 would be distributed among the plaintiffs.

### Updated 4/1/09

As of April 1, the Judge has ordered both parties to make written submissions on the issue of damages. We anticipate this will be done by mid to late April. When this occurs, the case will be fully submitted to the judge, and will await only her decision.

### Updated 12/4/08

Through a combination of a jury verdict and the decisions of Judge Shira Scheindlin, most of the lawsuit has now been resolved. Here's a summary of the decisions and rulings over the three weeks of the trial:

1. Judge Scheindlin ruled that the City's failure to pay overtime for those occasions when the chart produces more than 171 hours of work in a 28-day period violates the FLSA. The jury later found that the City's violation was "willful." The impact of this finding is that Plaintiffs with this claim will be entitled to damages going back three years before they filed the lawsuit instead of the FLSA's normal two-year statute of limitations.

2. Judge Scheindlin ruled that the City violated the FLSA in the way it calculated the overtime rate by not properly including all differentials in the overtime calculations. The jury later found that this violation was also "willful," entitling Plaintiffs with the claim to a three-year statute of limitations.

3. On the claim that NYPD has an unlawful "cash overtime cap," Judge Scheindlin ruled that because of the variety o

**APPENDIX C**

## PROPOSED SETTLEMENT OF FLSA LAWSUIT AGAINST THE CITY OF

## NEW YORK AND NYPD

There is a provisional settlement of the FLSA lawsuit against the New York City Police Department and the City of New York. In question and answer format, here are the basics of the provisional settlement.

### WHAT WAS THE LAWSUIT ABOUT?

There were five claims in the lawsuit:

(1) The Plaintiffs claimed that the Defendants had improperly calculated the overtime rate of pay by not properly including premium pay in the overtime calculations. This claim was referred to as Plaintiffs' "regular rate claim."

(2) The Plaintiffs claimed that the Defendants had failed to compensate officers at the overtime rate for 28-day work periods where the officers' charts exceeded 171 hours. This claim was referred to as Plaintiffs' "chart claim."

(3) The Plaintiffs claimed that the Defendants' enforce a "15-minute rule" that resulted in the Defendants failing to pay employees for compensable work. This claim was referred to as Plaintiffs' "15 minute claim."

(4) The Plaintiffs claimed that the Defendants wrongly denied requests to use compensatory time off. This claim was referred to as Plaintiffs' "denial of use claim."

(5) Finally, the Plaintiffs claimed that the Defendants unlawfully placed a "cap" on the amount of cash overtime that could be earned in a month. This claim was referred to as Plaintiffs' "cap claim."

### WHAT HAPPENED AT TRIAL?

A 15-day jury trial was held in November and December, 2008. The jury found in the Plaintiffs' favor on their "regular rate" and "chart" claims. Judge Scheindlin later determined that damages on these claims were $450,000, and awarded Plaintiffs an additional $450,000 in "liquidated damages" because the jury found that the Defendants had failed to prove that these violations were reasonable and in good faith. The jury found in favor of the Defendants and against Plaintiffs on Plaintiffs' "15 minute" and "denial of use" claims.

Judge Scheindlin ruled that Plaintiffs' "cap claim" could go to the jury only as to the five named plaintiffs, and "decertified" that claim from collective action treatment. That ruling preserved the "cap claims" of the remaining plaintiffs who subsequently joined the lawsuit in the event they decide to bring separate lawsuits. On the "cap claims" of the five named plaintiffs, the jury decided that the Defendants violated the FLSA by setting a

cap on the amount of cash overtime that could be earned. None of the five named plaintiffs ended up recovering any money on the "cap claim," however, because the jury found they had not proved that they were damaged by an impermissible cap.

When an employee prevails in an FLSA lawsuit, the employer is required to pay the employee's reasonable attorneys fees, and must reimburse the plaintiffs for their approved litigation costs. Judge Scheindlin ordered the Defendants to pay the following attorney fees: To Thomas Puccio, $515,179.28; To Robbins, Russell, Englert, Orseck, Untereiner & Sauber, $1,619,672.10; To Aitchison & Vick, $1,515,775.30. The Court also ordered the City to reimburse litigation costs totaling $677,567.51.

