**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------ X

**KEENAN M. SCOTT, THOMAS**
**LOGAN, JOHN LOOMIS, ROBERT**
**DAVISON, and MICHAEL C.**
**DEMARTINO, et al.,**

                **Plaintiffs,**

   - against -

**CITY OF NEW YORK and THE NEW**
**YORK CITY POLICE DEPARTMENT,**

          **Defendants.**

------------------------------------------------ X

**MEMORANDUM OPINION**
**AND ORDER**

**02 Civ. 9530 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/21/09

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

This case was brought in November 2002 as a collective action under

the Fair Labor Standards Act ("FLSA"), on behalf of nearly 16,000 New York City

police officers and detectives.  After six years of litigation, extensive motion

practice on many novel issues of law, and a multi-week jury trial,[1] each side won

---

[1]    *See, e.g.*, *Scott v. City of New York*, No. 02 Civ. 9530, 2009 WL
1286420 (S.D.N.Y. May 8, 2009); *Scott v. City of New York*, 592 F. Supp. 2d 501
(S.D.N.Y. 2008); *Scott v. City of New York*, 592 F. Supp. 2d 475 (S.D.N.Y. 2008);
*Scott v. City of New York*, 592 F. Supp. 2d 386 (S.D.N.Y. 2008); *Scott v. City of
New York*, 591 F. Supp. 2d 554 (S.D.N.Y. 2008); *Scott v. City of New York*, No. 02
Civ. 9530, 2004 WL 2980135 (S.D.N.Y. Dec. 27, 2004); *Scott v. City of New York*,
340 F. Supp. 2d 371 (S.D.N.Y. 2004).

1

and lost important issues. Plaintiffs convinced the jury that defendants had willfully violated the law by (1) incorrectly calculating overtime rates of pay, and (2) failing to credit plaintiffs with overtime in certain situations where it was legally required. Plaintiffs also prevailed on their argument that, as a matter of law, the hours that a New York City police officer or detective spends on meal periods are considered "hours worked" for FLSA purposes. On the other hand, plaintiffs failed to convince the jury of their allegations that defendants (1) had a policy or practice of wrongfully denying requests to use compensatory time accrued, and (2) wrongfully failed to pay overtime when they worked only a few minutes beyond the end of their scheduled tour. Plaintiffs likewise failed to demonstrate that their Force Accrual claim — i.e., that defendants improperly forced plaintiffs to accept compensatory time instead of cash overtime — could be maintained as a collective action. Based on these outcomes, the jury awarded plaintiffs $900,000 in damages.

The Court entered judgment on June 30, 2009. All parties timely filed notices of appeal. In August 2009, I awarded $4,328,194.38 in attorneys' fees and costs to plaintiffs' counsel.[2] On October 9, 2009, the Second Circuit stayed the appeal and remanded for this Court to review a proposed settlement among the

---

[2]     *See Scott v. City of New York*, No. 02 Civ. 9530, 2009 WL 2610747 (S.D.N.Y. Aug 25, 2009).

2

parties.

Under the proposed settlement, the parties will accept the Court's judgment entered on the jury's verdict.[3]  Both sides will withdraw their merits appeals and defendants will pay $900,000 to plaintiffs and much of the attorneys' fees and costs.[4]  The parties reached this agreement after consideration of the risk, uncertainty, and delay both sides would face in an appeal.[5]  Specifically, Plaintiffs' counsel assessed (1) plaintiffs' likelihood of appellate success on certain material adverse decisions; (2) the significance of those potential successes in a hypothetical remand and retrial; and (3) the vulnerabilities that plaintiffs face on issues that likely would be raised by defendants' cross-appeal.[6]

---

[3]    *See* Plaintiffs' Memorandum of Law in Support of Settlement on the Basis of the Court's June 30, 2009 Judgment ("Pl. Mem.") at 1.

[4]    The only appellate issues that will remain post-settlement concern the fees awarded to one of plaintiffs' attorneys, Thomas Puccio.  Defendants will not pay Puccio's fee award until final resolution of the amount he is due.