## WHAT IS THE CURRENT STATUS OF THE LITIGATION

Both the Plaintiffs and the Defendants filed protective notices of appeal of the judgment to the United States Court of Appeals for the Second Circuit. While the appeal was pending, the parties reached a tentative settlement of all issues except one. The Second Circuit then authorized Judge Scheindlin to hold a fairness hearing on the settlement. The only issue remaining before the Second Circuit relates to the award of attorney fees to Thomas Puccio.

## WHAT IS THE PROPOSED SETTLEMENT

The Proposed Settlement would result in both sides accepting the judgment entered by Judge Scheindlin based upon the jury's verdict. That means that the Plaintiffs would receive $900,000, and the benefit or certain rulings made by the Court in the Plaintiffs' favor.

## WHAT ARE THE RECOMMENDATIONS OF THE NAMED PLAINTIFFS AND THE RECOMMENDATIONS OF PLAINTIFFS' LAWYERS

Four of the five named plaintiffs support the Proposed Settlement; the fifth named plaintiff is undecided. The trial was conducted using the testimony of "Representative Plaintiffs." Of the 17 testifying Representative Plaintiffs, 14 reported to Plaintiffs' counsel that they support resolving the lawsuit on the terms of the settlement, and only one favored an appeal. (Two were undecided.)

The three law firms representing Plaintiffs all support the Proposed Settlement. The lawyers, who have been working on this case for many years, see potential risk in the City's appeal of the judgment, and believe that the Proposed Settlement will avoid that risk, while preserving the beneficial aspects of the judgment.

## WILL PLAINTIFFS HAVE AN OPPORTUNITY TO EXPRESS THEIR VIEWS ABOUT THE PROPOSED SETTLEMENT?

The Settlement Fairness Hearing will take place at 2:30 PM on December 18, 2009, in the courtroom of United States District Court Judge Shira Scheindlin, Courtroom 15-C, Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., New York, NY 10007-1312. The purpose of the hearing is for the Court to determine whether to approve the Proposed Settlement. Any Plaintiff who would like to state any comment regarding the Proposed Settlement, or would like to appear in Court for the Fairness Hearing, must notify Plaintiffs' counsel promptly. Any written comments (including objections or statements in support), and notice that the Plaintiff intends to appear at the Fairness Hearing, must be received by Plaintiffs' counsel on or before December 11, 2009. These statements should be mailed to:

Will Aitchison
Aitchison & Vick
3021 NE Broadway
Portland, OR 97210

## WHO DO PLAINTIFFS CONTACT WITH QUESTIONS?

If any Plaintiffs have a question regarding these issues, the Plaintiff is encouraged to contact Class Counsel for Plaintiffs:

Will Aitchison
Aitchison & Vick
3021 NE Broadway
Portland, OR 97210
(503) 282-6160

Thomas P. Puccio, Esq.
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, New York 10169
(212) 883-6383

Gary A. Orseck, Esq.
Robbins, Russell, Englert, Orseck,
  Untereiner & Sauber LLP
1801 K. Street, NW, Suite 411
Washington, DC 20006
(202)775-4500

**Plaintiffs should NOT contact the Court with any questions or inquiries, but should instead provide them to Plaintiffs' Counsel as instructed above.**

## Carol Green

**From:** Chris Agoglia [lapsman@optonline.net]
**Sent:** Tuesday, November 17, 2009 9:57 PM
**To:** Carol Green
**Subject:** FLSA lawsuit

Hi,

I received a letter in the mail detailing the outcome of the suit.  I'm one of the 15,000 who seem to be about to receive about $60.  In lieu of this money, you should give the recipients the option to donate their part of settlement to PBA Widows and Children's Fund.  I believe, If pooled, this money would do more good for the fund, than $60 could do for one person.  Thanks in advance.


Chris Agoglia
Retired NYCPD

**APPENDIX   D**

## Carol Green

**From:**   Pete [pcapp@optonline.net]
**Sent:**   Monday, November 16, 2009 4:31 PM
**To:**     Carol Green
**Subject:** FLSA PROSPSED SETTLEMENT

To Whom It May Concern;

    I am writing this letter in response to the recent Notice of Proposed Settlement of FLSA Lawsuit against the City of New York. Upon reading it and digesting the information contained therein I discovered three (3) things that raised the hair on the back of my neck not to mention my blood pressure.

    First, the proposed settlement is for nine hundred thousand dollars ($900,000). Once that $900,000 has been divided up among the fifteen thousand eight hundred and eleven (15,811) plaintiffs, the shared amount equates to just about fifty six dollars and ninety two cents ($56.92) per plaintiff.