[5]    *See id.*  Additionally, "[b]efore reaching the conclusion that the proposed no-appeal agreement is a fair one from plaintiffs' perspective, plaintiffs' counsel consulted with each Representative Plaintiff who testified at trial.  Of the 17 testifying Representative Plaintiffs, 14 expressed a desire to settle on the basis of the June 30, 2009, and only one favored an appeal.  Two were undecided.  The sentiment among the five Named Plaintiffs — four of whom were among the witnesses at trial — is similar, with 4 of 5 favoring settlement, and one being undecided."  *Id.* at 16.

[6]    *See id.* at 3-16.

3

Because such an agreement constitutes a settlement on behalf of the class, the Court "must scrutiniz[e] the settlement for fairness."[7]  The Court held a Fairness Hearing on December 18, 2009.  Plaintiffs' counsel advised the Court that ten individuals requested to appear at the hearing;[8] however, only one plaintiff attended the hearing and he elected not to speak.  In advance of the hearing, the Court reviewed eleven letters from individual plaintiffs concerning the proposed settlement.[9]  The majority of the letters express disappointment and frustration in the amount of damages awarded by the jury and, relatedly, the amount of money individual plaintiffs will receive.[10]  One letter incorrectly argues that plaintiffs'

---

[7]     *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (FLSA case) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)).

[8]     *See* Report on Plaintiffs' Response to Proposed Settlement ("Report") at 2.  In November 2009, plaintiffs' counsel mailed 14,209 individual plaintiffs notice of the proposed settlement and the hearing.  An ad was placed in *The Chief Leader*, a weekly paper targeted to NYC employees, and information about the proposed settlement was posted on the lawsuit's website.  *See id.* at app. A, B, C. *See also* Pl. Mem. at 3.

[9]     *See* Report at app. D.

[10]    Many of the letters assume that the $900,000 will be split evenly among plaintiffs.  However, the jury award will not be disbursed equally.  Rather, due to the nature of the claims upon which plaintiffs prevailed, individual awards require individualized calculations of damages.  At the Fairness Hearing, counsel represented that class members stand to receive between approximately $10 and $1000, with the vast majority of plaintiffs receiving an award on the low end of the range.

4

counsel are not entitled to the entire attorneys' fees awarded by the Court pursuant to the FLSA but rather are entitled, under the contingent fee agreement between counsel and class members, to 25 percent of the jury award plus 25 percent of the statutory attorneys' fees.  No letter addresses plaintiffs' likelihood of appellate success or the potential ramifications of any win or loss on appeal.

   I have carefully scrutinized the proposed settlement and the negotiation process, keeping in mind that the settlement here involves the acceptance of a jury verdict, as opposed to a settlement negotiated by the parties.  I conclude that the terms of the settlement are fair, reasonable, adequate and not a product of collusion.  While I fully appreciate that some class members are dissatisfied with the amount of damages awarded by the jury, especially following such protracted litigation, plaintiffs who continue to be employed by the New York City Police Department shall also benefit prospectively from various rulings made in their favor.  For example, I ruled that an agreement existed to treat officers' meal periods as working time for FLSA purposes.[11]  That was a crucial victory for plaintiffs, for had defendants prevailed on this issue, "it likely would have wiped out all damages in the case, no matter how successfully plaintiffs proved their other

---

[11]  *See Scott*, 592 F. Supp. 2d at 408-09.

claims."[12]

Plaintiffs reasonably believe that the risk of losing on appeal with respect to decisions rendered in their favor by this Court outweighs any benefits that might be gained by an appellate victory. Because this case involves many questions of first impression — including the meal period issue — the outcome of the appeal is all the more difficult to predict. It is fair for the parties to forego their appeals and to settle on terms largely established by the jury.

For the foregoing reasons, the Court approves the proposed settlement. The Clerk of the Court is directed to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Date:  December 21, 2009
       New York, New York

---

[12]     Pl. Mem. at 14.

## – Appearances –

**For Plaintiffs:**

Will Aitchison, Esq.
Aitchison & Vick, Inc.
3021 N.E. Broadway
Portland, Oregon 97232
(503) 282-6160

Gary Orseck, Esq.
Robbins Russell Englert Orseck Untereiner & Sauber LLP
1801 K Street, NW, Suite 411
Washington, D.C. 20006
(202) 775-4500

Thomas P. Puccio, Esq.
Law Offices of Thomas P. Puccio
230 Park Avenue
New York, New York 10169
(212) 883-6383

**For Defendants:**

James Lemonedes
Georgia Pestana
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007
(212) 788-0862