    Second, the attorney's fees that the City has been ordered to pay to three (3) Law Firms has a combined total of three million, six hundred fifty thousand, six hundred twenty six and sixty eight cents ($3,650,626.68). I am not saying that the attorneys in this case have not worked diligently in trying to right the wrong that has been imposed upon the New York City Police Officer since the inception of the Fair Labor Standards Act (FLSA) however, to award attorney's fees that far exceed the award is outrageous and insulting to say the least for it is the Police Officer that has paid the price for years. The Court has also ordered the City to pay combined litigation costs of six hundred seventy seven thousand, five hundred sixty seven dollars and fifty one cents ($677,567.51). That is a combined total of four million, three hundred twenty eight thousand, one hundred ninety four dollars and thirty six cents ($4,328,194.36). The men and women of the New York City Police Department have been taken advantage of, time and again, by the City of New York and have been treated unfairly for years by not only imposing a cash overtime cap of 35 hours per month (now to include time and cash), but to force employees to work more than forty (40) hours per work week without any compensation as well as denying compensatory time off based upon a formulation of minimum manning percentages.

    My current work chart mandates that I work an eight hour and thirty three minute (8:33) work day. That number equals approximately forty two hours and five minutes (42:05). That means that I must work approximately two hours and five minutes (2:05) per week with NO COMPENSATION, NONE, ZERO, ZILCH. No extra days off, no extra cash. Did I mention that meal is a privilege? That's right, most days I have to work through my meal.

    Third, we have been waiting patiently for seven (7) years for this decision and award only to find out that we are being awarded a mere $56.92 for our troubles. Not only was this decision a complete waste of time, money and energy, but it is an insult to every member who ever wore a uniform for this Police Department and it additionally sets the stage for future unfairness being imposed by the City as there were no real punitive damages to dissuade the City from continuing its unfair labor practices. It would appear to the Court that the members of the New York City Police Department are not even worth their weight in compensatory damages, much less punitive damages.

    In closing, I would hope the Court re-think this unjust decision and grant an award based upon the value that New York City Police Officer has sacrificed daily for years by the unfairness of the City. The enormity of the message that this decision sends is immeasurable to the quality of life of current and future New York City Police Officers. If this award remains the unchanged, please donate my $56.92 share of this award to the New York City Widow's and Children's Fund for they have made the ultimate sacrifice for an ungrateful City.

*Peter J. Cappuccilli*

"There is no hunting like the hunting of man, and those who have hunted armed men long enough and liked it, never care for anything else thereafter."- Ernest Hemingway

"The wicked flee when no man persueth: but the righteous are bold as a lion." - Proverbs

"In Valor There Is Hope." - Tacitus

## Scott V. City of New York
## Proposed Settlement of FLSA Lawsuit against the City of New York and NYPD

Words can't describe how deeply disappointed I am by the verdict and subsequent settlement.  The men and woman of the NYPD have really worked hard to make and keep this city safe for all residents, employees and visitors.  It has been a tremendous battle fought without the best tools or compensation. Under the Giuliani administration we fought for better contract wages and were rewarded with zeros for our efforts.  Some police departments would have cut back, become corrupt or stopped caring.  We didn't.  The cost of living has skyrocketed in NYC and the surrounding suburbs. Home values have decreased, while taxes have risen tremendously.  Most of us are having a very hard time affording basic life necessities for our families.

I think the jury of our peers missed the mark on their award.  I will say that there seems to be a disassociation between what the public thinks we earn and what we really earn.  That might be the reason that the jury came back with their verdict.  $50.00 per officer wont fill up my tank of gas and pay the tolls necessary to travel to work.  All of the time, effort and dedication of the members who have worked countless hours of overtime only to be denied a successful outcome of this lawsuit is horrendous.

Since 1990 I have worked very hard at upholding and maintaining a image that has made the NYPD proud to have me as one of their members.  I've earned a Bachelor of Arts Degree and a Master of Science degree.  I financed my education through Federal Direct Student Loans because I didn't earn enough to pay for my education outright.  I currently am in repayment with a balance in excess of $55,000.  My parents were both deceased so I had to depend on myself.  I have car payments, a mortgage as well as everyday living expenses.  Bridge and tunnel tolls have tripled since joining the NYPD, yet I have managed the best I can.  I'm a proud African American woman. I would never or have asked for hand-outs. I don't see this as a handout or feel that my disappointment is unwarranted.

I vehemently oppose the proposed settlement.  I am asking that the honorable Judge Shira Scheindlin review the case and the specific instances of hardship and economic inequality that the stipulations of the City of New York and the NYPD have put on their uniformed officers as outlined in the FLSA lawsuit.  I'm asking that a monetary settlement far greater then the $50.00 per plaintiff be awarded to all class action members. I am asking that a level of dignity be restored to the fine members of the NYPD by acknowledging the economic hardships we have faced while enabling us to close this unfortunate chapter with dignity.

Thank you,

Danielle M. Davis
17 South Main Street
Harriman, NY 10926
davis210@aol.com
845-781-8113

11/16/2009

Michael DeFilippo
2129 Gerritsen Avenue
Brooklyn, New York 11229
917-968-5209

December 9, 2009

Judge Shira A. Scheindlin
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Judge Scheindlin:

I received a Notice of Proposed Settlement from my attorneys in the case called Scott v. City of New York. Although the Notice says that any questions should be sent directly to my lawyers, I felt that my concerns about the Notice needed to be sent directly to you because they involve the fee agreement that I and other police officers have with our lawyers. I believe there is an error in the Notice.

My concern is that the Notice says that "Plaintiffs would received $900,000," and that the attorneys would receive $515,179.28 (Puccio), $1,619,672.10 (Robbins), and $1,515,775.30 (Aitchison). These amounts do not take into account a Contingency Fee Agreement that the police officers have with the lawyers handling the case. The Fee Agreement is enclosed with this letter. The Agreement states "After bringing court action and up to and including trial and any appeal of this action, you are to retain 25% of the net amount (net amount recovered shall equal the gross amount recovered, less costs and disbursements) recovered, including any attorney fees recovered as part of the settlement." Therefore, I believe that our attorneys are not entitled to the fees stated in the Notice. Instead, the attorneys fees should be:

25% of the $900,000 + 25% of the attorneys fees (25% of 3,650,626.68)
= $225,000 + 912,656. 67 = **$1,137,656.67**

And the police officers would receive the following amounts:

75% of $900,000 + 75% of $3,650,626.68
= $675,000 + $2,737,970.01 = **$3,412,970.01**

As you can see, the real numbers greatly differ from the numbers in the Notice. I think that all police officers should be notified of this difference and that the fairness of the settlement should not be considered without this important information.

I will be attending the Fairness Hearing on December 18. However, if you would like to discuss this with me before then I can be reached at (917) 968-5209.

Sincerely,

Michael DeFilippo

Michael DeFilippo
NYPD Retired Police Officer

cc:    Will Aitchison

## CONTINGENCY FEE AGREEMENT
## FLSA LAWSUIT AGAINST CITY OF NEW YORK

Name: _____

Address: _____

City: _____   State: _____ Zip: _____

### TO: WILL AITCHISON, ATTORNEY AT LAW, AITCHISON & VICK, INC.

You are hereby authorized to take up and handle my claims against the City of New York for unpaid overtime compensation, liquidated damages, costs and attorney's fees under the Fair Labor Standards Act. I understand that you have reached an agreement with the Law Offices of Thomas Puccio, 230 Park Avenue, New York City, to act as co-counsel and as local counsel in the litigation, and that fees will be divided with Mr. Puccio.

For your services, you are to be compensated as follows:

(1) After bringing court action and up to and including trial and any appeal of this action, you are to retain 25% of the net amount (net amount recovered shall equal the gross amount recovered, less costs and disbursements) recovered, including any attorney fees recovered as part of the settlement;

(2) If nothing is recovered, I am not to pay any attorney fees whatsoever.

Any attorney fees received as part of the amount collected shall be credited on a pro-rata basis against my fee obligations in this matter, taking into account my percentage of the total recovery on behalf of all plaintiffs.

In the event that a dispute arises between us relating to our fees, you may have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the New York Courts, a copy of which will be provided to you upon request.

I understand that litigation costs are not covered by the payment of attorney fees, that the NYCPBA is advancing certain litigation costs for this lawsuit, including expert witness fees, and deposition costs, and that, should the recovery from this lawsuit not be adequate to cover costs, the PBA will be responsible for the remainder of the remaining costs. I agree that the costs advanced by the NYCPBA will be repaid out of the settlement proceeds.

DATED the _____ day of _____, 2002.

By:_____
        (Signature)

_____
        (Printed Name)

C. FOWLER
30 SHERMAN Ave
NY NY 10034

WESTCHESTER NY
20 NOV 2009 PM

Aitchison & Vick Inc
3021 NE Broadway (ATT WiLL)
PortLand OR 97232

YOUR LAW FIRM IS a
JOKE. You can wipe your
ass WiTH This LeTter.

NYPD MeMBer.

DATE: _11/19/2009_

# FAX COVER SHEET

TO: _Aitchison & Vick_

FROM: _S. Moore_

SUBJECT: _Response for Fairness Hearing on 12/18/2009_

**Number of pages including cover sheet** _3_

November 19, 2009


Will Aitchison
Atchison & Vick
3021 NE Broadway
Portland, OR  97232

Counsel:

Please accept this letter and the supporting document that follows as accurate enough for
submission for The Settlement Fairness Hearing on December 18, 2009.

I was sworn in as a New York City Police Officer on July 18, 1996 and graduated the
Police Academy and transferred to my permanent command in Brooklyn in March 1997.
It would take over 5 years from the time I started working in the precinct to the time the
FLSA lawsuit (Case No. 02-CV-9530) was filed in an attempt to right a wrong.

One hour of overtime during that period was approximately *$35.00 - $44.00* depending
on one's years of service and depending on calculations and its accuracy.  I do not believe
$50.00, which would calculate to approximately 1.5 hours, is the equivalent of years
being taken advantage of by the City of New York and NYPD.  Therefore, I am asking for
consideration on behalf of all members for fair compensation for years worth of injustice
regarding the "regular rate claim".

Sincerely,

Syntheria F. Moore
20-08 Seagirt Blvd.
#2F
Far Rockaway, NY  11691
917/741-7944

The City of New York

EMPLOYEE DIRECT DEPOSIT PAY STATEMENT

Payroll Management System

| Pay Period | Paydate | Payroll # | Work Unit | Check Number | Distribution # |
|---|---|---|---|---|---|
| 09/09/01 09/22/01 | 09/28/01 | 056 | 2102 | 2 1949437S | REA075A |

| Transit # | Account | Reference # | CO | Employee Name |
|---|---|---|---|---|
| 918026 | 021000018 | 1 A 02 A 00 | 07/46624411 | 7 MOORE SYNTHERIA F |

| | Total Earnings | Federal Tax | Social Security | Medicare | State Tax | City Tax | City Waiver | |
|---|---|---|---|---|---|---|---|---|
| This period | 2878.53 | 427.01 | 178.33 | 41.70 | 135.10 | 74.84 | | 1601.76 |
| Year to date | 40836.67 | 4908.89 | 2528.98 | 591.45 | 1721.22 | 967.02 | | Net Pay 1276.77 |

Leave balance as of 09/15/01

| Description | | | | | Description | | Description | |
|---|---|---|---|---|---|---|---|---|
| REGULAR PAY | | | 80:00 | 1880.33 | CT (N FLSA) | 0:27 | PERS LV DAYS | 0:01 |
| SVC/LONG/ED | | | 0:00 | 124.47 | CH DAYS-MNLY | 0:02 | CH DY EV 2 M | 0:01 |
| RTG/NGHT SHF | | | 0:00 | 35.13 | VAC LEAV DYS | 0:10 | | |
| PAID OVERTM | 2:00 | 75.10 | 20:20 | 763.50 | | | | |

9/16 RACE AGNST BREAST CANCER 212293CURE

| Description | Amount this period | | | Description | Amount this period | | |
|---|---|---|---|---|---|---|---|
| POL 414H STD | 109.58 | | | G-CBP EMPE | 2.32 | 8500.00 | 2614.27 |
| G-CBP/BC EE | | | | 457 TDSP | 415.02 | | |
| MUNI CRDT UN | 200.00 | | | PATROLMEN -U | 18.06 | | |

REVISED

The City of New York

EMPLOYEE DIRECT DEPOSIT PAY STATEMENT

Payroll Management System

| Pay Period | Paydate | Payroll # | Work Unit | Check Number | Distribution # |
|---|---|---|---|---|---|
| 04/06/03 04/19/03 | 04/25/03 | 056 | 2102 | 2 25153918 | REA075A |

| Transit # | Account | Reference # | CO | Employee Name |
|---|---|---|---|---|
| 918026 | 021000018 | 1 A 02 A 00 | 0415769 | 7 MOORE SYNTHERIA F |

| | Total Earnings | Federal Tax | Social Security | Medicare | State Tax | City Tax | City Waiver | |
|---|---|---|---|---|---|---|---|---|
| This period | 2300.44 | 264.98 | 142.44 | 33.32 | 101.79 | 60.41 | | 1293.87 |
| Year to date | 22456.18 | 2761.42 | 1390.56 | 325.21 | 1019.14 | 602.93 | | Net Pay 1006.57 |

Leave balance as of 04/12/03

| Description | | | | | Description | | Description | |
|---|---|---|---|---|---|---|---|---|
| REGULAR PAY | | | 80:00 | 2073.07 | CT (N FLSA) | 0:57 | CH DAYS-MNLY | 0:02 |
| SVC/LONG/ED | | | 0:00 | 143.65 | CH DY EV 2 M | 0:01 | VAC LEAV DYS | 0:15 |
| RTG/NGHT SHF | | | 0:00 | 38.74 | | | | |
| PAID OVERTM | 1:05 | 44.98 | | | | | | |

BIKE WEEK EVENTS 5/1-5/11 SEE DOT WEBSITE

| Description | Amount this period | | | Description | Amount this period | | |
|---|---|---|---|---|---|---|---|
| POL 414H STD | 144.93 | | | G-CBP EMPE | 2.99 | 12000.00 | 8844.07 |
| G-CBP/BC EE | | | | 457 TDSP | 323.33 | | |
| MUNI CRDT UN | 200.00 | | | PATROLMEN -U | 19.68 | | |

## Carol Green

| | |
|---|---|
| **From:** | Will Aitchison |
| **Sent:** | Wednesday, December 09, 2009 8:38 AM |
| **To:** | Carol Green |
| **Cc:** | gorseck@robbinsrussell.com |

**Subject:** FW: flsa nypd

**From:** JENNIFER MULLALY [mailto:themullaly@verizon.net]
**Sent:** Wednesday, December 09, 2009 8:26 AM
**To:** will@aitchisonvick.com
**Subject:** flsa nypd

My name is Matthew Mullaly i am a retired police officer who is involved in the lawsuit against the nypd, i am sending you this e-mail in responce to the pending outcome of this long await decision, i was employed by the nypd from 7/28/87 thru 7/30/07. From what my understanding about the flsa basically was that if you work more than 40 hrs a week you should be compensated for the time that you worked past 40 hrs,as a police officer working in the chart you preformed 8.35hrs a day times five days week going beyond 40 hrs times this by 20 yrs thats a lot of hours in 20 yrs not compensated for! I think that this settlement is a slap in the face to all police officers current and retired to settle for the peanuts that are being offered.

Thanks,                                                                                                   Matt
Mullaly                                                                                     H#757 678 0936

## Carol Green

**From:**    Murf4578@aol.com
**Sent:**    Friday, December 04, 2009 8:21 AM
**To:**      Carol Green
**Subject:**  Comment on Scott v. City of New York FLSA Lawsuit

I recently received  notice from your firm on a settlement offer that was in conjunction with a juries determination on a 50 % win on the Scott V. City of New York. Although the City of New York did in fact violate the 15 minute claim and denial of use I am responding regarding the settlement offer. I retired from the City of New York on November 2007 and left with them what is described as non-FLSA money that could not be cashed in. This totaled 51 hour's and 25 minutes at the rate of hourly pay when I retired  This was due to the City of New York Police Department and there practices. My regular straight hourly rate of pay at day rate at retirement was $42.54 for a totaled waived of $2187.62. When reading the settlement offer of $900,000.00 for the 15,816 people that where part of this suit I calculate that each of us will be paid approx. $56.90. I am sorry but that is an insult to those of us that have been treated like second class citizens. We have always been held to a higher standard. With the amount of time that the City has in snips and pieces taken from us or denied to us, a settlement offer equal to at least the fee's that where awarded to the attorneys should  be awarded. Additionally what changes are set in the future for those that are still on the department to have the regular rate and chart claim properly followed and that the time is added properly in accordance to the law. Thank you in advance for your time.     Dennis P. Murphy

## Carol Green

**From:**    Miguel Ortiz [mmortiz01@msn.com]
**Sent:**    Friday, December 11, 2009 2:18 PM
**To:**      Carol Green
**Subject:** BREAKING NEWS ON THE FLSA PROPOSED SETTLEMENT

Hi Guys

You need to write ASAP today December 11, 2009 Friday within a couple of hours to this email address info@AitchisonVick.com

One of the the law firm handling this FLSA Case is - Will Aitchison, Aitchison & Vick 3021 NE Broadway, Portland, OR 97232, Telephone number (503)-282-6160, e-mail address. info@aitchisonvick.com

Settlement Fairness Hearing will take place at 2:30 PM on December 18, 2009 in the courtroom of the United States Courthouse Judge Shira Scheindlin, Courtroom 15-C, Daniel Patrick Moynihan United States Courthouse, 500 Pearl St, New York, NY 10007-1312.

Attention Will Aitchison

The sad part of this FLSA proposed settlement is that the $900k breaks down to approximately $56.00 for each member of the service.  Mind you the first 5 plaintiffs and the other 15,811 member of the New York City Police Department active or retired that consented to join the lawsuit.  Wow, what a disgrace of justice, image that's less than a fraction of a penny, if you was to start looking at the dollar numbers, starting from that penny.  I am loss for words its a shame.  I am currently permanent disable on a fixed income may the United State Court appointed Judge comes to a fair and just cause settlement may God bless us all.

Miguel Ortiz Retired Disable NYPD 67 RAM SQD

Steven J. Peitler
156 Jefferson Street
Inwood, NY 11096
(516) 343-9654
ssjjpp@aol.com

December 3, 2009

Will Aitchison, Esq.
Aitchison & Vick
3021 NE Broadway
Portland, OR 97232

Re: *Scott, et al. v. City of New York, et al.*, No. 02-CV-9530 (SAS) (S.D.N.Y.)

Dear Mr. Aitchison:

I recently received the Notice of Proposed Settlement of FLSA Lawsuit against the City of New York and NYPD in the referenced lawsuit. As a class member, I want to lodge my objection to the settlement, particularly with respect to the "cap claim" and the "denial of use claim." As I understand it, the settlement does not take into account the harm suffered by me and probably hundreds of other Detectives and Police Officers who were assigned to the Organized Crime Control Bureau, Narcotics Division.

While this suit was winding its way through the courts and as the trial date loomed, I contacted the Detectives Endowment Association, the Patrolman's Benevolent Association, and the plaintiffs' lawyers and asked to be made a representative plaintiff. I felt that my testimony regarding the cap claim would prove beyond a reasonable doubt that the NYPD and the City violated the law by unlawfully placing a "cap" on cash overtime earned per month. My time records, which I believe are in the possession of the plaintiffs' lawyers, would prove my case. My time records, along with the time records of hundreds of the other Narcotics officers, would show that there was a cash overtime cap every month. Not only will it show a simple cap, it will show a cap broken down by the rank of the officer. Originally, Police Officers were permitted to request 45 hours a month in cash overtime, and Detectives 3rd grade were permitted to request 40 hours a month in cash overtime. Detectives 2nd grade, along with Sergeants, could request even less. As the years progressed, the monthly allotment was lowered. In 2001, when I retired as a 2nd grade Detective, I was permitted to request only 27 hours a month in cash overtime.

In September 1985, when the crack cocaine epidemic was beginning to grip the City, I was assigned to the Organized Crime Control Bureau, Manhattan North Narcotics. As you can imagine, the amount of overtime required to handle all the narcotics-related complaints in Manhattan North was enormous. It was not uncommon to work two or three days straight. Unable to request most of the overtime in cash, I had no choice but to accept comp time.

Because of the increased work load, the City engaged in the conduct alleged in the denial of use claim. For a case agent on a major narcotics wiretap investigation, requiring updates to the court every ten days (for every phone number), coupled with arrests and other investigative tasks, it was impossible to use the comp time that you were forced to take. When I was transferred to the Queens Detective Division in 1993, I already had well over 1000 hours of comp time on the books. Unfortunately, I was transferred to a precinct where I was often the only Detective scheduled to work, and therefore was constantly denied the use of my comp time. This continued when I returned to the Narcotics Division in 1996. In fact, it was my

understanding that a Police Officer/Detective had to use his comp time within a certain period of time after being forced to accept that comp time. If he or she did not, the time would be removed from the books *unless* the Officer or Detective made a request to use the time, which was then denied. In the case of a request and a denial, the time stayed on the books (even though it could not be used). Otherwise, it was removed from the books.

I worked a total of 13 years in the Narcotics Division. As a result of the illegally placed cap on cash overtime, and the impossibility of using the time, I amassed thousands of hours of comp time.

I assume the testimony at trial elicited the fact that Detectives' pensions are based on half their final year's salary, or the best three consecutive years of their employment. Because I had so much time on the books as I neared retirement, I was finally permitted – actually, forced – to use my comp time. Yes, I was paid for all the time at the regular rate, but the salary that I should have earned – and my pension – were diminished tremendously. In other words, because I didn't earn any overtime in my last year, my wages were much lower than they should have been, so I couldn't use my last year's salary to calculate my pension. Indeed, I had so much comp time accrued, I was forced to begin using it the *previous* year. In any event, rather than base my pension on my final year's wages, I had to opt for the average of my three best consecutive years. But because I was earning a lower salary during those years – approximately my 15th to 18th years – my pension is *much* smaller than it should be – all because of the cap on overtime and the denial of use.

My pension is small compared to most Detectives who retired after the caps on cash overtime were lifted. I not only lost tens of thousands of dollars in illegally held back salary, but I will continue to bear this loss for the rest of my life because my pension was illegally damaged as well.

Thus, I object to the settlement of the two claims discussed above (and the decision of plaintiffs' counsel not to appeal), and ask that you contact me, as soon as possible, to discuss my options. Is it possible that the plaintiffs' lawyers, who have fought this case, know the facts, and have reviewed all the discovery material, can continue to represent me on the "denial of use claim" and the "cap claim"? For all the reasons above, I believe that my claims, while similar to those of most Police Officers and Detectives, are different as to the damages because of the thousands of hours I was forced to accept in comp time.

Very truly yours,

Steven J. Peltier

cc: The Honorable Shira Scheindlin
    Thomas P. Puccio, Esq.
    Gary A. Orseck, Esq.

Mr. Will Aitchison
3021 NE Broadway
Portland, Oregon 97232

December 2, 2009

Dear Sir:

I am writing this letter in response to a notice your office sent out to members of the New York
City Police Department who were plaintiffs in *Scott, et al.* v. *City of New York, et al.*, Case No.
02-CV-9530 (SAS).  I joined this lawsuit in May 2003.

As I read the notice I was encouraged by the fact that we, the plaintiffs won.  It is almost unheard
of, in New York State, that New York City Police Officers win anything in the form of monetary
compensation, or otherwise, as a result of wrong doing by the City of New York;  Kudos to you
and your team.  As I read on, however, I was dismayed to read that Judge Shira Scheindlin
awarded 15,811 participants in the lawsuit, a total sum of $900,000, which if my calculations are
correct equates to a mere $56.92 per participant.  This is a mere pittance to what we actually lost.

As a Detective with 22 ½ years in the New York City Police Department, I was promoted from
Police Officer to 3rd Grade Detective in 1995.  When I was, I lost 20+ chart days.  I got two (2)
chart days per year for 5 years when I earned six (6) more for a total of eight (8) chart days that I
currently earn each year.  These chart days are to compensate me for the amount of time I work
each day, over eight (8) hours and I'm not paid for.  In that time my regular work day, in hours,
went from 8:15 to 8:33, the current level.  I'm not a mathematician, just a cop.  I don't think
$56.92 covers my loss.  Furthermore, I can't even calculate how many days I stayed ten (10)
minutes or even five (5) minutes past my regular tour of duty and was unable to leave or submit
for the overtime.

As I continued to read, I couldn't help but notice that you and your colleagues were awarded
$515,179.28 to Mr. Thomas Puccio, $1,619,672.10 to Robbins, Englert, Orseck, Untereiner &
Sauber and your office received $1,515,775.30;  In addition to $677,567.51 in litigation costs.
Although I recognize the need for your compensation and I agree that you and your colleagues
worked hard for us, how is it justified that the attorneys in this case earn more than the plaintiffs?

I understand that a hearing will take place on December 18, 2009 to discuss the fairness of this
settlement.  I will not be attending this hearing.  If what I outlined above as it is my
understanding of this settlement, please forward my $56.92 to the NYPD Widows and Children's
Fund, C/O The New York City Police Department's Patrolman's Benevolent Association, 40
Fulton Street, New York, NY 10038.  I don't need the $56.92 that bad.

Sincerely,

Patrick Streffacio